# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Civil Action No. __3:20-cv-215__

|  |  |
|---|---|
| JIM BOGNET; DONALD K. MILLER; DEBRA MILLER; ALAN CLARK; AND JENNIFER CLARK,<br><br><br>       Plaintiffs,<br><br>  v.<br><br>KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania, ADAMS COUNTY BOARD OF ELECTIONS, ALLEGHENY COUNTY BOARD OF ELECTIONS, ARMSTRONG COUNTY BOARD OF ELECTIONS, BEAVER COUNTY BOARD OF ELECTIONS, BEDFORD COUNTY BOARD OF ELECTIONS, BERKS COUNTY BOARD OF ELECTIONS, BLAIR COUNTY BOARD OF ELECTIONS, BRADFORD COUNTY BOARD OF ELECTIONS, BUCKS COUNTY BOARD OF ELECTIONS, BUTLER COUNTY BOARD OF ELECTIONS, CAMBRIA COUNTY BOARD OF ELECTIONS, CAMERON COUNTY BOARD OF ELECTIONS, CARBON COUNTY BOARD OF ELECTIONS, CENTRE COUNTY BOARD OF ELECTIONS, CHESTER COUNTY BOARD OF ELECTIONS, CLARION COUNTY BOARD OF ELECTIONS, CLEARFIELD COUNTY BOARD OF ELECTIONS, CLINTON COUNTY BOARD OF ELECTIONS, COLUMBIA COUNTY BOARD OF ELECTIONS, CRAWFORD COUNTY BOARD OF ELECTIONS, CUMBERLAND COUNTY BOARD OF ELECTIONS, DAUPHIN COUNTY BOARD OF ELECTIONS, DELAWARE COUNTY BOARD OF ELECTIONS, ELK COUNTY | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1

BOARD OF ELECTIONS, ERIE COUNTY
BOARD OF ELECTIONS, FAYETTE
COUNTY BOARD OF ELECTIONS,
FOREST COUNTY BOARD OF
ELECTIONS, FRANKLIN COUNTY
BOARD OF ELECTIONS, FULTON
COUNTY BOARD OF ELECTIONS,
GREENE COUNTY BOARD OF
ELECTIONS, HUNTINGDON COUNTY
BOARD OF ELECTIONS, INDIANA
COUNTY BOARD OF ELECTIONS,
JEFFERSON COUNTY BOARD OF
ELECTIONS, JUNIATA COUNTY BOARD
OF ELECTIONS, LACKAWANNA
COUNTY BOARD OF ELECTIONS,
LANCASTER COUNTY BOARD OF
ELECTIONS, LAWRENCE COUNTY
BOARD OF ELECTIONS, LEBANON
COUNTY BOARD OF ELECTIONS,
LEHIGH COUNTY BOARD OF
ELECTIONS, LUZERNE COUNTY BOARD
OF ELECTIONS, LYCOMING COUNTY
BOARD OF ELECTIONS, MCKEAN
COUNTY BOARD OF ELECTIONS,
MERCER COUNTY BOARD OF
ELECTIONS, MIFFLIN COUNTY BOARD
OF ELECTIONS, MONROE COUNTY
BOARD OF ELECTIONS, MONTGOMERY
COUNTY BOARD OF ELECTIONS,
MONTOUR COUNTY BOARD OF
ELECTIONS, NORTHAMPTON COUNTY
BOARD OF ELECTIONS,
NORTHUMBERLAND COUNTY BOARD
OF ELECTIONS, PERRY COUNTY BOARD
OF ELECTIONS, PHILADELPHIA
COUNTY BOARD OF ELECTIONS, PIKE
COUNTY BOARD OF ELECTIONS,
POTTER COUNTY BOARD OF
ELECTIONS, SCHUYLKILL COUNTY
BOARD OF ELECTIONS, SNYDER
COUNTY BOARD OF ELECTIONS,
SOMERSET COUNTY BOARD OF
ELECTIONS, SULLIVAN COUNTY
BOARD OF ELECTIONS, SUSQUEHANNA
COUNTY BOARD OF ELECTIONS, TIOGA
COUNTY BOARD OF ELECTIONS, UNION

COUNTY BOARD OF ELECTIONS,
VENANGO COUNTY BOARD OF
ELECTIONS, WARREN COUNTY BOARD
OF ELECTIONS, WASHINGTON COUNTY
BOARD OF ELECTIONS, WAYNE
COUNTY BOARD OF ELECTIONS,
WESTMORELAND COUNTY BOARD OF
ELECTIONS, WYOMING COUNTY
BOARD OF ELECTIONS, AND YORK
COUNTY BOARD OF ELECTIONS

        Defendants.

## INTRODUCTION

1.     The Elections Clause of the Constitution—Article I, Section 4, clause 1—says that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." U.S. CONST. art. 1, § 4, cl. 1. The Constitution thus provides that State Legislatures have the primary responsibility for setting the "Times, Places and Manner" of holding federal elections, subject to check by the U.S. Congress. Congress exercised that authority in 2 U.S.C. § 7, setting a uniform date, which this year is November 3.

2.     The Presidential Electors Clause of the Constitution—Article II, Section 1, clause 2—says that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress". U.S. CONST. art. 2, § 1, cl. 2. The Constitution thus provides that State Legislatures have primary responsibility for determining the manner of selecting Presidential Electors. Congress also has a role in the selection of Presidential Electors. Article II, Section 1, clause 4 of the Constitution states that "Congress may determine the Time of chusing the Electors, and the Day on which they shall give their Votes; which Day shall be the same throughout the

3

United States." U.S. CONST. art. 2, § 1, cl. 4. Congress exercised that authority in 3 U.S.C. § 1, setting a uniform date for Presidential Elector selection, which this year is November 3.

3.      The date established by Congress under 2 U.S.C. § 7 and 3 U.S.C. § 1—November 3, 2020—is the single uniform Election Day across the country for the election of Senators, Representatives, and Electors this year.

4.      Despite this clear vesting of authority in the State Legislatures and Congress, in a recent decision, *Pennsylvania Democratic Party v. Boockvar*, No. 133 MM 2020, 2020 WL 5554644 (Pa. Sept. 17, 2020), the Pennsylvania Supreme Court effectively rewrote Pennsylvania election law and added multiple election days, vitiating the uniform Election Day set by Congress. In its decision, the Pennsylvania Supreme Court: (1) rewrote the Receipt Deadline for mail-in ballots, changing it from the deadline passed by the Pennsylvania General Assembly of 8:00 p.m. on November 3, 2020 to 5:00 p.m. on Friday, November 6, 2020; (2) established that ballots arriving between Election Day (November 3, 2020) and 5:00pm on Friday, November 6, 2020 will be *presumed* to have been cast before Election Day. This presumption applies despite the fact that those ballots may "lack a postmark or other proof of mailing" or have an illegible postmark or proof of mailing. Simply put, this means ballots will be presumed to have been cast before Election Day, despite the lack of proof that the ballots were cast on time. This inevitably will lead to Pennsylvania counting those ballots that were cast *after* Election Day. Consequently, the presumption created by the Pennsylvania Supreme Court violates Congress's duly enacted statutes establishing a single uniform Election Day and violates the Constitution's clear command that Congress has the final word on federal elections. It is thus unlawful.

5.      Despite the exclusive grant of authority to the state legislatures to regulate the "Time, Place and Manner" of federal elections and the "Manner" of selecting Presidential Electors,

the Pennsylvania Supreme Court usurped this authority by extending the Receipt Deadline established by the General Assembly. This is unlawful under both the Elections Clause and the Presidential Electors Clause.

6.     The Pennsylvania Supreme Court's decision and the policy that Defendants must follow also violates the Equal Protection Clause. The extension of the Receipt Deadline and the presumption of timeliness will allow for late and otherwise unlawful ballots to be counted, thus Defendants will be deliberately diluting and debasing the votes of Plaintiffs Donald K. Miller, Debra Miller, Alan Clark, and Jennifer Clark by following this policy. Further, the presumption of timeliness was created by the Pennsylvania Supreme Court, despite the petitioning plaintiffs' *not requesting* that relief. *See* Emergency Application for a Stay Pending the Filing and Disposition of a Petition for a Writ of Certiorari, No. 20A53, at 7 (U.S. Sept. 28, 2020). And the Pennsylvania Supreme Court created this presumption "[w]ithout further explanation." *Pennsylvania Democratic Party*, 2020 WL 5554644, at *40 (Mundy, J. dissenting). This arbitrary and unilateral alteration of Pennsylvania's voting rules will lead to Defendants administering the election in an arbitrary manner that disparately affects Plaintiffs Donald K. Miller, Debra Miller, Alan Clark, and Jennifer Clark and other voters who vote in person. *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972); *see also Bush v. Gore*, 531 U.S. 98, 105 (2000). These are clear violations of the Equal Protection Clause of the Fourteenth Amendment.

7.     Plaintiffs seek appropriate declaratory and injunctive relief preventing this imminent violation of law.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction pursuant to 28 U.S.C.§§ 1331, 1343, 1357 and 42 U.S.C. § 1983 because this action arises under the Constitution of the United States and federal statutes.

The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343, 1357 and 42 U.S.C. § 1983.

9.      Venue is appropriate in this district under 28 U.S.C. § 1391(b)(1) because the Defendant County Boards of Election in Allegheny, Armstrong, Beaver, Bedford, Blair, Butler, Cambria, Clarion, Clearfield, Crawford, Elk, Erie, Fayette, Forest, Greene, Indiana, Jefferson, Lawrence, McKean, Mercer, Somerset, Venango, Warren, Washington and Westmoreland have their offices in the Western District. Alternatively, venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to the present claim will occur in the Western District.

## PARTIES

10.     Plaintiff Jim Bognet is a resident of Hazleton, Pennsylvania and is running as a candidate to represent Pennsylvania's 8th Congressional District.

11.     Plaintiff Donald K. Miller is a resident of Somerset County, Pennsylvania. Miller is an active, registered voter, who, to his memory, has voted in every Presidential Election since he was old enough to vote. He plans on voting in person on November 3, 2020 in the general election, including in the Presidential election and in the U.S. House of Representatives election.

12.     Plaintiff Debra Miller is a resident of Somerset County, Pennsylvania. Miller is an active, registered voter, who, to her memory, has voted in every Presidential Election since 1980. She plans on voting in person on November 3, 2020 in the general election, including in the Presidential election and in the U.S. House of Representatives election.

13.     Plaintiff Alan Clark is a resident of Somerset County, Pennsylvania. Clark is an active, registered voter, who, to his memory, has voted in every Presidential Election since 2000.

He plans on voting in person on November 3, 2020 in the general election, including in the Presidential election and in the U.S. House of Representatives election.

14.　　Plaintiff Jennifer Clark is a resident of Somerset County, Pennsylvania. Clark is an active, registered voter, who, to her memory, has voted in every Presidential Election since 2000. She plans on voting in person on November 3, 2020 in the general election, including in the Presidential election and in the U.S. House of Representatives election.

15.　　Defendant Kathy Boockvar (hereinafter, "Secretary Boockvar") is the Secretary of the Commonwealth. In this role, Secretary Boockvar is Pennsylvania's Chief Elections Officer. The Pennsylvania Constitution vests no powers or duties in Secretary Boockvar. *Perzel v. Cortes*, 870 A.2d 759, 764 (Pa. 2005). Instead, her general powers and duties concerning elections are set forth in Election Code Section 201, 25 P.S. § 2621. Under the Election Code, Secretary Boockvar must "receive from county boards of elections the returns of primaries and elections, to canvass and compute the votes cast for candidates . . . ; to proclaim the results of such primaries and elections, and to issue certificates of election to the successful candidates at such elections, except in cases where that duty is imposed by law on another officer or board." 25 P.S. § 2621(f).

16.　　Defendants Adams County Board of Elections, Allegheny County Board of Elections, Armstrong County Board of Elections, Beaver County Board of Elections, Bedford County Board of Elections, Berks County Board of Elections, Blair County Board of Elections, Bradford County Board of Elections, Bucks County Board of Elections, Butler County Board of Elections, Cambria County Board of Elections, Cameron County Board of Elections, Carbon County Board of Elections, Centre County Board of Elections, Chester County Board of Elections, Clarion County Board of Elections, Clearfield County Board of Elections, Clinton County Board of Elections, Columbia County Board of Elections, Crawford County Board of Elections,

Cumberland County Board of Elections, Dauphin County Board of Elections, Delaware County Board of Elections, Elk County Board of Elections, Erie County Board of Elections, Fayette County Board of Elections, Forest County Board of Elections, Franklin County Board of Elections, Fulton County Board of Elections, Greene County Board of Elections, Huntingdon County Board of Elections, Indiana County Board of Elections, Jefferson County Board of Elections, Juniata County Board of Elections, Lackawanna County Board of Elections, Lancaster County Board of Elections, Lawrence County Board of Elections, Lebanon County Board of Elections, Lehigh County Board of Elections, Luzerne County Board of Elections, Lycoming County Board of Elections, McKean County Board of Elections, Mercer County Board of Elections, Mifflin County Board of Elections, Monroe County Board of Elections, Montgomery County Board of Elections, Montour County Board of Elections, Northampton County Board of Elections, Northumberland County Board of Elections, Perry County Board of Elections, Philadelphia County Board of Elections, Pike County Board of Elections, Potter County Board of Elections, Schuylkill County Board of Elections, Snyder County Board of Elections, Somerset County Board of Elections, Sullivan County Board of Elections, Susquehanna County Board of Elections, Tioga County Board of Elections, Union County Board of Elections, Venango County Board of Elections, Warren County Board of Elections, Washington County Board of Elections, Wayne County Board of Elections, Westmoreland County Board of Elections, Wyoming County Board of Elections, and York County Board of Elections (collectively hereinafter, the "County Election Boards"), are the county boards of elections in and for each county of the Commonwealth of Pennsylvania as provided by Election Code Section 301, 25 P.S. § 2641. The County Election Boards "have jurisdiction over the conduct of primaries and elections in such count[ies], in accordance with the provisions of [the Election Code.]" *Id.* at § 2641(a). Accordingly, the County Election Boards must

"receive from district election officers the returns of all primaries and elections, to canvass and compute the same, and to certify, no later than the third Monday following the primary or election, the results thereof to the Secretary of the Commonwealth." *Id.* at § 2642(k).

## BACKGROUND

### Congress Established a Single Uniform Federal Election Day for Representatives and Senators

17.    Article I, Section 4, clause 1 of the U.S. Constitution states that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." U.S. CONST. art. 1, § 4, cl. 1.

18.    The Elections Clause was "not . . . of uncertain meaning when incorporated into the Constitution." *Hawke v. Smith*, 253 U.S. 221, 227 (1920). First, it provides that the only entity within a state that may regulate an election is the State's "Legislature"—"the representative body which ma[kes] the laws of the people." *Id*. Second, the Elections Clause firmly establishes that Congress has the final say on federal elections. "The dominant purpose of the Elections Clause, the historical record bears out, was to empower Congress to override state election rules." *Ariz. State Legislature v. Ariz. Indep. Redist. Comm'n*, 576 U.S. 787, 789 (2015).

19.    The Elections Clause "functions as 'a default provision; it invests the States with responsibility for the mechanics of congressional elections, but only so far as Congress declines to pre-empt state legislative choices.' " *Arizona v. Inter Tribal Council of Ariz., Inc*., 570 U.S. 1, 9 (2013) (quoting *Foster v. Love*, 522 U.S. 67, 69 (1997)). Congress can thus act under this Clause to set the " 'when, where, and how' of holding congressional elections." *Id.* at 29 (Thomas, J., dissenting).

9

20.     Congress's power under the Elections Clause "is paramount, and may be exercised at any time, and to any extent which it deems expedient; and so far as it is exercised . . . the regulations effected *supersede* those of the State which are inconsistent therewith." *Ex parte Siebold*, 100 U.S. 371, 392 (1880) (emphasis added).

21.     Under its paramount authority to regulate federal elections, Congress established a single day to elect Representatives in 1872. Under 2 U.S.C. § 7, "[t]he Tuesday next after the 1st Monday in November, in every even numbered year, is established as the day for the election, in each of the States and Territories of the United States, of Representatives and Delegates to the Congress commencing on the 3d day of January next thereafter." And after ratification of the Seventeenth Amendment, this is the same day for the election of Senators. *See* 2 U.S.C. § 1.

22.     Across the United States, the date for electing Representatives and Senators this year is November 3, 2020.

**Congress Established a Single Uniform Day for the Appointment of Presidential Electors**

23.     Article II, Section 2, Clause 4 of the Constitution provides that "Congress may determine the Time of chusing the Electors, and the Day on which they shall give their Votes; which Day shall be the same throughout the United States." Thus, the Constitution also affirmatively grants Congress the power to determine when Electors are chosen for the Electoral College.

24.     Acting under its authority under the this clause, Congress enacted 3 U.S.C § 1, which provides "[t]he electors of President and Vice President shall be appointed, in each State, on the Tuesday next after the first Monday in November, in every fourth year succeeding every election of a President and Vice President."

25.     Across the United States, the date for appointing Presidential Electors this year is November 3, 2020. In Pennsylvania, the electors are appointed by the popular vote of Pennsylvania citizens on that day. *See* 25 P.S. § 3031.12(a)(4).

26.     Thus, Congress, under its power in the Elections Clause and Article II, Section 1, Clause 4, as enacted in 2 U.S.C. §§ 1, 7, and 3 U.S.C. § 1, has established a single uniform national Election Day of November 3, 2020. These statutes thus "mandate holding all elections for Congress and the Presidency on a single day throughout the Union." *Foster v. Love*, 522 U.S. 67, 70 (1997).

**States May Not Alter or Change the Single Uniform Federal Election Day**

27.     Since Congress has set a single, uniform, national Election Day on November 3, 2020 for the election of Representatives and Senators and the appointment of Presidential Electors, Pennsylvania has no power under the Constitution or federal statute to change this single date. *See Foster v. Love*, 522 U.S. 67, 70 (1997).

28.     It is "without question [that] Congress has the authority to compel states to hold these elections on the dates it specifies." *Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169, 1170 (9th Cir. 2001).

29.     The Supreme Court has stated that "election" "plainly refer[s] to the combined actions of voters and officials meant to make a final selection of an officeholder". *Foster*, 522 U.S. at 71. For the election of Representatives and Senators, Congress has provided only limited exceptions for states to deviate from the single, uniform, federal Election Day.

30.     Under 2 U.S.C. § 8, a state may hold an election after Election Day when there is "a failure to elect at the time prescribed by law." This only applies to those states where "a majority of all the votes is necessary to elect a member" of Congress or Senator. *Foster*, 522 U.S. at 71 n.3

11

(citation omitted). "In those States, if no candidate receives a majority vote on federal election day, there has been a failure to elect and a subsequent run-off election is required." *Id.* (citing *Public Citizen, Inc. v. Miller*, 813 F. Supp. 821 (N.D. Ga.), *aff'd*, 992 F.2d 1548 (11th Cir. 1993)).

31.     Under 2 U.S.C. § 8, state may also hold special elections when vacancies arise. *See* 2 U.S.C. § 8(b).

32.     Otherwise, the nationally mandated date for the election of Representatives and Senators is *the date* for federal elections, which this year is November 3, 2020. *See, e.g., Lamone v. Capozzi*, 912 A.2d 674, 692 (Md. 2006) ("[T]here is no dispute that the 'combined actions' must occur, that voting must end, on federal election day.").

33.     Similarly, Congress has provided that States must comply with the date provided in 3 U.S.C. § 1 for selecting Presidential Electors. Courts have long-rejected laws which "purport[] to extend beyond the election day the time within which voters' ballots may be received by the election officials for the election of presidential electors" because these laws "conflict with the constitutional congressional Act which requires the *electing* to be done on election day." *Maddox v. Bd. of State Canvassers*, 149 P.2d 112, 115 (Mont. 1944) (emphasis added).

34.     Congress only provides that states may appoint Presidential Electors "on a subsequent day" if those states have already "held an election for the purpose of choosing electors, and ha[ve] failed to make a choice *on the day* prescribed by law." 3 U.S.C. § 2 (emphasis added). In other words, states may not simply choose another day to appoint Presidential Electors. It must be on the day set by Congress—Election Day—and only if no selection is made on that "day prescribed by law" may the state try again.

35.     Thus, Congress has ensured that states do not allow voting for Presidential Electors on days *other* than Election Day in the first instance.

**Pennsylvania's General Assembly Established Means of Voting Consistent with Congress's Paramount Authority**

36.     The Pennsylvania General Assembly has provided for three ways for Pennsylvanians to vote.

37.     Pennsylvanians may vote by person on the single, uniform, federal Election Day set by Congress on November 3, 2020.

38.     Pennsylvanians may vote by mail with no excuse needed to receive a mail-in ballot. *See* 25 P.S. § 3150.11(b).

39.     Pennsylvanians may also vote with an absentee ballot (unless otherwise indicated, this Complaint refers to both absentee ballots and mail-in ballots as "mail-in ballots"). *See* 25 P.S. § 3146.1.

40.     As of filing, a significant portion of Pennsylvanians have chosen to use the mail-in ballot option. Specifically, 2,824,695 mail-in ballots have been requested in Pennsylvania, and 1,028,431 of those ballots have been returned. *See* Pennsylvania Early Voting Statistics, available at https://bit.ly/37tmOT3.

41.     But the rates of requested mail-in voting are not the same across Pennsylvania. For instance, the eight counties with the highest mail-in ballot request rates are heavily populated.

42.     Montgomery County is 97.1% urban, according to the 2010 census, with 593,485 voters. As of filing, 250,983 voters have requested mail-in ballots. A request rate of 42.3%.

43.     Allegheny County is 97.5% urban, according to the 2010 census, with 918,015 voters. As of filing, 384,156 voters have requested mail-in ballots. A request rate of 41.8%.

44.     Chester County is 86.7% urban, according to the 2010 census, with 370,032 voters. As of filing, 150,417 voters have requested mail-in ballots. A request rate of 40.6%.

45.     Bucks County is 91.2% urban, according to the 2010 census, with 474,273 voters. As of filing, 174,763 voters have requested mail-in ballots. A request rate of 36.8%.

46.     Philadelphia County is 100% urban, according to the 2010 census, with 1,1,000,348 voters. As of filing, 392,227 voters have requested mail-in ballots. A request rate of 35.6%.

47.     Northampton County is 87.2% urban, according to the 2010 census, with 220,518 voters. As of filing, 76,442 voters have requested mail-in ballots. A request rate of 34.7%.

48.     Lehigh County is 92.1% urban, according to the 2010 census, with 242,302 voters. As of filing, 80,585 voters have requested mail-in ballots. A request rate of 33.3%.

49.     Delaware County is 99.5% urban, according to the 2010 census, with 414,474 voters. As of filing, 134,302 voters have requested mail-in ballots. A request rate of 32.4%.

50.     By contrast, Somerset County is only 29.2% urban and 70.8% rural, according to the 2010 census. Somerset County has 47,639 voters and only 9,047 have requested mail-in ballots. A request rate of 19%, far lower than the higher-density counties leading Pennsylvania's mail-in ballot requests.

51.     To return the requested mail-in ballots, the General Assembly enacted clear deadlines for all voters to follow. Simply put, no different than in-person voters, mail-in voters must vote on or before Election Day under Pennsylvania's statutes.

52.     First, the "mail-in elector shall, in secret, proceed to mark the ballot" "on or before eight o'clock P.M. the day of the . . . election." 25 P.S. § 3150.16(a); *see also id*. at § 3146.6(a). Second, the "completed mail-in ballot must be received in the office of the county board of elections no later than eight o'clock P.M. on the day of the . . . election." *Id*. at § 3150.16(c); *see also id.* at § 3146.6(c). Thus, mail-in ballots must be marked and returned on or before 8:00 P.M. on the single, uniform, federal Election Day.

53.     The *only* statutory exception to this deadline is that a valid "military-overseas ballot" will "be counted if it is delivered by 5 p.m. on the seventh day following the election." 25 Pa. C.S.A. § 3511 (articulating deadlines to comply with the congressionally-enacted Federal Uniformed and Overseas Citizens Absentee Voting Act); *see also* 52 U.S.C. §§ 20301–20311. Even still, if a military-overseas ballot lacks a postmark, a late postmark, or unreadable postmark, the ballot will only count if the "voter has declared under penalty of perjury that the ballot was *timely submitted*." 25 Pa. C.S.A. § 3511(b) (emphasis added).

54.     Thus, the Pennsylvania General Assembly has directed, consistent with Congress's paramount authority under the Elections Clause and Article II, Section 1, Clause 4, that there be a single, uniform, federal Election Day in Pennsylvania. All ballots must be cast on or before Election Day.

### The Pennsylvania Supreme Court Unconstitutionally Usurped the Authority Vested in the Pennsylvania General Assembly by Extending the Absentee Ballot Receipt Deadline and Also Vitiated the Single, Uniform, Federal Election Day Set by Congress

55.     On September 17, 2020, the Pennsylvania Supreme Court unconstitutionally vitiated Congress's set deadline for a single, uniform, federal Election Day and the Pennsylvania General Assembly's statutes consistent with that deadline.

56.     In *Pennsylvania Democratic Party v. Boockvar*, No. 133 MM 2020, 2020 WL 5554644 (Pa. Sept. 17, 2020), the Pennsylvania Supreme Court decided a case that had been filed by various plaintiffs seeking numerous changes to Pennsylvania's voting procedures. During the course of state court proceedings, Defendant Boockvar filed an application for extraordinary relief in the Pennsylvania Supreme Court. The Pennsylvania Supreme Court accepted extraordinary jurisdiction over the dissent of two justices and issued its decision on September 17, 2020.

57.     The Pennsylvania Supreme Court had two holdings relevant to the present Complaint. First, the Pennsylvania Supreme Court extended the receipt deadline for mail-in ballots. Now instead of the deadline set by the General Assembly of 8:00 PM on Election Day, mail-in ballots must be accepted if they arrive by 5:00 PM on Friday, November 6, 2020.

58.     Next, the Pennsylvania Supreme Court held that a mail-in ballot otherwise lacking a postmark or other proof of timely mailing would be *presumed* to have been cast before Election Day "unless a preponderance of the evidence demonstrate[d]" otherwise. *Pennsylvania Democratic Party*, 2020 WL 5554644 at *31.

59.     The result of these twin holdings is clear: votes that have not been cast on or before Election Day will be allowed to count in Pennsylvania.

60.     Under the new presumption, County Election Boards will be able to accept a ballot cast on November 4, 2020 as long as it is delivered by 5:00 PM on November 6, 2020. This vote will have been cast *after* the single, uniform, federal Election Day set by Congress.

61.     Under the new presumption, County Election Boards will be able to accept a ballot cast on November 5, 2020 as long as it is delivered by 5:00 PM on November 6, 2020. This vote will have been cast *after* the single, uniform, federal Election Day set by Congress.

62.     Under the new presumption, County Election Boards will be able to accept a ballot cast on November 4, 2020 as long as it is delivered by 5:00 PM that same day. This vote will have been cast *after* the single, uniform, federal Election Day set by Congress.

63.     In effect, the Pennsylvania Supreme Court has now created three new Election Days, despite the fact that Congress, under its paramount authority to regulate federal elections, only established *one day*—November 3, 2020. *See* 2 U.S.C. § 7 (establishing "*the day* for the

election" (emphasis added)); 3 U.S.C. § 1 (establishing "*the Tuesday*" when electors "shall be appointed" (emphasis added)).

64.     Further, the Pennsylvania Supreme Court has ordered Defendant County Election Boards to follow this presumption, which will allow the counting of ballots cast on these new, multiple, subsequent election days. *See Pennsylvania Democratic Party*, 2020 WL 5554644, at *31. And Defendant Boockvar will be obligated to certify results containing these ballots. By all indications, Defendant Boockvar will willingly do so as she celebrated the Pennsylvania Supreme Court's decision. *See* Kathy Boockvar (@KathyBoockvar), TWITTER (Sept 17, 2020, 1:48 PM), https://bit.ly/35oL6Lg("And in other big news, the PA Supreme Court issued a decisive victory for the voters of PA today, ensuring that every eligible voter will be able to more easily cast their ballot & have it counted fairly, and ensures the most accessible and safe election for PA! #TrustedInfo2020").

65.     It is not a speculative assertion that otherwise late ballots will be counted under the Pennsylvania Supreme Court's policy that Defendants must now follow. In fact, it is a near-certainty. Pennsylvania's own experience in the June primary shows that there will be late ballots. In the June primary, 18,115 ballots were returned to County Election Boards after the deadline set by the General Assembly. *See* Brian X. McCrone & Joe Brandt, *20,000 Mail-in Ballots Didn't Count in Pa.'s Primary, Half the '16 Victory Margin*, NBC 10 PHILADELPHIA (Sept. 14, 2020, updated on Oct. 6, 2020) (available at https://bit.ly/3kiFSqU).

66.     The Pennsylvania Supreme Court has no authority to order the Defendants to accept these late-returned, late-cast ballots. Under Article VI, Paragraph 2, the "Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the

land; and the *judges in every state* shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding" (emphasis added). U.S. CONST. art. 6.

67.    There is no dispute that Congress enacted 2 U.S.C. § 7 and 3 U.S.C. § 1 under its constitutional authority. *See Foster v. Love*, 522 U.S. 67, 69–70 (1997). And there can be no dispute that when Congress sets out a "single day throughout the Union" for an Election, any state that authorizes a federal election of *more than one* day conflicts with Congress's *single day* command. *Id.* Accordingly, that state's practice "ceases to be operative," *Ex parte Siebold*, 100 U.S. 371, 384 (1879), and Congress's statute must control the federal election.

### Pennsylvania's New Policies Injure the Plaintiffs

68.    Implementation of the Pennsylvania Supreme Court's unconstitutional creation of multiple Election Days and extension of the Receipt Deadline directly injures the plaintiffs.

69.    Plaintiff Jim Bognet as a candidate for Pennsylvania's 8th Congressional District has been harmed because the multiple Election Days and the extension of the Receipt Deadline allows County Boards of Elections to accept votes for Representative that would otherwise be unlawful in his election. This violation of 2 U.S.C. § 7 and the Elections Clause thus directly undermines his right to run in an election where Congress has paramount authority to set the "Times, Places, and Manner" and has done so in 2 U.S.C. § 7. *Cf. Moore v. U.S. House of Representatives*, 733 F.2d 946, 959 (D.C. Cir. 1984) (Scalia, J., concurring) (noting that "private" individuals have standing to assert a claim that their right to a public office has been impeded by unlawful means (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803); *Powell v. McCormack*, 395 U.S. 486 (1969))).

70.    Plaintiffs Donald K. Miller, Debra Miller, Alan Clark, and Jennifer Clark are residents of Somerset County. Plaintiffs Donald K. Miller, Debra Miller, Alan Clark, and Jennifer

Clark intend to vote in-person on the single, uniform, federal Election Day of November 3, 2020. Unlike mail-in ballot voters, Plaintiffs Donald K. Miller, Debra Miller, Alan Clark, and Jennifer Clark will not be able to cast their votes on November 4, 2020, or November 5, 2020, or November 6, 2020 before 5:00 PM. Instead, Plaintiffs Donald K. Miller, Debra Miller, Alan Clark, and Jennifer Clark must follow the law passed by Congress. But mail-in ballot voters do not. Thus, the Pennsylvania Supreme Court has created a "preferred class[es] of voters"—those who do not have to comply with Congress's set Election Day. *Gray v. Sanders*, 372 U.S. 368, 380 (1963). The Supreme Court has long held that "[t]he idea that every voter is equal to every other voter in his State, when he casts his ballot in favor of one of several competing candidates, underlies many of [the Court's] decisions." *Id.*

71.     Further, the unlawful casting of votes *after* the single, uniform, federal Election Day established by Congress will dilute Plaintiffs Donald K. Miller's, Debra Miller's, Alan Clark's, and Jennifer Clark's votes. When it comes to "'dilut[ing] the influence of honest votes in an election,' " whether the dilution is " 'in greater or less degree is immaterial;'" it is a violation of the Fourteenth Amendment. *Anderson v. United States*, 417 U.S. 211, 226–27 (1974); *see also Baker v. Carr*, 369 U.S. 186, 208 (1962). Moreover, Plaintiffs Donald K. Miller's, Debra Miller's, Alan Clark's, and Jennifer Clark's votes will be diluted to a greater degree than other voters. All are residents of Somerset County, a county where voters are requesting absentee ballots at a rate *far less* than the state average and *far less* than higher-density urban counties in Pennsylvania. Plaintiffs Donald K. Miller, Debra Miller, Alan Clark, and Jennifer Clark and other Somerset County voters are suffering a distinct and particularized dilution of their vote for Representative and Presidential Electors.

## CLAIM FOR RELIEF

### COUNT I

**Violation of the Elections Clause (U.S. CONST. art. I, § 4, cl. 1); 42 U.S.C. § 1983**

72.     The facts alleged in the foregoing paragraphs are incorporated by reference.

73.     The Elections Clause provides that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the *Legislature* thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." U.S. CONST. art. 1, § 4, cl. 1 (emphasis added).

74.     The Elections Clause establishes that Congress has the final word on the "Times, Places and Manner" of federal elections. Congress has acted under its authority to establish a single, uniform, federal Election Day under 2 U.S.C. § 7.

75.     This year that date is November 3, 2020.

76.     The Pennsylvania Supreme Court is not Congress, but nevertheless purported to create multiple election days *after* November 3, 2020.

77.     The Pennsylvania Supreme Court's decision allows the Defendant County Boards of Election to accept ballots that are cast after the single, uniform, federal Election Day of November 3, 2020.

78.     The Pennsylvania Supreme Court's decision allows Defendant Boockvar to certify results based on ballots that are cast after the single, uniform, federal Election Day of November 3, 2020.

79.     The Defendants will continue to act under state law to violate the Elections Clause and 2 U.S.C. § 7.

80.     Plaintiffs have no adequate remedy at law, and the Defendants' actions will inflict serious and irreparable harm unless the Defendants are enjoined from accepting ballots cast after Election Day.

## COUNT II

### Violation of U.S. CONST. art. 2, § 1, cl. 4; 3 U.S.C. § 1; 42 U.S.C. § 1983

81.     The facts alleged in the foregoing paragraphs are incorporated by reference.

82.     Article II, Section 1, clause 4 establishes that "Congress may determine the time of chusing the electors, and the day on which they shall give their votes; which day shall be the same throughout the United States." U.S. CONST. art. 2, § 1, cl. 4.

83.     Congress acted under its authority and set a single, uniform day for the selection of Presidential Electors in 3 U.S.C. § 1. This is the same date set in 2 U.S.C. § 7.

84.     This year that date is November 3, 2020.

85.     Pennsylvania chooses its Presidential Electors by popular vote on Election Day.

86.     The Pennsylvania Supreme Court is not Congress, but nevertheless purported to create multiple election days for Presidential Electors *after* November 3, 2020.

87.     The Pennsylvania Supreme Court's decision allows the Defendant County Boards of Election to accept ballots for President (and thus Presidential Electors) that are cast after the single, uniform, federal Election Day of November 3, 2020.

88.     The Pennsylvania Supreme Court's decision allows Defendant Boockvar to certify results based on ballots that are cast after the single, uniform, federal Election Day of November 3, 2020.

89.     The Defendants will imminently act under state law to violate 3 U.S.C. § 1.

90.     Plaintiffs have no adequate remedy at law, and the Defendants' actions will inflict serious and irreparable harm unless the Defendants are enjoined from accepting ballots cast after Election Day.

## COUNT III

**Violation of the Elections Clause (U.S. CONST. art. I, § 4, cl. 1); Presidential Electors Clause (U.S. CONST. art. 2, § 1, cl. 2); 42 U.S.C. § 1983**

91.     The facts alleged in the foregoing paragraphs are incorporated by reference.

92.     The Elections Clause provides that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the *Legislature* thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." U.S. CONST. art. 1, § 4, cl. 1 (emphasis added).

93.     The Presidential Electors Clause provides that "[e]ach state shall appoint, in such manner as *the Legislature* thereof may direct, a number of electors, equal to the whole number of Senators and Representatives to which the State may be entitled in the Congress." U.S. CONST. art. 2, § 1, cl. 2 (emphasis added).

94.     The Elections Clause and Presidential Electors Clause both require that state law concerning federal elections be prescribed in each state by "the Legislature thereof." That mandate operates as a limitation on how states may regulate federal elections. *See Colo. Gen. Assembly v. Salazar*, 541 U.S. 1093 (2004) (Rehnquist, C.J., joined by Scalia, J., and Thomas, J., dissenting from denial of certiorari). Whatever the scope of the state courts' authority in other contexts, under the United States Constitution they may not "prescribe[]" "[r]egulations" governing "[t]he Times, Places and Manner of holding Elections for Senators and Representatives" or the "manner" of appointing Presidential Electors.

95.     The Pennsylvania Supreme Court is *not* the Legislature of Pennsylvania. The General Assembly is. PA. CONST. art. II, § 1.

96.     Yet the Pennsylvania Supreme Court articulated a policy in its decision that is inconsistent with the Pennsylvania General Assembly's duly enacted elections laws.

97.     The Pennsylvania Supreme Court rewrote the General Assembly's Receipt Deadline and extended the deadline for the return of mail-in ballots to 5:00 PM on November 6, 2020. This is in direct contravention of the General Assembly's duly enacted Receipt Deadline.

98.     The Defendants will imminently act under color of state law to violate the Elections Clause and Presidential Electors Clause by following the Pennsylvania Supreme Court's policy.

99.     Plaintiffs have no adequate remedy at law, and the Defendants will inflict serious and irreparable harm unless the Defendants are enjoined from following the Pennsylvania Supreme Court's policy.

**COUNT IV**

**Violation of the Equal Protection Clause (U.S. CONST. amend. XIV, § 1); 42 U.S.C. § 1983**

100.     The facts alleged in the foregoing paragraphs are incorporated by reference.

101.     The Equal Protection Clause of the Fourteenth Amendment provides that state laws may not "deny to any person within" the state's "jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

102.     As relevant here, the Equal Protection Clause protects voters' rights in two ways. First, the Equal Protection Clause ensures voters' rights to have their ballots counted "at full value without dilution or discount." *Reynolds v. Sims*, 377 U.S. 533, 555 n.29 (1964). After all, "[o]bviously included within the right to [vote], secured by the Constitution, is the right of qualified voters within a state to cast their ballot and have them counted". *United States v. Classic*, 313 U.S. 299, 315 (1941). "[T]he right to have the vote counted," in turn, means counted "at full

value without dilution or discount." *Reynolds*, 377 U.S. at 555 n.29 (quoting *South v. Peters,* 339 U.S. 276, 279 (1950) (Douglas, J., dissenting)).

103.    Both direct denials and practices that otherwise allow for the counting of unlawful ballots dilute the effectiveness of individual votes, and thus can violate the Fourteenth Amendment. *See id.* at 555 ("[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.").

104.    The Defendants' imminent actions pursuant to the Pennsylvania Supreme Court's policy ensure the counting of votes that are *invalid* under the duly enacted laws of Congress and the General Assembly will be counted in two ways: (1) ballots cast after Election Day are treated presumptively as timely ballots; and (2) ballots that are received as late as 5:00 PM on November 6, 2020 will be timely. These changes are open invitations for the casting of ballots after the single, uniform, federal Election Day established by Congress, as well as counting ballots arriving after the deadline set by the Pennsylvania Legislature, which will have the direct and immediate effect of diluting the vote of Plaintiffs Donald K. Miller, Debra Miller, Alan Clark, and Jennifer Clark.

105.    Second, the Equal Protection Clause ensures that voters may "participate in" elections "on an equal basis with other citizens." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972),. To that end, a "State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104–105 (2000),  (internal citation and quotation marks omitted).

106.    The Supreme Court of Pennsylvania's decision deprives Plaintiffs Donald K. Miller, Debra Miller, Alan Clark, and Jennifer Clark of the Equal Protection Clause's guarantee

because it allows for "varying standards to determine what [i]s a legal vote" on an arbitrary basis. *Id*. at 104–105, 107.

107.    In fact, the presumption created by the Pennsylvania Supreme Court—that allows for the casting of votes *after* Election Day—was not even relief requested by the plaintiffs in that case seeking changes to Pennsylvania's voting laws. *See* Emergency Application for a Stay Pending the Filing and Disposition of a Petition for a Writ of Certiorari, No. 20A53, at 7 (U.S. Sept. 28, 2020). And the Pennsylvania Supreme Court created this presumption "[w]ithout further explanation." *Pennsylvania Democratic Party*, 2020 WL 5554644, at *40 (Mundy, J. dissenting). This arbitrary and "unilateral" alteration of Pennsylvania's voting rules, when no party sought the specific relief granted, is exactly the type of "unusual" change that the Supreme Court has held should not be made "on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1206–07 (2020).

108.    Nevertheless, Defendants will imminently act under color of state law to follow the Pennsylvania Supreme Court's decision to violate the Equal Protection Clause and its guarantees.

109.    Plaintiffs Donald K. Miller, Debra Miller, Alan Clark, and Jennifer Clark have no adequate remedy at law and will suffer serious and irreparable harm to their Constitutional right to equal protection of the laws and to participate in federal elections in Pennsylvania on an equal basis unless the Defendants are enjoined.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that:

(a)    The Court grant a declaratory judgment under 28 U.S.C. § 2201 that the Pennsylvania Supreme Court's policy of allowing ballots to be cast *after* the single, uniform, federal Election Day is unconstitutional under the Elections Clause and invalid;

(b)     The Court grant a declaratory judgment under 28 U.S.C. § 2201 that the Pennsylvania Supreme Court's policy of allowing ballots to be cast *after* the single, uniform, federal Election Day is unconstitutional under the Presidential Electors Clause and invalid;

(c)     The Court grant a declaratory judgment under 28 U.S.C. § 2201 that the Pennsylvania Supreme Court's policy of extending the General Assembly's receipt deadlines is unconstitutional under the Elections Clause and Presidential Electors Clause and invalid;

(d)     The Court grant a declaratory judgment under 28 U.S.C. § 2201 that the Pennsylvania Supreme Court's policy of extending the General Assembly's receipt deadlines and allowing for ballots to be cast and counted after Election Day is unconstitutional under the Equal Protection Clause and invalid;

(e)     The Court enter a preliminary and a permanent injunction enjoining Defendants from accepting ballots that lack proof of being cast on or before the single, uniform, federal Election Day established by Congress in 2 U.S.C. § 7, and 3 U.S.C. § 1;

(f)     The Court enter a preliminary and a permanent injunction enjoining Defendants from accepting ballots that are received after the Receipt Deadline established by the General Assembly.

(g)     The Court award Plaintiffs their reasonable costs and attorneys' fees under 42 U.S.C. § 1988; and

(h)     The Court grant Plaintiffs such other and further relief as may be just and equitable.

Dated: October 22, 2020

Respectfully submitted,

David H. Thompson*
Peter A. Patterson*
Cooper & Kirk, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
Telephone: (202) 220-9600
Fax: (202) 220-9601
dthompson@cooperkirk.com
ppatterson@cooperkirk.com

/s/ Bradley A. King
PA ID No. 307090
King Legal Group, LLC
114 North Maple Avenue
Greensburg, PA 15601
Telephone: (724) 836-1500
Fax: (724) 836-1668
bking@kinglg.com

　　*Pro hac vice* application
　　forthcoming

*Attorneys for Plaintiffs*