# EXHIBIT 3

Received 7/27/2020 9:46:34 PM Commonwealth Court of Pennsylvania

Filed 7/27/2020 9:46:00 PM Commonwealth Court of Pennsylvania
407 MD 2020

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PENNSYLVANIA DEMOCRATIC
PARTY, NILOFER NINA AHMAD,
DANILO BURGOS, AUSTIN DAVIS,
DWIGHT EVANS, ISABELLA
FITZGERALD, EDWARD GAINEY,
MANUEL M. GUZMAN, JR., JORDAN
A. HARRIS, ARTHUR HAYWOOD,
MALCOLM KENYATTA, PATTY H.
KIM, STEPHEN KINSEY, PETER
SCHWEYER, SHARIF STREET, and
ANTHONY H. WILLIAMS,

                   Petitioner,

    v.

KATHY BOOCKVAR, in her capacity as
Secretary of the Commonwealth of
Pennsylvania;

ADAMS COUNTY BOARD OF
ELECTIONS; ALLEGHENY COUNTY
BOARD OF ELECTIONS;
ARMSTRONG COUNTY BOARD OF
ELECTIONS; BEAVER COUNTY
BOARD OF ELECTIONS; BEDFORD
COUNTY BOARD OF ELECTIONS;
BERKS COUNTY BOARD OF
ELECTIONS; BLAIR COUNTY
BOARD OF ELECTIONS; BRADFORD
COUNTY BOARD OF ELECTIONS;
BUCKS COUNTY BOARD OF
ELECTIONS; BUTLER COUNTY
BOARD OF ELECTIONS; CAMBRIA
COUNTY BOARD OF ELECTIONS;
CAMERON COUNTY BOARD OF
ELECTIONS; CARBON COUNTY
BOARD OF ELECTIONS; CENTRE
COUNTY BOARD OF ELECTIONS;

Case No. 407 MD 2020

CHESTER COUNTY BOARD OF
ELECTIONS; CLARION COUNTY
BOARD OF ELECTIONS;
CLEARFIELD COUNTY BOARD OF
ELECTIONS; CLINTON COUNTY
BOARD OF ELECTIONS; COLUMBIA
COUNTY BOARD OF ELECTIONS;
CRAWFORD COUNTY BOARD OF
ELECTIONS; CUMBERLAND
COUNTY BOARD OF ELECTIONS;
DAUPHIN COUNTY BOARD OF
ELECTIONS; DELAWARE COUNTY
BOARD OF ELECTIONS; ELK
COUNTY BOARD OF ELECTIONS;
ERIE COUNTY BOARD OF
ELECTIONS; FAYETTE COUNTY
BOARD OF ELECTIONS; FOREST
COUNTY BOARD OF ELECTIONS;
FRANKLIN COUNTY BOARD OF
ELECTIONS; FULTON COUNTY
BOARD OF ELECTIONS; GREENE
COUNTY BOARD OF ELECTIONS;
HUNTINGDON COUNTY BOARD OF
ELECTIONS; INDIANA COUNTY
BOARD OF ELECTIONS; JEFFERSON
COUNTY BOARD OF ELECTIONS;
JUNIATA COUNTY BOARD OF
ELECTIONS; LACKAWANNA
COUNTY BOARD OF ELECTIONS;
LANCASTER COUNTY BOARD OF
ELECTIONS; LAWRENCE COUNTY
BOARD OF ELECTIONS; LEBANON
COUNTY BOARD OF ELECTIONS;
LEHIGH COUNTY BOARD OF
ELECTIONS; LUZERNE COUNTY
BOARD OF ELECTIONS; LYCOMING
COUNTY BOARD OF ELECTIONS;
MCKEAN COUNTY BOARD OF
ELECTIONS; MERCER COUNTY
BOARD OF ELECTIONS; MIFFLIN

2

COUNTY BOARD OF ELECTIONS;
MONROE COUNTY BOARD OF
ELECTIONS; MONTGOMERY
COUNTY BOARD OF ELECTIONS;
MONTOUR COUNTY BOARD OF
ELECTIONS; NORTHAMPTON
COUNTY BOARD OF ELECTIONS;
NORTHUMBERLAND COUNTY
BOARD OF ELECTIONS; PERRY
COUNTY BOARD OF ELECTIONS;
PHILADELPHIA COUNTY BOARD
OF ELECTIONS; PIKE COUNTY
BOARD OF ELECTIONS; POTTER
COUNTY BOARD OF ELECTIONS;
SCHUYLKILL COUNTY BOARD OF
ELECTIONS; SNYDER COUNTY
BOARD OF ELECTIONS; SOMERSET
COUNTY BOARD OF ELECTIONS;
SULLIVAN COUNTY BOARD OF
ELECTIONS; SUSQUEHANNA
COUNTY BOARD OF ELECTIONS;
TIOGA COUNTY BOARD OF
ELECTIONS; UNION COUNTY
BOARD OF ELECTIONS; VENANGO
COUNTY BOARD OF ELECTIONS;
WARREN COUNTY BOARD OF
ELECTIONS; WASHINGTON
COUNTY BOARD OF ELECTIONS;
WAYNE COUNTY BOARD OF
ELECTIONS; WESTMORELAND
COUNTY BOARD OF ELECTIONS;
WYOMING COUNTY BOARD OF
ELECTIONS; and YORK COUNTY
BOARD OF ELECTIONS,

                    Respondents.

## APPLICATION FOR LEAVE TO INTERVENE

Proposed Intervenor-Respondents Donald J. Trump for President, Inc., the Republican Party of Pennsylvania, and the Republican National Committee (collectively, "Republican Committees"), by and through undersigned counsel, respectfully submit the following Application for Leave to Intervene as Respondents in this original jurisdiction matter under Pennsylvania Rules of Appellate Procedure 106, 123, and 1531(b) and Pennsylvania Rules of Civil Procedure 2326 through 2329, and aver the following in support thereof:

## PRELIMINARY STATEMENT

The Republican Committees support and seek to uphold orderly free and fair elections for all Pennsylvanians and for all voters across the country.

For that reason, on June 29, 2020, two of the Republican Committees filed suit in the U.S. District Court for the Western District of Pennsylvania to protect the constitutional rights of Pennsylvania voters ("Federal Action").  In particular, the two Republican Committees' Federal Action seeks a declaration that Commonwealth officials' failure to implement the plain terms of Act 77—Pennsylvania's new law that introduced no-excuse mail voting in the Commonwealth—violates the U.S. and Pennsylvania Constitutions.

Counts I and II of the two Republican Committees' federal complaint brings claims that the Commonwealth's authorization of Boards of Elections in some

counties to count absentee or mail ballots submitted without a secrecy envelope, and to count ballots submitted at "drop boxes" or locations other than the office of the county Board of Elections, violates the First and Fourteenth Amendments and the Equal Protection Clause of the U.S. Constitution. *See Donald J. Trump For President, Inc. v. Boockvar*, No. 2:20-cv-00966, Compl. ¶¶ 145–168 (W.D. Pa. June 29, 2020) (Ex. A). As the federal complaint lays out, these actions contravene the Pennsylvania Election Code by permitting the counting of invalid ballots, improperly "allow[] illegal absent and mail-in voting, ballot harvesting, and other fraud to occur and/or go undetected, and will result in dilution of validly cast ballots." *Id.* ¶¶ 154, 164.

Count III pleads claims that the Commonwealth's actions violate the Equal Protection and Free and Equal Elections Clauses of the Pennsylvania Constitution. *See id.* ¶¶ 168–174. Counts IV and V respectively plead claims that Pennsylvania's residency and polling-place restrictions on poll watchers violate the U.S. and Pennsylvania Constitutions. *See id.* ¶¶ 175–188. And Counts VI and VII bring federal and state constitutional claims against Commonwealth officials' failure to provide adequate notice of drop box locations. *See id.* ¶¶ 189–204.

The Federal Action already has begun to progress significantly toward resolution in advance of the November 3 general election. On July 17, the federal court entered a scheduling order granting a speedy hearing and expedited discovery

in that case.  *See* Federal Scheduling Order (Ex. B).   That scheduling order encourages motion to dismiss briefing to be completed by July 31, requires discovery to be completed by August 26, and schedules the evidentiary hearing for September 22 and 23.  *See id.* at 2–8.

Petitioners' suit in this Court is in large part a mirror image of the Federal Action—and a transparent attempt to forum-shop away from federal court and into this Court.  Petitioners filed this suit on July 10, eleven days after the two Republican Committees filed the Federal Action, and named as Respondents all the same parties whom the two Republican Committees named as defendants in the Federal Action. *See* Pet.   Petitioners also ask this Court to *require* the very actions that the Republican Committees have alleged are unlawful.

Indeed, Count I of the Petition seeks a declaration directing Boards of Elections to establish drop boxes and collect ballots at locations other than the boards' offices; Count IV seeks declaratory and injunctive relief requiring Boards of Elections to count ballots submitted without secrecy envelopes; and Count V seeks a declaration that the residency restriction on poll watchers does not violate the U.S. or Pennsylvania Constitutions.  *Id.* ¶¶ 162–70, 192–207.  The Petition also seeks injunctions extending Act 77's Election Day Receipt Deadline (Count II, ¶¶ 171–

83) and requiring a cure period for invalidly cast absentee and mail ballots (Count III, ¶¶ 184–91).

The Republican Committees have a clear and obvious interest in the issues presented in this suit—and in ensuring that those issues are properly and fairly litigated in their first-filed federal suit.  For this reason alone, the Court should grant intervention.

Moreover, the Republican Committees have a right to intervene in this suit for another—and independent—reason: they seek to uphold the Election Code under which they, their voters, their members, and their candidates exercise their constitutional rights to vote and to participate in elections in Pennsylvania. Petitioners ask the Court for a sweeping judicial order that would rewrite the terms of Act 77 and impose a different mail-voting regime on the Commonwealth, its citizens, and its voters.  Petitioners' requested relief not only would dramatically alter the rules governing the November general election in Pennsylvania, but also would usurp the political branches' authority to enact the laws governing the Commonwealth's elections.

As explained more fully below, political parties have a recognized interest to assert and protect the rights of their members in upcoming elections and to protect their own agendas and resources from such changes to election laws.  Moreover, the Republican Committees have made significant investments in support of Republican

candidates up and down the ballot and in connection with voter mobilization and education efforts in Pennsylvania for the past many election cycles, and intend to do so again in 2020.   The Republican Committees thus have a substantial and particularized interest in defending this action to preserve the structure of the competitive environment in which their supported candidates participate and to ensure that Pennsylvania carries out free and fair elections.   No other party to this action represents these private interests, and therefore this timely application for intervention should be granted.

The Republican Committees respectfully request that the Court grant their application to intervene as Respondents, and to permit them to file of record the Preliminary Objections and Answer to Petitioners' Application for Expedited Discovery Schedule and Evidentiary Hearing attached hereto.

## I.   BACKGROUND

### A.   The Republican Committees.

1.     Donald J. Trump for President, Inc. (the "Trump Campaign") is the principal committee for the reelection campaign of Donald J. Trump, the 45th President of the United States of America.   President Trump is the presumptive Republican nominee for the office of the President of the United States of America in the upcoming November 3, 2020 General Election.   The Trump Campaign seeks to intervene on its own behalf and on behalf of its candidate, President Trump.

5

President Trump is a "candidate" as that term is defined in Election Code Section 102(a), 25 P.S. § 2602(a). *See Rowland v. Smith*, 83 Pa. D. & C. 99, 101-2 (Pa. Ct. Com. Pl. Dauphin 1952) ("candidate" under the Election Code includes one who is a candidate for nomination for President of the United States).

2.      The Republican Party of Pennsylvania is a major political party, 25 P.S. § 2831(a), and the "State committee" for the Republican Party in Pennsylvania, 25 P.S. § 2834, as well as a federally registered "State Committee" of the Republican Party as defined by 52 U.S.C. § 30101(15). The Republican Party of Pennsylvania on behalf of itself and its members nominates, promotes, and assists Republican candidates seeking election or appointment to federal, state, and local office in Pennsylvania. It works to accomplish this purpose by, among other things, devoting substantial resources toward educating, mobilizing, assisting, and turning out voters in Pennsylvania. The Republican Party of Pennsylvania has made significant contributions and expenditures in support of Republican candidates up and down the ballot and in mobilizing and educating voters in Pennsylvania in the past many election cycles and intends to do so again in 2020. The Republican Party of Pennsylvania has a substantial and particularized interest in ensuring that Pennsylvania carries out free and fair elections.

3.      The Republican National Committee ("RNC") is the national committee of the Republican Party as defined by 52 U.S.C. § 30101(14). The RNC

manages the Republican Party's business at the national level, including development and promotion of the Party's national platform and fundraising and election strategies; supports Republican candidates for public office at all levels across the country, including those on the ballot in Pennsylvania; and assists state parties throughout the country, including the Republican Party of Pennsylvania, to educate, mobilize, assist, and turn out voters. The RNC has made significant contributions and expenditures in support of Republican candidates up and down the ballot and in mobilizing and educating voters in Pennsylvania in the past many election cycles and intends to do so again in 2020. The RNC has a substantial and particularized interest in ensuring that Pennsylvania carries out free and fair elections.

**B.     Procedural history.**

4.     On June 29, the Trump Campaign and RNC, joined by other plaintiffs, filed a lawsuit in the U.S. District Court for the Western District of Pennsylvania against Kathy Boockvar, the Secretary of the Commonwealth, and the Boards of Elections of each of Pennsylvania's 67 counties. *See* Compl. (Ex. A). The Trump Campaign and RNC filed that lawsuit in response to the Defendants' widespread

failure to enforce the requirements of Act 77 in connection with the June 2 primary election.

5.     In the Federal Action, the Trump Campaign and RNC seek declaratory and injunctive relief preventing the Boards of Elections from collecting absentee and mail-in ballots at any location other than the Boards' offices.  They also seek relief prohibiting the Boards of Elections from counting any absentee or mail-in ballot not contained in a secrecy envelope.  Finally, the Trump Campaign and RNC request that the court enjoin certain restrictions on poll watchers, including the residency and polling-place restrictions.

6.     On July 10, the Petitioners filed their Petition for Review in this matter addressed to the Court's original jurisdiction.  Petitioners seek to leverage the COVID-19 pandemic into a judicial rewrite of Act 77.

7.     The Petition is in large part a mirror image of the two Republican Committees' complaint in the Federal Action.  Respondents in this action are the identical parties as the defendants in the Federal Action.  Moreover, Petitioners ask the Court to declare that county Boards of Elections may collect absentee and mail-in ballots at locations other than the Boards' offices; to extend the return deadline for absentee and mail-in ballots; to require that Respondents give voters the opportunity to cure defects on their ballots; to require that Respondents count ballots

not contained in a secrecy envelope; and to declare that the poll watcher residency requirement is lawful. *See* Pet. ¶¶ 162–207.

8.    This case is still in its infancy.  As of the filing of this Application for Leave to Intervene, the only pleadings that have been filed in this proceeding are two Motions to Expedite (one of which the Court denied) and Entries of Appearance for Respondents.  The Court has set a deadline of July 27 for Respondents' Answers to the pending Motion to Expedite.

9.    On July 13, Petitioners moved to intervene in the Federal Action. Neither their motion to intervene nor their memorandum in support mentioned this lawsuit.  *See* Docs. 83, 85, *Donald J. Trump for President, Inc. v. Boockvar*, Case No. 2:20-cv-966-NR (W.D. Pa.).  Petitioners filed as an exhibit to their memorandum in support a proposed motion to dismiss, which would ask the federal court to stay the Federal Action pending this Court's resolution of Petitioners' claims.  *See* Doc. 85-2, *Donald J. Trump for President, Inc. v. Boockvar*, Case No. 2:20-cv-966-NR (W.D. Pa.).

10.    On July 17, the court in the Federal Action granted in part the two Republican Committees' Motion to Expedite and issued a Scheduling Order providing for an expedited timeline of the case. *See* Scheduling Order (Ex. B). The scheduling order in the Federal Action encourages motion to dismiss briefing to be

completed by July 31, requires discovery to be completed by August 26, and schedules the evidentiary hearing for September 22 and 23.  *See id.* at 2–8.

## II.     THE GOVERNING INTERVENTION STANDARD

11.     A nonparty may file an application for leave to intervene in an original jurisdiction petition for review.  Pa. R.A.P. 1531(b).

12.     "The right to intervention should be accorded to anyone having an interest of his own which no other party on the record is interested in protecting." *Keener v. Zoning Hearing Bd. of Millcreek Twp.*, 714 A.2d 1120, 1123 (Pa. Commw. Ct. 1998) (citing *Bily v. Bd. of Property Assessment, Appeals and Review of Allegheny Cty.*, 44 A.2d 250 (Pa. 1945)).

13.     The standards for intervention under Pennsylvania Rules of Civil Procedure 2326 to 2329 apply to an original jurisdiction petition for review because Pennsylvania Rule of Appellate Procedure 106 ("Original Jurisdiction Matters") applies the "general rules" for practice in the courts of common pleas—namely, the Rules of Civil Procedure—"so far as they may be applied."

14.     Pennsylvania Rule of Civil Procedure 2327(4) is permissive and provides in pertinent part:

> At any time during the pendency of an action, a person not a party thereto *shall be permitted to intervene therein*, subject to these rules *if . . . the determination of such action may affect any legally enforceable interest of such person* whether or not such person may be bound by a judgment in the action.

Pa. R.C.P. No. 2327(4) (emphasis added); *see also Allegheny Reprod. Health Ctr. v. Pa. Dep't of Human Servs*., No. 26 M.D. 2019, 2020 Pa. Commw. LEXIS 104, 2020 WL 424866, at *5 (Pa. Commw. Ct. Jan. 28, 2020) ("Pennsylvania Rule of Civil Procedure No. 2327(4) . . . permits intervention where the determination '*may affect* any legally enforceable interest' of a proposed intervenor." (quoting Pa. R.C.P. No. 2327(4) and emphasis in original)).

15.    If the determination may affect the intervenor's legally enforceable interest, and no exception applies, approving intervention is mandatory, not discretionary.  *Larock v. Sugarloaf Twp. Zoning Hearing Bd*., 740 A.2d 308, 313 (Pa. Commw. Ct. 1999).

16.    Moreover, the Court may, in its discretion, allow intervention even if it determines that one of the Rule 2329 exceptions applies.  *See* Pa. R.C.P. 2329 (instructing that "an application for intervention *may* be refused" if an exception applies (emphasis added)); *see also* 7 Goodrich Amram 2d § 2329:7 ("Even though the petitioner's interest is adequately represented in the pending action, this fact does not mandate the refusal of intervention since the refusal of intervention on the ground of the adequacy of the representation is permissive in nature.").

17.    The Court should grant the Republican Committees' application to intervene because the Court's determination of this action may affect the Republican Committees' legally enforceable interests, no exception applies under Pennsylvania

Rule of Civil Procedure 2329, and the Republican Committees' participation will aid the Court.

## III.   BASIS FOR THE REPUBLICAN COMMITTEES' INTERVENTION

### A.   The Republican Committees have substantial interest in this action.

18.   The Republican Committees, on behalf of their supported candidates, voters, and own institutional interests, have a substantial and particularized interest in preserving the state election laws challenged in this action, which were enacted to ensure the structure and integrity of Pennsylvania's elections.

19.   In the first place, courts have recognized that intervention is "uniquely" appropriate where the proposed intervenor represents the "'mirror-image' interests of the plaintiffs" who brought the lawsuit. *Democratic Nat'l Comm. v. Bostelmann*, No. 20-cv-249-wmc, 2020 U.S. Dist. LEXIS 76765, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020) (quoting *Builders Ass'n of Greater Chicago v. Chicago*, 170 F.R.D. 435, 441 (N.D. Ill. 1996)).   This principle applies with full force to political parties and committees.   *See id.* (permitting Republican National Committee to intervene in case brought by Democratic National Committee). In their memorandum in support of their motion to intervene in the Federal Action, Petitioners themselves have asserted that their "interests . . . mirror the interests, as applicable, of" the Republican Committees.   Doc. 85 at 2, *Donald J. Trump for President, Inc. v. Boockvar*, Case No. 2:20-cv-966-NR (W.D. Pa.).   Thus, by

12

Petitioners' own assertion, the Republican Committees represent the mirror image of Petitioners' interests and should be granted intervention in this suit.  *See id.*; *see also Bostelmann*, 2020 U.S. Dist. LEXIS 76765, 2020 WL 1505640, at *5.

20.    Moreover, there can be no question that the Republican Committees have direct and significant interests in the continued enforcement of Pennsylvania's laws governing mail-in ballots—including the established return deadline—as those laws are designed to ensure "the integrity of [the] election process," *Eu v. San Fran. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989), and the "orderly administration" of elections, *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) (op. of Stevens, J.).  Were these validly enacted laws to be cast aside, the current competitive electoral environment in Pennsylvania, in which the Republican Committees invest substantial resources in support of Republican candidates to try to win elections, would be altered or impaired.  *See League of Women Voters v. Commonwealth*, 178 A.3d 737, 741 n.5, 800 (Pa. 2018); *see* ¶¶ 1–4, *supra*.

21.    Courts routinely recognize that political parties have interests supporting intervention in litigation concerning elections and election procedures. *See, e.g.*, *Siegel v. LePore*, 234 F.3d 1163, 1169 n.1 (11th Cir. 2001); *Trinsey v. Pennsylvania*, 941 F.2d 224, 226 (3d Cir. 1991); *Anderson v. Babb*, 632 F.2d 300, 304 (4th Cir. 1980); *Democratic Nat'l Comm.*, 2020 U.S. Dist. LEXIS 76765, 2020 WL 1505640, at *5; *Citizens United v. Gessler*, No. 14-002266, 2014 U.S. Dist.

LEXIS 128669, 2014 WL 4549001, at *2 (D. Colo. Sept. 15, 2014); *Libertarian Party of Mich. v. Johnson*, No. 12-12782, 2012 U.S. Dist. LEXIS 126096 (E.D. Mich. Sept. 5, 2012); *Radogno v. Ill. State Bd. of Elections*, No. 1:11-cv-4884, 2011 U.S. Dist. LEXIS 134520, 2011 WL 5868225, *1 (N.D. Ill. Nov. 22, 2011); *Hastert v. State Bd. of Elections*, 777 F. Supp. 634, 639 (N.D. Ill. 1991).  Indeed, courts generally recognize that political parties have "an interest in the subject matter of [a] case," when "changes in voting procedures could affect candidates running as Republicans and voters who [are] members of the . . . Republican Party."  *See Ohio Democratic Party v. Blackwell*, No. 04-1055, 2005 WL 8162665, at *2 (S.D. Ohio Aug. 26, 2005).

22.    If Petitioners' action succeeds, the orderly administration of Pennsylvania's elections will be upended shortly before a critical general election.

23.    Not only would this undercut democratically enacted laws that protect voters and candidates (including the Republican Committees' members), *Caba v. Weaknecht*, 64 A.3d 39, 50 (Pa. Commw. Ct. 2013) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008)), it would change the "structur[e] of [the] competitive environment" in Pennsylvania's elections and "fundamentally alter the environment in which [the Republican Committees] defend their concrete interests (e.g. their interest in . . . winning [elections])," *Shays v. Fed. Elec. Comm'n*, 414 F.3d 76, 86 (D.C. Cir. 2005).

14

24.     Such extremely late changes also risk confusing voters and undermine confidence in the electoral process. *See, e.g.*, *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) ("Court orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase."). And the Republican Committees will be forced to spend substantial resources informing their Republican voters of changes in the law, fighting inevitable confusion, and galvanizing participation as a result of such a change.

25.     Such interference with Pennsylvania's election scheme—and with the Republican Committees' electoral activities—would impair the Republican Committees' interests on behalf of their candidates, members, and themselves, and thus warrants intervention.

26.     Finally, the Trump Campaign's and RNC's status as plaintiffs in the earlier-filed Federal Action further supports intervention. A party is entitled to intervention if "its interest may be impaired because it seeks relief that is divergent from, or incompatible with the relief sought by" the original parties. *N. California River Watch v. Fluor Corp.*, No. 10-CV-05105-MEJ, 2014 WL 3385287, at *18 (N.D. Cal. July 9, 2014) (citing *United States v. Stringfellow,* 783 F.2d 821, 827 (9th Cir. 1986), *vacated on other grounds*, 480 U.S. 370 (1987)); *see also San Diego Cattlemen's Coop. Ass'n v. Vilsack*, 318 F.R.D. 646, 649 (D.N.M. 2015) (allowing

plaintiffs in different lawsuits to intervene in each other's cases in part because they "seek conflicting rulings on the same subject matter and request incompatible injunctions"). The potential preclusive or *stare decisis* effect of a decision is sufficient impairment of a party's interest to justify intervention. *See, e.g.*, *Commonwealth of Pennsylvania v. President United States of America*, 888 F.3d 52, 59 (3d Cir. 2018).

27.     In the Federal Action, the Trump Campaign and RNC have asked the court for an order that, *inter alia*, requires that county Boards of Elections collect absentee and mail-in ballots only at their respective offices; prohibits the counting of absentee and mail-in ballots that lack a secrecy envelope; and enjoins certain restrictions on poll watchers. *See* Compl. (Ex. A). Petitioners subsequently filed this parallel lawsuit seeking contrary relief, including an order declaring that Boards of Elections may establish multiple ballot-collection sites, requiring that Boards must count ballots not contained in a secrecy envelope, and confirming that the poll watcher residency requirement is lawful.

28.     A judgment in this action granting some or all of the Petitioners' requested relief threatens the availability of relief to the two Republican Committees in the Federal Action. Accordingly, the Republican Committees are entitled to intervene here to protect their interests in that case.

**B.      There is no basis to refuse the Republican Committees' application for intervention.**

29.      Pennsylvania Rule of Civil Procedure 2329 provides that an application for intervention may be refused if: (1) the petitioner's claim or defense "is not in subordination to and in recognition of the propriety of the action"; (2) the petitioner's interest is already adequately represented; or (3) "the petitioner has unduly delayed in making application for intervention or the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties."

30.      None of these factors applies to the Republican Committees.[1]

31.      First, the Republican Committees' defense in this action is in subordination to and in recognition of the action's propriety.

32.      Second, no existing party adequately represents the Republican Committees' particularized interests.  *See* Pa. R.C.P. No. 2329(2).  Petitioners clearly do not represent the Republican Committees' interests in this case, and Respondents do not adequately represent them either.

33.      Although the Republican Committees and Respondents putatively share some of the same goals in upholding Pennsylvania's election laws, their interests are not identical.

---

[1] As explained above, the Court retains discretion to allow the Republican Committees to intervene even if it concludes that an exception under Rule 2329 applies.  Pa. R.C.P. 2329; 7 Goodrich Amram 2d § 2329:7.

34.     Respondents, as Commonwealth officials, do not represent the private interests of the Republican Committees at stake in this litigation, which are fundamentally different from, and far narrower than, the broad public interests represented by Respondents.  Indeed, "the government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a [private movant] merely because both entities occupy the same posture in the litigation."  *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255-56 (10th Cir. 2001); *see also, e.g.*, *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) ("[W]e look skeptically on government entities serving as adequate advocates for private parties." (citing *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003)).

35.     Whereas the Republican Committees have particularized interests in maintaining the competitive electoral environment adopted through Act 77, Respondents have no interest in the election of particular candidates.  *See, e.g., Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (holding that the government's representation of the general public interest did not adequately represent the intervenor's narrower private interests, despite the similarity in their goals).  Instead, in acting on behalf of all Pennsylvania citizens and the Commonwealth, Respondents must consider "a range of interests likely to diverge from those of the intervenors."  *Meek v. Metro. Dade Cty.*, 985 F.2d 1471, 1478

(11th Cir. 1993).  In other words, "[i]n litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of [a private party] intervenor."  *Utah Ass'n of Ctys.*, 255 F.3d at 1256.  These considerations may include "the expense of defending the current [laws] out of [state] coffers," *Clark v. Putnam Cty.*, 168 F.3d 458, 461–62 (11th Cir. 1999), "the social and political divisiveness of the election issue," *Meek*, 985 F.2d at 1478, "their own desires to remain politically popular and effective leaders," *id.*, and the interests of opposing parties, *In re Sierra Club*, 945 F.2d 776, 779–80 (4th Cir. 1991).  Given that Respondents may take these other interests into account, their interests may diverge with the Republican Committee's interests throughout this litigation.

36.    Indeed, many Respondents have already taken positions contrary to those taken by the Republican Committees.  Several Boards of Elections received ballots at locations other than their offices during the June primary.  *See* Pet. ¶¶ 84–86.  By way of example, the Delaware County Board of Elections installed drop boxes for the return of absentee and mail-in ballots at every polling place in the county, facilitating ballot harvesting in the process.  *See* https://www.delcopa.gov/publicrelations/releases/2020/june2primaryupdate.html. And many Boards, pursuant to advice issued by Respondent Boockvar, counted absentee and mail-in ballots not contained in a secrecy envelope during that same

19

election.  *See id.* ¶¶ 126–27.   The Secretary of State's issuance of guidance that directly violates the Election Code, and some Boards of Elections' following of that advice, exceeded those Respondents' authority under the Election Code.   Instead, those Respondents effectively usurped the legislative authority of the General Assembly, implementing their own election rules without regard to the clear direction set forth in the Election Code.   Thus, Respondents clearly do not adequately represent all the Republican Committees' interests in this case.

37.    Third, the Republican Committees have not unduly delayed submitting their application to intervene in this action, which remains in its infancy.   The Petition was filed only 17 days ago, and the  Republican Committees filed this application, together with the preliminary objections and answer to Petitioners' Application for Expedited Discovery Schedule and Evidentiary Hearing, in compliance with the response deadline set by the Court.   The Republican Committees' Intervention will not cause any undue delay, embarrassment, or prejudice to any party, but it will aid the Court in resolving the important legal and factual questions before it.

## IV.   CONCLUSION

38.    For the reasons set forth above, the Republican Committees have a clear right to intervene in this case challenging important state laws governing the administration of Pennsylvania's elections.

39.    Pursuant to Pennsylvania Rule of Civil Procedure 2328, the Republican Committees attach a copy of the pleading, in the form of Preliminary Objections (attached as Exhibit C), they will file in the action if permitted to intervene.

40.    To avoid any undue delay, the Republican Committees have also attached a copy of the answer to Petitioners' Application for Expedited Discovery Schedule and Evidentiary Hearing (attached as Exhibit D) they will file in the action if permitted to intervene.

**WHEREFORE**, for the foregoing reasons, Donald J. Trump for President, Inc., the Republican Party of Pennsylvania, and the Republican National Committee respectfully request that this Honorable Court GRANT this Application for Leave to Intervene, and DIRECT the Commonwealth Court Prothonotary to enter the names of Donald J. Trump for President, Inc. and Republican National Committee on the docket in this matter as Intervenor Respondents, and DOCKET the Intervenor Respondents' Preliminary Objections, attached as Exhibit C, and Answer to Petitioners' Application for Expedited Discovery Schedule and Evidentiary Hearing, attached as Exhibit D.

Dated:  July 27, 2020

Respectfully submitted,

*/s/ Kathleen A. Gallagher*
Ronald L. Hicks, Jr. (PA #49520)
Kathleen A. Gallagher (PA #37950)
Jeremy A. Mercer (PA #86480)
Russell D. Giancola (PA #200058)
PORTER WRIGHT MORRIS & ARTHUR LLP
6 PPG Place, Third Floor
Pittsburgh, PA 15222 / (412) 235-4500
rhicks@porterwright.com
kgallagher@porterwright.com
jmercer@porterwright.com
rgiancola@porterwright.com

John M. Gore *
E. Stewart Crosland *
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com

*Counsel for Proposed Intervenor-Respondents
Donald J. Trump for President, Inc., the
Republican Party of Pennsylvania, and the
Republican National Committee*

*\*Pro hac vice application forthcoming*

## <u>CERTIFICATION REGARDING PUBLIC ACCESS POLICY</u>

I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.


*/s/ Kathleen A. Gallagher*