# EXHIBIT 4

**EXHIBIT 4**

Received 5/11/2020 5:29:13 PM Commonwealth Court of Pennsylvania

Filed 5/11/2020 5:29:00 PM Commonwealth Court of Pennsylvania
266 MD 2020

| | |
|---|---|
| **PORTER WRIGHT MORRIS & ARTHUR LLP** | **JONES DAY** |
| Kathleen A. Gallagher | John M. Gore * |
| PA I.D. #37950 | E. Stewart Crosland * |
| Russell D. Giancola | J. Benjamin Aguinaga * |
| PA. I.D. #200058 | 51 Louisiana Avenue, N.W. |
| 6 PPG Place, Third Floor | Washington, DC 20001 |
| Pittsburgh, PA 15222 | Phone: (202) 879-3939 |
| Phone:  (412) 235-4500 | *Pro hac vice application forthcoming* |

*Counsel for Proposed Intervenor-Respondents*
*Republican Party of Pennsylvania,*
*Republican National Committee, and*
*National Republican Congressional Committee*

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Michael Crossey, Dwayne Thomas, Irvin Weinreich, Brenda Weinreich, and the Pennsylvania Alliance for Retired Americans, | No. 266 MD 2020 |
| Petitioners, | |
| v. | |
| Kathy Boockvar, Secretary of the Commonwealth, and Jessica Mathis, Director of the Bureau of Election Services and Notaries, | |
| Respondents. | |

## APPLICATION FOR LEAVE TO INTERVENE

Proposed Intervenor-Respondents, the Republican Party of Pennsylvania,

Republican National Committee, and National Republican Congressional

Committee (collectively, "Republican Committees"), by and through undersigned

counsel, respectfully submit the following Application for Leave to Intervene as Respondents in this original jurisdiction matter under Pennsylvania Rules of Appellate Procedure 106, 123, and 1531(b) and Pennsylvania Rules of Civil Procedure 2326 through 2329, and aver the following in support thereof:

## PRELIMINARY STATEMENT

The Republican Committees support and seek to uphold orderly free and fair elections for all Pennsylvanians and for all voters across the country.

For this reason, the Republican Committees, on behalf of themselves, their candidates, and their member voters, seek to intervene in this action.  This case challenges the legality of several Pennsylvania laws that the General Assembly enacted to ensure the structure and integrity of the State's elections.  Were the Court to declare these laws unconstitutional and enjoin their enforcement as Petitioners request, it would dramatically alter the rules governing Pennsylvania's upcoming primary and general elections in which the Republican Committees' supported candidates and member voters participate.

Under Pennsylvania's liberal intervention standard, the Republican Committees have a right to intervene in this case.  Indeed, political parties have a recognized interest to assert and protect the rights of their members in upcoming elections and to protect their own agendas and resources from changes to validly enacted and commonsense election laws.  Moreover, the Republican Committees

have made significant investments in support of Republican candidates up and down the ballot and on voter mobilization and education efforts in Pennsylvania for many past election cycles, and intend to do so again in 2020. They thus have a substantial and particularized interest in defending this action to preserve the structure of the competitive environment in which their supported candidates participate and to ensure that Pennsylvania carries out free and fair elections. No other party to this action represents these private interests, and therefore this timely application for intervention should be granted.

The Republican Committees, therefore, respectfully request that the Court grant their application to intervene as Respondents, and permit them to file the Preliminary Objections attached hereto.

## I.     BACKGROUND

### A.     The Republican Committees.

1.     The Republican Party of Pennsylvania is a major political party, 25 P.S. § 2831(a), and the State committee for the Republican Party in Pennsylvania, 25 P.S. § 2834, as well as a federally registered "State Committee" of the Republican Party as defined by 52 U.S.C. § 30101(15). The Republican Party of Pennsylvania on behalf of itself and its members nominates, promotes, and assists Republican candidates seeking election or appointment to federal, state, and local office in Pennsylvania. It works to accomplish this purpose by, among other things, devoting

substantial resources toward educating, mobilizing, assisting, and turning out voters in Pennsylvania.  The Republican Party of Pennsylvania has made significant contributions and expenditures in support of Republican candidates up and down the ballot and in mobilizing and educating voters in Pennsylvania in the past many election cycles and intends to do so again in 2020.  The Republican Party of Pennsylvania has a substantial and particularized interest in ensuring that Pennsylvania carries out free and fair elections in accordance with its validly enacted election laws.

2.      The Republican National Committee ("RNC") is the national committee of the Republican Party as defined by 52 U.S.C. § 30101(14).  The RNC manages the Republican Party's business at the national level, including development and promotion of the Party's national platform and fundraising and election strategies; supports Republican candidates for public office at all levels across the country, including those on the ballot in Pennsylvania; and assists state parties throughout the country, including the Republican Party of Pennsylvania, to educate, mobilize, assist, and turn out voters.  The RNC has made significant contributions and expenditures in support of Republican candidates up and down the ballot and on mobilizing and educating voters in Pennsylvania in many past election cycles and intends to do so again in 2020.  The RNC has a substantial and

particularized interest in ensuring that Pennsylvania carries out free and fair elections in accordance with its validly enacted election laws.

3.      The National Republican Congressional Committee ("NRCC") is the national congressional committee of the Republican Party as defined by 52 U.S.C. § 30101(14).  The NRCC's mission is to elect Republican candidates to the U.S. House of Representatives from across the United States, including from Pennsylvania's eighteen congressional districts.  The NRCC works to accomplish its mission in Pennsylvania by, among other things, providing direct and indirect financial contributions and support to candidates and other Republican Party organizations; providing technical and research assistance to Republican candidates and Party organizations; engaging in voter registration, voter education and voter turnout programs; and other Republican party-building activities.  The NRCC has made significant contributions and expenditures in support of Republican House candidate and on mobilizing and educating voters in Pennsylvania in many past election cycles and intends to do so again in 2020.  The NRCC has a substantial and particularized interest in ensuring that Pennsylvania carries out free and fair elections in accordance with its validly enacted election laws.

**B.      Procedural history.**

4.      On April 22, Petitioners filed their Petition for Declaratory and Injunctive Relief (the "Petition") addressed to this Court's original jurisdiction

against Kathy Boockvar, the Secretary of the Commonwealth, and Jessica Mathis, the Director of the Bureau of Election Services and Notaries of the Pennsylvania Department of State, in their official capacities.  Petition ¶¶ 11, 17–18.

5.     The Petition challenges the constitutionality of several commonsense rules that the General Assembly has adopted to guarantee orderly free and fair elections for all voters in Pennsylvania—particularly in light of the State now allowing mail-in and absentee voting by all Pennsylvania voters as part of the General Assembly's October 2019 overhaul of Pennsylvania's election procedures in Act 77.  *See* 25 P.S. § 3150.11.  Act 77 represented a grand bipartisan compromise among the members of the General Assembly and the Governor, and it passed the General Assembly by an overwhelming and bipartisan majority.

6.     Now, mere months after Governor Wolf signed Act 77 into law, Petitioners seek to use the COVID-19 pandemic to change the rules and protections that the General Assembly has put in place to safeguard mail-in and absentee voting, including prophylactic measures designed to prevent voter fraud and ballot tampering, prevent undue influence in voting, and safeguard voter confidence in Pennsylvania's elections.

7.     Petitioners ask this Court to declare Pennsylvania's practical requirements that mail-in and absentee ballots be returned to county election offices "on or before eight o'clock P.M. the day of the primary or election" unconstitutional.

25 P.S. §§ 3146.6(c), 3146.8(g)(1)(ii), 3150.16(c).   Petitioners further challenge Pennsylvania's laws that functionally require most mail-in and absentee voters to pay for their own postage to return their ballots, 25 P.S. §§ 3146.6(a); 3150.16(a). *See* Petition at 34.   Petitioners also request that the Court declare the Commonwealth's ballot verification procedures, 25 P.S. § 3146.8(g)(3), and its ban on third-party ballot harvesting, 25 P.S. §§ 3146.6(a), 3150.16(a); *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d 1223, 1231 (2004), unconstitutional.  *See id.*

8.     Finally, Petitioners ask this Court to ignore the policy decisions of the General Assembly and Governor and issue an injunction: (i) allowing for third-party ballot harvesting and enjoining enforcement of the ban on third-party ballot harvesting; (ii) requiring Respondents to count mail-in and absentee ballots delivered after 8:00 p.m. on Election Day; (iii) ordering the Commonwealth to pay for the postage of all absentee and mail-in voters; and (iv) amending the Commonwealth's ballot signature verification procedures.  *See* Petition at 34–35.

9.     This case is in its infancy. The Petition was filed late last month and Respondents  have not filed a responsive pleading, and the Court has not entered any substantive ruling in this case.  On May 8, Petitioners filed an Application for Special Relief in the Nature of a Preliminary Injunction and for Expedited Review.

## II.    THE GOVERNING INTERVENTION STANDARD

10.    In an original jurisdiction petition for review, a nonparty may file an application for leave to intervene. Pa.R.A.P. 1531(b).

11.    "The right to intervention should be accorded to anyone having an interest of his own which no other party on the record is interested in protecting." *Keener v. Zoning Hearing Bd. of Millcreek Twp.*, 714 A.2d 1120, 1123 (Pa. Commw. Ct. 1998) (citing *Bily v. Bd. of Property Assessment, Appeals and Review of Allegheny Cty.*, 44 A.2d 250 (Pa. 1945)).

12.    The standards for intervention under Pennsylvania Rules of Civil Procedure 2326 to 2329 apply to an original jurisdiction petition for review because Pennsylvania Rule of Appellate Procedure 106 ("Original Jurisdiction Matters") applies the "general rules" for practice in the courts of common pleas—namely, the Rules of Civil Procedure—"so far as they may be applied."

13.    Pennsylvania Rule of Civil Procedure 2327(4) is permissive and provides in pertinent part:

> At any time during the pendency of an action, a person not a party thereto *shall be permitted to intervene therein*, subject to these rules *if . . . the determination of such action may affect any legally enforceable interest of such person* whether or not such person may be bound by a judgment in the action.

Pa. R.C.P. No. 2327(4) (emphasis added); *see also Allegheny Reprod. Health Ctr. v. Pa. Dep't of Human Servs.*, No. 26 M.D. 2019, 2020 Pa. Commw. LEXIS 104, 2020

8

WL 424866, at *5 (Pa. Commw. Ct. Jan. 28, 2020) ("Pennsylvania Rule of Civil Procedure No. 2327(4) . . . permits intervention where the determination '*may affect any legally enforceable interest*' of a proposed intervenor." (quoting Pa. R.C.P. No. 2327(4) and emphasis in original)).

14.    If the determination may affect the intervenor's legally enforceable interest, and no exception applies, approving intervention is mandatory, not discretionary. *Larock v. Sugarloaf Twp. Zoning Hearing Bd.*, 740 A.2d 308, 313 (Pa. Commw. Ct. 1999).

15.    Moreover, the Court may, in its discretion, allow intervention even if it determines that one of the Rule 2329 exceptions applies. *See* Pa. R.C.P. 2329 (instructing that "an application for intervention *may* be refused" if an exception applies (emphasis added)); *see also* 7 Goodrich Amram 2d § 2329:7 ("Even though the petitioner's interest is adequately represented in the pending action, this fact does not mandate the refusal of intervention since the refusal of intervention on the ground of the adequacy of the representation is permissive in nature.").

16.    The Court should grant the Republican Committees' application to intervene because the Court's determination of this action may affect the Republican Committees' legally enforceable interests, no exception applies under Pennsylvania Rule of Civil Procedure 2329, and the Republican Committees' participation will aid the Court.

### III.   BASIS FOR THE REPUBLICAN COMMITTEES' INTERVENTION

### A.   The Republican Committees have substantial interest in this action.

17.   The Republican Committees, on behalf of their supported candidates, voters, and own institutional interests, have a substantial and particularized interest in preserving the state election laws challenged in this action, which the General Assembly has enacted to ensure the structure and integrity of Pennsylvania's elections.

18.   There can be no question that the Republican Committees have direct and significant interests in the continued enforcement of Pennsylvania's validly enacted laws governing mail-in and absentee ballots, which are designed to ensure "the integrity of [the] election process," *Eu v. San Fran. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989), and the "orderly administration" of elections, *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) (op. of Stevens, J.). Were these validly enacted laws to be cast aside, the current competitive electoral environment in Pennsylvania, in which the Republican Committees invest substantial resources in support of Republican candidates to try to win elections, would be altered or impaired.  *See League of Women Voters v. Commonwealth*, 178 A.3d 737, 741 n.5, 800 (Pa. 2018); *see* ¶ 13, *supra*.

19.   Courts routinely recognize that political parties have interests supporting intervention in litigation concerning elections and election procedures.

10

*See, e.g.*, *Siegel v. LePore*, 234 F.3d 1163, 1169 n.1 (11th Cir. 2001); *Trinsey v. Pennsylvania*, 941 F.2d 224, 226 (3d Cir. 1991); *Anderson v. Babb*, 632 F.2d 300, 304 (4th Cir. 1980); *Democratic Nat'l Comm. v. Bostelmann*, No. 20-cv-249-wmc, 2020 U.S. Dist. LEXIS 76765, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020); *Citizens United v. Gessler*, No. 14-002266, 2014 U.S. Dist. LEXIS 128669, 2014 WL 4549001, at *2 (D. Colo. Sept. 15, 2014); *Libertarian Party of Mich. v. Johnson*, No. 12-12782, 2012 U.S. Dist. LEXIS 126096 (E.D. Mich. Sept. 5, 2012); *Radogno v. Ill. State Bd. of Elections*, No. 1:11-cv-4884, 2011 U.S. Dist. LEXIS 134520, 2011 WL 5868225, *1 (N.D. Ill. Nov. 22, 2011); *Hastert v. State Bd. of Elections*, 777 F. Supp. 634, 639 (N.D. Ill. 1991).  Indeed, courts generally recognize that political parties have "an interest in the subject matter of [a] case," when "changes in voting procedures could affect candidates running as Republicans and voters who [are] members of the . . . Republican Party."  *See Ohio Democratic Party v. Blackwell*, No. 04-1055, 2005 WL 8162665, at *2 (S.D. Ohio Aug. 26, 2005).

20.    The Republican Committees' interests here are at least the same as—if not greater than—those that Petitioner the Pennsylvania Alliance for Retired Americans claims gives it standing to sue.  *See* Petition ¶ 16.

21.    If Petitioners' action succeeds, then the rules and safeguards put in place by the General Assembly to ensure the integrity and orderly administration of

Pennsylvania's elections will be upended just weeks before Pennsylvania's June 2 primary election, and in the run-up to a critical general election.

22. Not only would this undercut democratically enacted laws that protect voters and candidates (including the Republican Committees' members), *Caba v. Weaknecht*, 64 A.3d 39, 50 (Pa. Commw. Ct. 2013) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008)), it would change the "structur[e] of [the] competitive environment" in Pennsylvania's elections and "fundamentally alter the environment in which [the Republican Committees] defend their concrete interests (e.g. their interest in . . . winning [elections])," *Shays v. Fed. Elec. Comm'n*, 414 F.3d 76, 86 (D.C. Cir. 2005).

23. Such late changes also risk confusing voters and undermine confidence in the electoral process. *See, e.g.*, *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) ("Court orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase."). And the Republican Committees will be forced to spend substantial resources informing their Republican voters of changes in the law, fighting inevitable confusion, and galvanizing participation as a result of such a change.

24. Such interference with Pennsylvania's election scheme—and with the Republican Committees' electoral activities—would impair the Republican

Committees' interests on behalf of their candidates, members, and themselves, and thus warrants intervention.

**B.     There is no basis to refuse the Republican Committees' application for intervention.**

25.     Pennsylvania Rule of Civil Procedure 2329 provides that an application for intervention may be refused if: (1) the petitioner's claim or defense "is not in subordination to and in recognition of the propriety of the action"; (2) the petitioner's interest is already adequately represented; or (3) "the petitioner has unduly delayed in making application for intervention or the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties."

26.     None of these factors applies to the Republican Committees.[1]

27.     First, the Republican Committees' defense in this action is in subordination to and in recognition of the action's propriety.

28.     Second, no existing party adequately represents the Republican Committees' particularized interests.   *See* Pa. R.C.P. No. 2329(2).   Petitioners clearly do not represent the Republican Committees' interests in this case, and Respondents do not adequately represent them either.

---

[1] As explained above, the Court retains discretion to allow the Republican Committees to intervene even if it concludes that an exception under Rule 2329 applies.  Pa. R.C.P. 2329; 7 Goodrich Amram 2d § 2329:7.

29.     Although the Republican Committees and Respondents putatively share the same overall goal of upholding the challenged election laws, their interests are not identical.

30.     Respondents, as Commonwealth officials, do not represent the private interests of the Republican Committees at stake in this litigation, which are fundamentally different from, and far narrower than, the broad public interests represented by Respondents. Indeed, "the government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a [private movant] merely because both entities occupy the same posture in the litigation." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255-56 (10th Cir. 2001); *see also, e.g.*, *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) ("[W]e look skeptically on government entities serving as adequate advocates for private parties." (citing *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003)).

31.     Whereas the Republican Committees have particularized interests in maintaining the competitive electoral environment adopted by the General Assembly, Respondents have no interest in the election of particular candidates. *See, e.g., Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (holding that the government's representation of the general public interest did not adequately represent the intervenor's narrower private interests, despite the similarity in their

14

goals). Instead, in acting on behalf of all Pennsylvania citizens and the Commonwealth, Respondents must consider "a range of interests likely to diverge from those of the intervenors." *Meek v. Metro. Dade Cty.*, 985 F.2d 1471, 1478 (11th Cir. 1993). In other words, "[i]n litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of [a private party] intervenor." *Utah Ass'n of Ctys.*, 255 F.3d at 1256. These considerations may include "the expense of defending the current [laws] out of [state] coffers," *Clark v. Putnam Cty.*, 168 F.3d 458, 461–62 (11th Cir. 1999), "the social and political divisiveness of the election issue," *Meek*, 985 F.2d at 1478, "their own desires to remain politically popular and effective leaders," *id.*, and the interests of opposing parties, *In re Sierra Club*, 945 F.2d 776, 779–80 (4th Cir. 1991). Given that Respondents may take these other interests into account, their interests may diverge with the Republican Committee's interests throughout this litigation.

32. Third, the Republican Committees have not unduly delayed in submitting their application to intervene in this action, which remains in its infancy. The Petition was filed a little over a week ago, and Respondents filed Preliminary Objections this week, on May 5. The Republican Committees' Intervention will not cause any undue delay, embarrassment, or prejudice to any party, but it will aid the Court in resolving the important legal and factual questions before it.

15

## IV.    CONCLUSION

33.    For the reasons set forth above, the Republican Committees have a clear right to intervene in this case challenging important state laws governing the administration of Pennsylvania's elections.

34.    Pursuant to Pennsylvania Rule of Civil Procedure 2328, the Republican Committees attach a copy of the pleading, in the form of Preliminary Objections and Brief in Support (attached as Exhibit A), they will file in the action if permitted to intervene.

**WHEREFORE**, for the foregoing reasons, Republican Party of Pennsylvania, Republican National Committee, National Republican Congressional Committee, respectfully request that this Honorable Court GRANT this Application for Leave to Intervene, and DIRECT the Prothonotary to enter the names of Republican Party of Pennsylvania, Republican National Committee, National Republican Congressional Committee, on the docket in this matter as Intervenor Respondents, and DOCKET the Intervenor Respondents' Preliminary Objections and Brief in Support, attached as Exhibit A.

Dated:  May 11, 2020                      Respectfully submitted,

                                          */s/ Kathleen A. Gallagher*
                                          Kathleen A. Gallagher
                                          PA I.D. #37950
                                          Russell D. Giancola
                                          PA. I.D. #200058

PORTER WRIGHT MORRIS
   & ARTHUR LLP
6 PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500
kgallagher@porterwright.com
rgiancola@porterwright.com

John M. Gore *
E. Stewart Crosland *
J. Benjamin Aguinaga *
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com
jbaguinaga@jonesday.com

*Counsel for Proposed Intervenor-
Respondents Pennsylvania Republican
Party, Republican National Committee, and
National Republican Congressional
Committee*

*Pro hac vice application forthcoming*

## <u>VERIFICATION OF REPUBLICAN PARTY OF PENNSYLVANIA</u>

I, Vonne Andring, Executive Director at the Republican Party of Pennsylvania, am authorized to make this verification on behalf of the Republican Party of Pennsylvania.  I hereby verify that the factual statements set forth in the foregoing Application for Leave to Intervene are true and correct to the best of my knowledge or information and belief.

I understand that verification is made subject to the penalties of 18 Pa. Cons. Stat. 4904, relating to unsworn falsifications to authority.

_____
Vonne Andring
Excutive Director
Republican Party of Pennsylvania

Date: _____May 11, 2020_____

## <u>VERIFICATION OF REPUBLICAN NATIONAL COMMITTEE</u>

I, Jon Black, Regional Political Director at the Republican National Committee, am authorized to make this verification on behalf of the Republican National Committee.  I hereby verify that the factual statements set forth in the foregoing Application for Leave to Intervene are true and correct to the best of my knowledge or information and belief.

I understand that verification is made subject to the penalties of 18 Pa. Cons. Stat. 4904, relating to unsworn falsifications to authority.

Jon Black
Regional Political Director
Republican National Committee

Date: 05/11/2020

19

## <u>VERIFICATION OF NATIONAL REPUBLICAN</u>
## <u>CONGRESSIONAL COMMITTEE</u>

I, Sarah Clamp, Regional Political Director at the National Republican Congressional Committee, am authorized to make this verification on behalf of the National Republican Congressional Committee.  I hereby verify that the factual statements set forth in the foregoing Application for Leave to Intervene are true and correct to the best of my knowledge or information and belief.

I understand that verification is made subject to the penalties of 18 Pa. Cons. Stat. 4904, relating to unsworn falsifications to authority.

*Sarah Clamp*
_____
Sarah Clamp
Regional Political Director
National Republican Congressional
Committee

Date: 5/11/2020 _____

19

## <u>CERTIFICATION REGARDING PUBLIC ACCESS POLICY</u>

I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.


*/s/ Kathleen A. Gallagher*