# EXHIBIT 5

EXHIBIT 5

No. 20A54

_____

IN THE SUPREME COURT OF THE UNITED STATES

_____

PENNSYLVANIA DEMOCRATIC PARTY, ET AL,

*Plaintiffs-Respondents,*

v.

KATHY BOOCKVAR, IN HER OFFICIAL CAPACITY AS PENNSYLVANIA SECRETARY OF STATE, ET AL.,

*Defendants-Respondents,*

and

REPUBLICAN PARTY OF PENNSYLVANIA,

*Intervenor-Applicant.*

_____

**Application from the Supreme Court of Pennsylvania**

**(No. 133 MM 2020)**

_____

**REPLY IN SUPPORT OF EMERGENCY APPLICATION FOR STAY PENDING DISPOSITION OF A PETITION FOR A WRIT OF CERTIORARI**

_____

KATHLEEN GALLAGHER
RUSSELL D. GIANCOLA
PORTER WRIGHT MORRIS
   & ARTHUR LLP
6 PPG Place, Third Floor
Pittsburgh, PA 15222
Phone: (412) 235-4500

JOHN M. GORE
   *Counsel of Record*
ALEX POTAPOV
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Phone: (202) 879-3939
jmgore@jonesday.com

*Counsel for Applicant*

# TABLE OF CONTENTS

**Page**

INDEX OF APPENDICES ............................................................................. ii

TABLE OF AUTHORITIES ........................................................................... iii

REASONS TO GRANT THE APPLICATION ............................................... 2

I.    RPP HAS STANDING TO RAISE THE FEDERAL QUESTIONS
      PRESENTED ....................................................................................... 2

II.   THERE IS A "REASONABLE PROBABILITY" OF CERTIORARI AND
      A "FAIR PROSPECT" OF REVERSAL ............................................... 5

      A.   The Pennsylvania Supreme Court's Remedy Violates Federal Law .......... 6

      B.   The Pennsylvania Supreme Court's Remedy Violates the U.S.
           Constitution .................................................................................. 10

III.  RPP WILL SUFFER IRREPARABLE HARM ABSENT A STAY, AND
      THE BALANCE OF THE EQUITIES CLEARLY FAVORS A STAY .............. 13

CONCLUSION ............................................................................................. 15

## INDEX OF APPENDICES

**Page**

APPENDIX A: Affidavit of Vonne Andring (Sept. 8, 2020)...................................RA.1

APPENDIX B: Affidavit of Melanie Stringhill Patterson (Sept. 8, 2020) ............RA.7

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Andino v. Middleto*n,
No. 20A55, 2020 WL 5887393 (U.S. Oct. 5, 2020) ............................................. 9, 10

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n,*
576 U.S. 787 (2015) .................................................................. 10, 11, 13

*Bush v. Gore,*
531 U.S. 1046 (2000) ........................................................................ 14

*Bush v. Gore,*
531 U.S. 98 (2000) ................................................................. 2, 5, 12, 13

*Bush v. Palm Beach Cnty. Canvassing Bd.,*
531 U.S. 70 (2000) (per curiam) ................................................................*passim*

*Democratic Nat'l Comm. v. Bostelmann,*
No. 20-cv-249, 2020 WL 5627186 (W.D. Wis. Sept. 21, 2020) ............................... 9

*Democratic Nat'l Comm. v. Bostelmann,*
Nos. 20-2835 & 20-2844, 2020 WL 5796311 (7th Cir. Sept. 29, 2020) .................. 4

*Ex parte Siebold,*
100 U.S. 371 (1879) ....................................................................... 6

*Foster v. Love,*
522 U.S. 67 (1997) ....................................................................... 5, 6

*Havens Realty Corp. v. Coleman,*
455 U.S. 363 (1982) ...................................................................... 4

*Hunt v. Wash. State Apple Advert. Comm'n,*
432 U.S. 333 (1977) ...................................................................... 3

*McPherson v. Blacker,*
146 U.S. 1 (1892) ........................................................................ 12

*Purcell v. Gonzalez,*
549 U.S. 1 (2006) .................................................................. 4, 14, 15

*Republican Nat'l Comm. v. Common Cause R.I.,*
No. 20A28, 2020 WL 4680151 (U.S. Aug. 13, 2020) ................................... 4

*Republican Nat'l Comm. v. Democratic Nat'l Comm.,*
140 S. Ct. 1205 (2020) ................................................................*passim*

*Tex. Democratic Party v. Abbott,*
961 F.3d 389 (5th Cir. 2020) ............................................................. 15

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

CONSTITUTIONAL AND STATUTORY AUTHORITIES

U.S. Const. art. I ............................................................................................ 10

U.S. Const. art. II ........................................................................................... 10

U.S. Const. art. VI .......................................................................................... 5

2 U.S.C. § 1 ..................................................................................................... 6

2 U.S.C. § 7 ..................................................................................................... 6

3 U.S.C. § 1 ..................................................................................................... 6

25 Pa. C.S. § 3511 ........................................................................................... 7

25 Pa. Stat. § 3146.6 ....................................................................................... 8

25 Pa. Stat. § 3150.16 ..................................................................................... 8

N.Y. Elec. Law § 8-412 .................................................................................. 7

W. Va. Code § 3-3-5 ....................................................................................... 7

OTHER AUTHORITIES

Mary E. Adkins, *The Same River Twice: A Brief History of How the
1968 Florida Constitution Came to Be and What It Has Become*,
18 Fla. Coastal L. Rev. 5 (2016) .............................................................. 11

U.S. Election Assistance Comm'n, EAC 2018 Data Visualization Tool ...................... 7

U.S. Election Assistance Comm'n, Election Administration and
Voting Survey (June 2019) ........................................................................ 7

iv

Respondents' Oppositions to the Emergency Application for Stay only underscore that this Court should follow the rule it set forth earlier this year and enter a modest stay of the Pennsylvania Supreme Court majority's non-postmarked ballots presumption. *See Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020). Respondents acknowledge that the questions presented are "of overwhelming importance for States and voters across the country" because numerous courts are addressing "state election-law provisions . . . similar to" those at issue here. Pa. Dems. Br. 9; *see also* Sec'y Br. 2–3. Thus, even though they erroneously challenge the standing of the Republican Party of Pennsylvania (RPP) and this Court's jurisdiction, Respondents ask the Court to resolve the questions presented in this case. *See* Pa. Dems. Br. 9; Sec'y Br. 2–3.

Respondents' various arguments on the merits confirm RPP's answers to those questions. Respondents do not dispute that the General Assembly's Election Day received-by deadline contains "no ambiguity." A.34. Respondents also do not dispute that the received-by deadline is "facially []constitutional" and that setting such a deadline "is fully enshrined within the authority granted to the Legislature under the United States and Pennsylvania Constitutions." A.34–36. And Respondents do not dispute that the majority both ignored the factual findings it commissioned Judge Leavitt to make in a companion case and rejected the three dissenting justices' plea to adopt a narrower remedy that would have more faithfully upheld the General Assembly's "clear legislative intent." A.87–90; *see also Bush v. Palm Beach Cnty. Canvassing Bd.*, 531 U.S. 70, 76–77 (2000) (per curiam); RPP Appl. 29–34.

As RPP already has shown, those facts alone demonstrate that a stay is warranted to halt the majority's "fundamental[] alter[ation]" of the imminent general election in which millions of Pennsylvanians will cast their votes. *Republican Nat'l Comm.*, 140 S. Ct. at 1207; *see also* RPP Appl. 19–39. Respondents' various attempts to gloss over the critical federal-law and constitutional issues raised by the Pennsylvania Supreme Court's judgment, to recast the questions presented, and to disregard the clear thrust of federal law, the U.S. Constitution, and this Court's precedents do nothing to change that result. The Court should grant a stay.

## REASONS TO GRANT THE APPLICATION

**I.   RPP HAS STANDING TO RAISE THE FEDERAL QUESTIONS PRESENTED**

RPP has standing to seek this Court's review on the federal questions presented and to request a stay of the judgment in this case brought by its counterpart, the Pennsylvania Democratic Party. *See, e.g.*, *Bush v. Gore*, 531 U.S. 98 (2000) (resolving on the merits petition for certiorari brought by a presidential candidate stemming from state-court election contest filed by the other major candidate). Evidence that RPP submitted below establishes that RPP has associational and organizational standing to protect its legally cognizable interest in the election rules established by state law, including the Election Day received-by deadline, that is harmed by the Pennsylvania Supreme Court's judgment.

In particular, RPP submitted an affidavit from Ms. Melanie Stringhill Patterson, a registered Pennsylvania voter and "registered member of [RPP]." RA.7 ¶ 4. Ms. Patterson intends to vote in person in the 2020 general election and "do[es]

not want [her] vote diluted or cancelled by votes that are cast in a manner contrary to the requirements enacted by the Pennsylvania General Assembly." RA.8 ¶ 5. She therefore has an interest in upholding "the rules established by the General Assembly in the Election Code" that is harmed by the majority's judicial extension of the received-by deadline and non-postmarked ballots presumption. RA.8 ¶ 6. RPP sought intervention—and has associational standing to invoke this Court's certiorari review—"on behalf of itself and its members, including its voters" like Ms. Patterson. RA.2 ¶ 7; *see Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

RPP also submitted the affidavit of its executive director, Ms. Vonne Andring. Ms. Andring described RPP's expenditure of "substantial resources toward educating, mobilizing, assisting, and turning out voters in Pennsylvania," including its Election Day Operations ("EDO") and training programs. RA.2–3 ¶¶ 8–11. Those efforts "rel[y] upon, utilize[], and [are] built upon the clear language of the Election Code." RA.3 ¶ 12. Accordingly, any judicial order requiring election officials to administer elections in a manner inconsistent with the Pennsylvania Election Code results in "the resources and efforts which the RPP ha[s] expended on its EDO, training programs, and voter education programs [being] wasted." RA.4–5 ¶ 18. And any such order requires RPP "to expend substantial new additional resources and effort on overhauling its EDO, training programs, and voter education programs to reflect the changes in Pennsylvania's . . . election administration scheme." RA.5 ¶ 19.

The majority's extension of the received-by deadline and non-postmarked ballots presumption exacerbate this harm to RPP. In particular, RPP recruits, trains,

and organizes poll workers, poll watchers, lawyers, and volunteers to attend and observe county canvasses where absentee and mail-in ballots are opened and counted. RA.4–5 ¶¶ 14, 20.   The majority's remedy therefore compels RPP "to devote significant new resources to recruiting, organizing, and training additional poll workers, poll watchers, lawyers, and volunteers to attend and observe the expanded number of days on which election officials will receive, open, and count absentee and mail-in ballots."   RA.5 ¶ 20.   Such a diversion of and "drain" on RPP's resources establishes its organizational standing to seek this Court's stay and review.   *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

These affidavits more than suffice to counter Respondents' claims that RPP lacks standing and their erroneous contention that RPP is raising a mere "generalized grievance."  Sec'y Br. 12; Pa. Dem. Br. 14.  They also demonstrate RPP's concrete and particularized harm from the majority's judgment and, thus, distinguish this proceeding from the cases Respondents cite, which involved different evidence and legal issues.   *See, e.g.*, *Republican Nat'l Comm. v. Common Cause R.I.*, No. 20A28, 2020 WL 4680151, at *1 (U.S. Aug. 13, 2020) (holding that a political party had no "cognizable interest" in a *Purcell* challenge to a consent decree where no state official objected to the decree and the decree kept in place a rule under which voters had voted in the prior election); *Democratic Nat'l Comm. v. Bostelmann*, Nos. 20-2835 & 20-2844, 2020 WL 5796311, at *1 (7th Cir. Sept. 29, 2020) (overlooking organizational injuries and erroneously suggesting that a political party has associational standing to appeal only if it claims a violation of its members' "constitutional rights").

In addition to challenging RPP's standing, Respondents make the baffling argument that because the Pennsylvania Supreme Court rested its judgment on the Pennsylvania Constitution, that judgment does not present a federal question. *See* Sec'y Br. 9–11, 14; Pa. Dems. Br. 22–26. Respondents thus conspicuously ignore this Court's decisions in *Palm Beach County* and *Bush*, in which the Court reviewed, for compliance with the U.S. Constitution, Florida Supreme Court judgments resting on the Florida Constitution. *See, e.g.*, *Palm Beach Cnty.*, 531 U.S. at 76–77; *Bush*, 531 U.S. 98. And they also overlook basic preemption principles establishing that a state law or judgment is superseded by contrary federal law. *Foster v. Love*, 522 U.S. 67, 69 (1997); RPP Appl. 20–22; *see* U.S. Const. art. VI, cl. 2 ("The Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, *any Thing in the Constitution or Laws of any State to the Contrary notwithstanding*.") (emphasis added). This Court thus has jurisdiction to review and reverse the Pennsylvania Supreme Court's judgment and to grant a stay pending review.

## II. THERE IS A "REASONABLE PROBABILITY" OF CERTIORARI AND A "FAIR PROSPECT" OF REVERSAL

By effectively "[e]xtending the date by which ballots may be cast by voters [until] after" Election Day, *Republican Nat'l Comm.*, 140 S. Ct. at 1207, the Pennsylvania Supreme Court's non-postmarked ballots presumption violates both federal law and the Constitution and presents critical questions for this Court's review, *see* RPP Appl. 19–34.

### A.    The Pennsylvania Supreme Court's Remedy Violates Federal Law

The majority's judicially imposed non-postmarked ballots presumption "ceases to be operative" because it allows untimely cast or mailed ballots to count in contravention of a trio of federal statutes that create a uniform nationwide federal Election Day. *Foster*, 522 U.S. at 69 (1997); *Ex parte Siebold*, 100 U.S. 371, 384 (1879); *see also* 3 U.S.C. § 1; 2 U.S.C. §§ 1, 7; RPP Appl. 20–22.

Respondents agree that "[f]ederal law prohibits the counting of ballots cast after Election Day." Sec'y Br. 14; Pa. Dems. Br. 14–16. Having conceded that point, they are left to argue that adoption of a "reasonable" "rebuttable presumption" is a permissible way "to determine whether a ballot was properly cast by Election Day." Pa. Dems. Br. 17–20; Sec'y Br. 17–19; Gov't Officials Amici Br. 11–13. Not so.

*First*, Respondents attempt to change the subject and spill considerable ink defending the practice of "counting votes *received* after Election Day as long as the ballots were mailed by Election Day." Pa. Dems. Br. 16; *id.* at 14–21; Sec'y Br. 14–19. But RPP has not sought a stay of counting ballots cast before but *received* after Election Day: rather, it has shown that the majority's non-postmarked ballots presumption is an impermissible way to determine whether such ballots were *cast* before Election Day. *See* RPP Appl. 21–22. Accordingly, Respondents' reliance on the laws of other states, or laws involving military and overseas ballots, is entirely misplaced. Pa. Dems. Br. 16–17 & n.8, 18 & nn.11, 12, 13, 21 & n.15; Sec'y Br. 15–17; Luzerne Cnty. Br. 2–8. Invalidating the majority's non-postmarked ballots presumption would have no effect on the vast majority of these provisions, which do

not rely upon presumptions but instead upon other methods—including voter declarations—to determine whether a ballot was timely cast.[1]  *E.g.*, 25 Pa. C.S. § 3511(b).  And the two statutes Respondents cite that impose presumptions akin to the one at issue here are the subject of separate litigation.  RPP Appl. 36 (citing *Donald J. Trump for President, Inc. v. Cegavske*, No. 2:20-cv-01445 (D. Nev.); *Donald J. Trump for President, Inc. v. Murphy*, No. 3:20-cv-10753 (D.N.J.)).[2]

*Second*, Respondents argue the presumption is necessary to prevent voters from being "disenfranchise[d]" through "no fault of their own" due to the "unpredictable and uncontrollable actions of busy postal employees."  Pa. Dems. Br. 20; Sec'y Br. 16–18.  But this argument proves far too much.  After all, *all* absentee and mail-in electoral schemes subject ballots to invalidation due to circumstances "beyond the[] control" of the voter.  Sec'y Br. 10.  For example, in the 2018 election, Pennsylvania rejected 8,162 ballots returned by mail—4.17% of all such ballots— because they were received after the Election Day received-by deadline.[3]  Some of

---

[1] The Secretary notes that "the mail-in ballot envelope contains a Voter's Declaration that must be signed and dated" by the voter.  Sec'y Br. 16.  To the extent the Secretary maintains that the date requirement redresses any harm from postal delays, the non-postmarked ballots presumption is unnecessary—and the majority erred in adopting that presumption by judicial fiat.  *See* RPP Appl. 20–22.

[2] The Secretary also points to provisions of New York and West Virginia law that allow the counting of non-postmarked ballots received "no later than the day after the election."  W. Va. Code § 3-3-5(g)(1); N.Y. Elec. Law § 8-412.  That timeline, of course, makes it impossible for such votes to have been cast *after* Election Day.  *See Republican Nat'l Comm.*, 140 S. Ct. at 1206.

[3] *See* U.S. Election Assistance Comm'n, EAC 2018 Data Visualization Tool, https://public.tableau.com/profile/u.s.election.assistance.commission#!/vizhome/EAV S2018DataViz-LabelI_11_25/ EACDataVizTool (last visited Oct. 6, 2020) (select "PA" and "C4b By-mail Rejected: Deadline"); *see also* U.S. Election Assistance Comm'n,

those ballots were undoubtedly rejected due to postal delivery delays or the vagaries of the mail service that lie outside the control of any individual voter, yet even the majority had no difficulty deeming that deadline "facially []constitutional." A.34.

Indeed, the *majority's own remedy*—which Respondents advocated for—operates in similar fashion: it invalidates any and all ballots that arrive after the majority's judicially crafted deadline of 5:00 p.m. on November 6, 2020, regardless of the reason for the late arrival. *See* A.63–64. Thus, even the majority's presumption does not solve the problem Respondents purport to identify.

To be sure, a legislature could create additional safeguards against postal delays. Here, however, the Election Day received-by deadline reflects a legislative judgment that the importance of ensuring all ballots are cast *on or before* Election Day, RPP Appl. 25–26, outweighs the risk that ballots cast by voters who choose to vote by mail could be disqualified due to circumstances beyond their control.[4] Respondents identify no basis for the Pennsylvania Supreme Court majority to substitute its policy preference for the constitutional judgment of the General

---

Election Administration and Voting Survey 30 (June 2019) (reporting that Pennsylvania rejected a total of 8,714 ballots returned by mail in the 2018 election representing 4.45% of all such ballots), https://www.eac.gov/sites/default/files/eac_assets/1/6/2018_EAVS_Report.pdf.

[4] At the same time, the General Assembly has gone to great lengths to mitigate this risk. For example, applications for absentee or mail-in ballots may be filed 50 days prior to Election Day—the longest such period in the country—giving voters more than enough time to request and submit their ballots. *See* RPP Appl. 5. And if that generous timeline proves insufficient, voters may return their ballots in person at the offices of county boards of elections any time prior to 8:00 p.m. on Election Day. *See* 25 Pa. Stat. §§ 3146.6(a), 3150.16(a).

Assembly. *See infra* Part II.B; *cf. Andino v. Middleto*n, No. 20A55, 2020 WL 5887393, at *1 (U.S. Oct. 5, 2020) (Kavanaugh, J., concurring) ("[A] State legislature's decision either to keep or to make changes to election rules to address COVID–19 ordinarily 'should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not accountable to the people.'").

*Finally*, Respondents maintain that RPP failed to adduce evidence that ultimately votes will be counted under the majority's non-postmarked ballots presumption. Pa. Dems. Br. 19–20; Sec'y Br. 15. The argument is ironic, given that the presumption flies in the face of the only factual findings before the Pennsylvania Supreme Court. *See* RPP Appl. 8–10. It is also wrong, as those findings demonstrate. According to Judge Leavitt—whose findings the Secretary now "urge[s] this Court to credit," Sec'y Br. 25 n.16—"[m]ore than 98%" of ballots will be "delivered within 1 day," A.131, making it almost certain that any non-postmarked ballot received two or three days after Election Day will have been untimely cast. That reality should be troubling given the results of the April 2020 Wisconsin primary, where "many ballots arrived with no postmarks, two postmarks or unclear postmarks." *Democratic Nat'l Comm. v. Bostelmann*, No. 20-cv-249, 2020 WL 5627186, at *6 (W.D. Wis. Sept. 21, 2020), *stay entered*, Nos. 20-2835 & 20-2844 (7th Cir. Sept. 27, 2020), *stay vacated*, Nos. 20-2835 & 20-2844 (7th Cir. Sept. 29, 2020). There is thus nothing "reasonable" about the majority's presumption.

**B.    The Pennsylvania Supreme Court's Remedy Violates the U.S. Constitution**

The majority's judicial rewrite of the Election Day received-by deadline and accompanying presumption usurps the General Assembly's plenary authority to "direct" the "Manner" for appointing electors for President and Vice President, U.S. Const. art. II, § 1, cl. 2, and broad power to prescribe "[t]he Times, Places and Manner" for congressional elections, *id.* art. I, § 4, cl. 1; *Palm Beach Cnty.*, 531 U.S. at 77; *cf. Andino*, 2020 WL 5887393, at \*1 (Kavanaugh, J., concurring). It therefore violates the Electors and Elections Clauses. RPP Appl. 20–36. Respondents' arguments to the contrary are unavailing.

*First*, Respondents invoke the majority's statement in *Arizona State Legislature v. Arizona Independent Redistricting Commission*—which did not involve the Electors Clause—for the proposition that the Elections Clause does not "instruct[] . . . that a state legislature may prescribe regulations on the time, place, and manner of holding federal elections in defiance of provisions of the State's constitution." 576 U.S. 787, 817–18 (2015) (cited at Sec'y Br. 19–20, Pa. Dems. Br. 27). But as RPP has explained, that proposition is of no moment here. *See* RPP Appl. 29–30. That case involved a state constitution's requirements for the "lawmaking *process*[]," 576 U.S. at 824 (emphasis added); *see also id.* at 841 (Roberts, C.J., dissenting), and all such requirements were satisfied when the General Assembly enacted the Election Day received-by deadline, *see* RPP Appl. 29. Moreover, to the extent that the *Arizona State Legislature* majority was referring to *substantive* limits on lawmaking enshrined in a State Constitution, that statement is dicta that the majority did not

10

reconcile with prior pronouncements of the Court. *See id.* at 29–30. Indeed, "[t]his case is governed . . . by the Federal Constitution," and "[i]n a conflict between the [Pennsylvania] Constitution and the Elections Clause, the State Constitution must give way." *Ariz. State Legislature*, 576 U.S. at 827 (Roberts, C.J., dissenting).

*Second*, Respondents and *amici* claim that the Elections and Electors Clauses are satisfied here, because the Free and Equal Elections Clause of the Pennsylvania Constitution was "effectively approved" by the General Assembly. Gov't Officials Amici Br. 3–7; Pa. Dems. Br. 30–31. Setting aside the fact that the Clause was *actually* approved by the Commonwealth's voters, the Florida Legislature played a similar role in the adoption of the relevant provisions of the Florida Constitution at issue in *Palm Beach County*. *See* Mary E. Adkins, *The Same River Twice: A Brief History of How the 1968 Florida Constitution Came to Be and What It Has Become*, 18 Fla. Coastal L. Rev. 5, 19–21 (2016).[5] That did not stop this Court from criticizing the Florida Supreme Court's efforts to "'circumscribe the legislative power,'" *Palm Beach Cnty.*, 531 U.S. at 77 (citation omitted), nor did it preclude three Justices from

---

[5] Contrary to Amici's claim, Gov't Officials Amici Br. 9 n.5, this fact *was* presented to this Court in *Palm Beach County*. *See, e.g.*, Reply Br. of Resps. Al Gore, Jr. & Fla. Democratic Party at *15–16, *Palm Beach Cnty.*, 531 U.S. 70 (No. 00-836), 2000 WL 1784898 (arguing that the Florida Legislature had "'delegated to state courts some authority over the manner [of] appointing electors'" by "clearly and explicitly authorizing the Florida Supreme Court to interpret all of Florida law, including the Florida Election Code" "by statute, as well as by the Florida Constitution itself" (citation omitted)); *id.* at *16 n. 10 (noting that "[t]he Florida Legislature is authorized to propose amendments to the state constitution" and that "Article V, the provision governing the judicial branch and its jurisdiction, was proposed by S.J. Res. 53-D in 1971 and subsequently ratified" (citations omitted)).

urging this Court to undertake an "independent … analysis of state law" to identify "significant departure[s] from the legislative scheme for appointing Presidential electors." *Bush*, 531 U.S. at 113–14 (Rehnquist, C.J., concurring).

*Third*, the Secretary argues that the majority's remedy did not violate the Electors Clause because it preserves the General Assembly's choice to select Presidential electors "by popular vote." Sec'y Br. 26.  But the Electors Clause does far more than safeguard a legislature's choice of the manner of selecting electors between "appoint[ment] by the legislatures," "popular vote," or "elect[ion] by districts." *Id.*  After all, if the Electors Clause were as narrow as the Secretary suggests, the Court could not have vacated the Florida Supreme Court's decision in *Palm Beach County* because that decision preserved the Florida Legislature's choice of a popular-vote method of selecting electors.  *See Palm Beach County Cnty.*, 531 U.S. at 76–77.  In fact, the Electors Clause sweeps far more broadly, leaving "it to the legislature exclusively to define the method of" selecting Presidential electors. *McPherson v. Blacker*, 146 U.S. 1, 27 (1892); *Palm Beach Cnty.*, 531 U.S. at 76–77; *Bush*, 531 U.S. at 112–13 (Rehnquist, C.J., concurring).

*Finally*, Respondents claim that "[a]ccepting RPP's arguments would require this Court to function as a nationwide state court of last resort."  Pa. Dems. Br. 26; Sec'y Br. 11.  The Pennsylvania Democratic Party, however, makes no effort to square this prognostication with its request that the Court grant certiorari and review this case on the merits.  *See id.* at 9–14.  Moreover, this prediction is simply incorrect. The questions presented here arise under "the Federal Constitution," not state law.

*Ariz. State Legislature*, 576 U.S. at 827 (Roberts, C.J., dissenting). This Court's review of the constitutional issue, therefore, is limited to preserving the authority State Legislatures derive from the Electors and Elections Clauses. *E.g.*, RPP Appl. 22–34. State courts may not usurp that authority by imposing upon the State Legislature and the State's voters a "significant departure" from the State Legislature's duly enacted rules for conducting federal elections. *See Bush*, 531 U.S. at 112–13 (Rehnquist, C.J., concurring). The Pennsylvania Supreme Court committed precisely such a usurpation when, by judicial fiat, it adopted a remedy irreconcilable with the plain text of the statutory scheme—*in contravention of the factual findings it commissioned*—when a narrower remedy more consonant with the General Assembly's "clear legislative intent" was available. A.87; RPP Appl. 31–34.

## III.   RPP WILL SUFFER IRREPARABLE HARM ABSENT A STAY, AND THE BALANCE OF THE EQUITIES CLEARLY FAVORS A STAY

The equities also weigh strongly in favor of granting a stay. Such relief will prevent irreparable harm to the Commonwealth, its voters, and RPP from a loss of appellate rights, an election tainted by the counting of illegally cast and mailed ballots, and the confusion of the majority's eleventh-hour invalidation of the General Assembly's received-by deadline. *See* RPP Appl. 36–39.

The Pennsylvania Democratic Party offers no arguments on the equities of a stay.[6] For her part, the Secretary acknowledges that "the election cannot be held

---

[6] The Party does note that Pennsylvania's official guidance to voters informs them that "mail-in ballots will be counted if they are 'postmarked by 8 p.m. on Election Day and received by [the relevant] county board of election by 5 p.m. the

twice," Sec'y Br. 28, which, as RPP has explained, weighs heavily in favor of granting a stay, *see* RPP Appl. 36–39.

The Secretary's other arguments on the equities all assume the correctness of her position on the merits. In particular, the Secretary argues that "because of COVID-19 and election-related delays in the mail service," voters "will be disenfranchised if a stay of the Pennsylvania Supreme Court's order is entered." Sec'y Br. 28. But RPP has asked this court to determine whether votes cast and mailed in violation of the rules established by Congress and the General Assembly are "legally cast vote[s]" that may be counted in the imminent general election. *Bush v. Gore*, 531 U.S. 1046, 1047 (2000) (Scalia, J., concurring); *see also* RPP Appl. 37. The Secretary thus puts the cart before the horse—and her various arguments on the equities fail for the same reason as her arguments on the merits. *See supra* Part II.

Finally, the Secretary's attempt to avoid a stay of the Pennsylvania Supreme Court's last-minute judgment under the *Purcell* principle, *see* Sec'y Br. 30–33, likewise fails. The Secretary's contention that this Court's decision in *Republican National Committee* turned on a special rule for "lower *federal* courts," *id.* at 31, ignores this Court's animating concern regarding a "fundamental[] alter[ation]" of a State's election-administration regime at the eleventh hour, *Republican Nat'l Comm.*, 140 S. Ct. at 1207. And the "good reason[s] to avoid last-minute intervention in a state's election process" that the Secretary points to—"including disruption,

---

Friday after Election Day.'" Pa. Dems. Br. 11 (citation omitted). Staying the non-postmarked ballots presumption would not affect the accuracy of this statement.

confusion or other unforeseen deleterious effects," Sec'y Br. 31 (citation omitted)—apply equally to judgments of federal courts and state courts misconstruing federal law and the U.S. Constitution.

The Secretary's follow-on suggestion that it is now too late to stay the Pennsylvania Supreme Court majority's last-minute judgment, *see id*. at 30–33, turns *Purcell* on its head.  The *Purcell* principle bars lower courts from making last-minute changes to election rules; it does not prevent appellate courts from entering stays when they do so.  *See, e.g.*, *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006).  Indeed, the Secretary's suggestion that last-minute changes to election laws preclude such stays has been described as "the legal definition of chutzpah."  *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 412 (5th Cir. 2020).  Of course—as this Court explained in *Republican National Committee*—appellate courts "would prefer not to" change election rules again "at this late date," "but when a lower court intervenes and alters the election rules so close to the election date," appellate courts "should correct the error."  *Republican Nat'l Comm.*, 140 S. Ct. at 1207; *e.g.*, *Merrill v. People First of Ala.*, No. 19A1063 (U.S. July 2, 2020) (staying, 9 days before election, a preliminary injunction entered 29 days before the election).  The *Purcell* principle thus underscores that a stay is warranted here.

## CONCLUSION

This Court should stay the Pennsylvania Supreme Court's non-postmarked ballots presumption.

Respectfully submitted,


Date: October 6, 2020                       /s/ John M. Gore
                                      JOHN M. GORE
                                        *Counsel of Record*
                                      ALEX POTAPOV
                                      JONES DAY
                                      51 Louisiana Avenue, NW
                                      Washington, DC 20001
                                      Phone: (202) 879-3939
                                      jmgore@jonesday.com

                                      KATHLEEN GALLAGHER
                                      RUSSELL D. GIANCOLA
                                      PORTER WRIGHT MORRIS
                                        & ARTHUR LLP
                                      6 PPG Place, Third Floor
                                      Pittsburgh, PA 15222
                                      Phone: (412) 235-4500

                                      *Counsel for Applicant*


16

**APPENDIX A**

## IN THE SUPREME COURT OF PENNSYLVANIA

Pennsylvania Democratic Party *et al.*,

                Petitioners,

   v.

Kathy Boockvar *et al.*,

                Respondents.

No. 133 MM 2020

### AFFIDAVIT OF VONNE ANDRING

COMMONWEALTH OF PENNSYLVANIA  )
                                ) SS:
COUNTY OF ARMSTRONG           )

Vonne Andring who having been first duly sworn, deposes and states as follows:

1.    I am an adult over the age of 18.

2.    I am currently the Executive Director of the Republican Party of Pennsylvania (the "RPP").

3.    The RPP is a major political party, 25 P.S. § 2831(a), and the "State committee" for the Republican Party in Pennsylvania, 25 P.S. § 2834, as well as a federally registered "State Committee" of the Republican Party as defined by 52 U.S.C. § 30101(15).

4.    Section 1.2 of RPP's Bylaws provides:

> *Rule 1.2: The Republican Party of the Commonwealth of Pennsylvania, which is a political party as defined in §2831 of the Election Code, shall consist of the following bodies:*
>
> > a. The State Party (i.e., the Republican State Committee under §2834 of the Election Code);

RA.1

    b.  The Leadership Committee of the State Party;

    c.  The State Party Finance Committee;

    d.  Republican County Committees, as defined in §2837 of the Election Code (the "County Committees"), and such subordinate committees of a County Committee as the rules of a County Committee shall provide;

    e.  Such Committees of the State Party as may from time to time be recognized by the State Party Chairman;

    f.  The six (6) Regional Republican Caucuses of the State Party as defined in Rule 9.1, below; and

    g.  All validly registered Republican electors in the Commonwealth of Pennsylvania.

5.     The RPP supports and seeks to uphold free and fair elections for all Pennsylvanians.

6.     The RPP has a substantial and particularized interest in ensuring that Pennsylvania carries out free and fair elections consistently throughout the Commonwealth.

7.     The RPP, on behalf of itself and its members, including its voters, nominates, promotes, and assists Republican candidates seeking election or appointment to federal, state, and local office in Pennsylvania.

8.     Additionally, the RPP devotes substantial resources toward educating, mobilizing, assisting, and turning out voters in Pennsylvania.

2

**RA.2**

9.     In conjunction with its Election Day Operations ("EDO"), the RPP devotes substantial time and resources toward the recruitment and training of poll workers, poll watchers, and volunteers throughout the 67 counties of the Commonwealth to assist voters on election day.

10.     As part of its EDO, the RPP also devotes substantial time and resources toward the recruitment and training of a "ground team" of lawyers throughout the Commonwealth who stand ready on Election Day to assist poll workers, poll watchers, and volunteers should questions arise as to elections laws or the voting process within the Commonwealth.

11.     The RPP has devoted substantial time and resources in mobilizing and educating voters in Pennsylvania in the past many election cycles and continues to do so again in 2020.   In this regard, the RPP, among other things, routinely publishes a newsletter entitled "PA GOP Morning."

12.     Each of the RPP's EDO, training programs, and voter education efforts relies upon, utilizes, and is built upon the clear language of the Election Code.

13.     The recent enactment of Act 77, which fundamentally changes the manner in which Pennsylvania are permitted to vote, most notably by providing a new universal mail-in voting regime, has required the RPP to significantly update and alter its EDO, training programs, and voter education programs.

3

**RA.3**

14.    In particular, the RPP has substantially increased the amount of its time and resources dedicated to educating voters, poll workers, poll watchers, volunteers, and its legal teams throughout Pennsylvania's 67 counties regarding the provision of Act 77.

15.    I am aware of the relief sought by Petitioners in this litigation as well as guidances promulgated by Secretary Boockvar regarding Act 77 (the "Boockvar Guidances").  Copies of the Boockvar Guidances are collectively attached hereto as **Exhibit 1**.

16.    I understand that the Boockvar Guidances are intended to advise each of the Commonwealth's 67 County Boards of Elections as to the manner in which each may conduct elections in each county.  Because the Boockvar Guidances purport to grant discretion to County Boards of Elections on certain election administration issues, the manner of voting in Pennsylvania may vary from county to county if the Boockvar Guidances are upheld and implemented.

17.    Both the relief sought in this litigation and the Boockvar Guidances differ and depart from the statutory language of Act 77 as well as the clear dictates of Article VII, Section 4 of the Pennsylvania Constitution, upon which the RPP has relied in undertaking its EDO, training programs, and voter education programs.

18.    Should this Court grant the relief sought in this litigation or should the Secretary be permitted to implement changes to Act 77 via the Boockvar

**RA.4**

Guidances, the resources and efforts which the RPP have expended on its EDO, training programs, and voter education programs will have been wasted.

19.    Indeed, should this Court grant the relief sought in this litigation or should the Secretary be permitted to implement changes to Act 77 via the Boockvar Guidances, the RPP will be required to expend substantial new additional resources and effort on overhauling its EDO, training programs, and voter education programs to reflect the changes in Pennsylvania's election laws and election administration scheme.

20.    Moreover, if Act 77's received-by deadline for absentee and mail-in ballots is extended, the RPP will need to devote significant new resources to recruiting, organizing, and training additional poll workers, poll watchers, lawyers, and volunteers to attend and observe the expanded number of days on which election officials will receive, open, and count absentee and mail-in ballots.

21.    Furthermore, should the Boockvar Guidances be permitted to become effective, the manner in which Pennsylvanians will vote may differ from county to county.  Such an outcome would significantly complicate, and require the RPP to devote even more substantial new additional resources to, its EDO, training programs, and voter education efforts.

22.   I declare under penalty of perjury that the foregoing is true and correct.

Affiant sayeth nothing further.

Executed on September 8, 2020

_Vonne Andring_

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF ARMSTRONG                     : SS.

Before me, a notary public, in and for said county and state personally appeared Vonne Andring, who swore that the information contained in the foregoing Affidavit is true and correct based upon her personal knowledge.

IN WITNESS WHEREOF, I have hereto set my hand and seal on this 8th day of September, 2020.

_Notary Public_

Commonwealth of Pennsylvania - Notary Seal
Elizabeth A. Griblik, Notary Public
Butler County
My commission expires March 2, 2022
Commission number 1254623
Member, Pennsylvania Association of Notaries

6

**RA.6**

**APPENDIX B**

## IN THE SUPREME COURT OF PENNSYLVANIA

Pennsylvania Democratic Party *et al.*,

        Petitioners,

v.

Kathy Boockvar *et al.*,

        Respondents.

No. 133 MM 2020

## <u>AFFIDAVIT OF MELANIE STRINGHILL PATTERSON</u>

COMMONWEALTH OF PENNSYLVANIA  )
                                      ) SS:
COUNTY OF ALLEGHENY              )

    Melanie Stringhill Patterson, who having been first duly sworn, deposes and states as follows:

    1.    I am an adult individual over the age of eighteen (18).

    2.    I reside in Belle Vernon, Fayette County, Pennsylvania.

    3.    I am a qualified registered elector in the Commonwealth of Pennsylvania and registered member of the Republican Party of Pennsylvania.

    4.    As a Pennsylvania qualified registered elector, I have always voted in-person at primary and general elections, and I intend to vote in-person at the upcoming November 3, 2020 General Election.

5.     As a Pennsylvania qualified registered elector who votes in-person, I do not want my vote diluted or cancelled by votes that are cast in a manner contrary to the requirements enacted by the Pennsylvania General Assembly.

6.     I believe that, to ensure the integrity of elections, all voters in Pennsylvania must follow the rules established by the General Assembly in the Election Code.  For voters who cast absentee or mail-in ballots, this includes, without limitation, using an inner secrecy envelope without any marks, text, or symbols which identify the person who voted the ballots, and filling in, signing, and dating the declaration on the outside envelope.  Also, voters who cast absentee or mail-in ballots must mail or personally deliver their own ballots to the county election board office rather than depositing them in unmonitored and unsecured drop-boxes.  Further, non-disabled voters should not be allowed to have third-parties deliver their absentee or mail-in ballots.

7.     I declare under penalty of perjury that the foregoing is true and correct.

Affiant sayeth nothing further.

Executed on September 8th, 2020

*Melanie Stringhill Patterson*
Melanie Stringhill Patterson

## ACKNOWLEDGEMENT

COMMONWEALTH OF PENNSYLVANIA   )
                                      )   SS:

COUNTY OF ALLEGHENY            )

     On this _8th_ day of September, 2020, before me, a Notary Public, the undersigned officer, personally appeared **MELANIE STRINGHILL PATTERSON**, known to me (or satisfactorily proven) to be the persons whose name is subscribed to the within Affidavit and who swore that the information contained in the foregoing Affidavit is true and correct based upon her personal knowledge and acknowledged that she executed the same for the purpose therein contained.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal the day and year first above written.

                                                        _____
                                                      Notary Public

My commission expires:

Commonwealth of Pennsylvania - Notary Seal
Tracie S. Turoczy, Notary Public
Allegheny County
My commission expires September 27, 2023
Commission number 1169533
Member, Pennsylvania Association of Notaries

- 3 -

**RA.9**