**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

Civil Action No. 3:20-CV-00215-KRG

| | |
|---|---|
| JIM BOGNET, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| KATHY BOOCKVAR, in her capacity as | ) |
| Secretary of the Commonwealth of | ) |
| Pennsylvania, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

**BRIEF OF *AMICUS CURIAE* GOVERNOR ARNOLD SCHWARZENEGGER
IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Philip W. Marsh
ARNOLD & PORTER
  KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
philip.marsh@arnoldporter.com

R. Stanton Jones*
Elisabeth S. Theodore*
Daniel F. Jacobson*
Samuel F. Callahan*
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
(202) 942-5000
stanton.jones@arnoldporter.com

* *Not admitted to practice in the Western
District of Pennsylvania*

*Counsel for Amicus Curiae Governor Arnold Schwarzenegger*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

INTEREST OF AMICUS CURIAE .............................................................................1

INTRODUCTION ........................................................................................................2

ARGUMENT ...............................................................................................................4

I.      Plaintiffs' Elections Clause Theory Would Require Ignoring Multiple
        Supreme Court Precedents Dating Back a Century ....................................4

II.     Plaintiffs' Elections Clause Theory Would Jeopardize Dozens of
        State Constitutional Provisions, Cause Electoral Chaos, and
        Upend the Federal System ......................................................................12

        Table 1: State Constitutional Provisions Governing Voting and Elections ......................15

        Table 2: State Constitutional Restrictions on Redistricting ...............................................24

CONCLUSION ..........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Constitutional Provisions**

Ala. Const. Amend. 865 ................................................................................................14

Ala. Const. art. 8, § 177 ...............................................................................................14

Alaska Const. art. 5, § 1 .........................................................................................14, 16

Arix. Const. art. IV, § 1(14) .........................................................................................23

Ariz. Const. art. II, § 21 .........................................................................................12, 14

Ariz. Const. art. 7, § 2 ..................................................................................................14

Ark. Const. art. 3, § 1 ...........................................................................................14, 16

Ark. Const. art. 3, § 2 ...........................................................................................12, 14

Cal. Const. art. 2, § 2 ............................................................................................15, 16

Cal. Const. art. 2, § 2.5 ................................................................................................15

Cal. Const. art. II, § 3 ...................................................................................................12

Cal. Const. art. II, § 5(a) ...............................................................................................12

Cal. Const. art. XXI ......................................................................................................13

Cal. Const. art. XXI, § 2(d) ..........................................................................................24

Colo. Const. art. II, § 5 ..........................................................................................12, 15

Colo. Const. art. V, § 44.3c ..........................................................................................24

Colo. Const. art. 7, § 1a ...............................................................................................15

Conn. Const. art. 6, § 1 .................................................................................................15

Conn. Const. art. VI, § 4 ...............................................................................................12

N.C. Const. art. I, § 10 ......................................................................................12, 16, 20

N.C. Const. art. 6, § 1 ...................................................................................................20

N.D. Const. art. 2, § 1 ...................................................................................................20

N.H. Const. pt. 1, art. 11 ...................................................................................12, 19, 20

N.J. Const. art. 2, § 1(3)(a) ...........................................................................................20

N.M. Const. art. 7, § 1(A) .............................................................................................20

N.M. Const. art. II, § 8 ...........................................................................................12, 20

N.Y. Const. art. III, § 4(c) ............................................................................................25

N.Y. Const. art. 2, § 1 ...................................................................................................20

Del. Const. art. I, § 3 .............................................................................................12, 15

Del. Const. art. 5, § 2 ....................................................................................................15

Fla. Const. art. III, § 20 .................................................................................................24

Fla. Const. art. III, § 20(a) ..............................................................................................8

Fla. Const. art. 6, § 2 ..............................................................................................15, 16

Ga. Const. art. 2, § 1, ¶ II .............................................................................................15

Haw. Const. art. 1, § 8 ..................................................................................................15

Idaho Const. art. I, § 19 ................................................................................................12

Ill. Const. art. 3, § 8 .....................................................................................................16

Ind. Const. art. 2, § 1 ............................................................................................12, 16, 18

Iowa Const. art. III, § 37 ...............................................................................................24

Ky. Const. § 6 ........................................................................................................12, 16

Ky. Const. § 145 ...........................................................................................................16

Mass. Const. pt. 1, art. IX .......................................................................................12, 17

Md. Const. art. 1, § 1 ....................................................................................................17

Md. Decl. of Rights, Art. 15 .........................................................................................17

Md. Decl. of Rights, Art. 7 ...........................................................................................17

Md. Decl. of Rts. art. 7..................................................................................................12

Mich. Const. art. II, § 4 ..........................................................................................12, 17

Mich. Const. art. IV, § 6(13) ...................................................................................24

Minn. Const. art. 7, § 1 ...........................................................................................18

Miss. Const. art. 12, § 241 ......................................................................................19

Mo. Const. art. I, § 25 ........................................................................................12, 19

Mo. Const. art. II, § 45 ............................................................................................25

Mo. Const., art. III, § 3 ...................................................................................8, 12, 16

Mo. Const. art. 8, § 2 ..............................................................................................19

Mont. Const. art. II, § 13 ....................................................................................12, 19

Mont. Const. art. 4, § 2 ...........................................................................................19

Mont. Const. art. 4, § 3 ...........................................................................................19

Neb. Const. art. I, § 22 ......................................................................................12, 19

Nev. Const. art. 2, § 1 .............................................................................................19

Ohio Const. art. 5, § 1 .............................................................................................20

Ohio Const. art. XIX, § 1 .........................................................................................25

Ohio Const. art. XIX, § 2 .........................................................................................25

Okla. Const. art. I, § 6 .............................................................................................20

Okla. Const. art. III, § 1 ...........................................................................................20

Okla. Const. art. III, § 5 .....................................................................................12, 20

Or. Const. art. 2, § 1 ...............................................................................................21

Or. Const. art. 2, § 2 ...............................................................................................21

Pa. Const. art. I, § 5 .........................................................................................12, 21

Pa. Const. art. 7, § 1 ...............................................................................................21

R.I. Const. art. 2, § 1 ..............................................................................................21

S.C. Const. art. 1, § 5 .............................................................................................21

S.C. Const. art. 2, § 4 .............................................................................................22

S.D. Const. art. 6, § 19 ...........................................................................................22

S.D. Const. art. 7, § 1 ........................................................................................12, 15

S.D. Const. art. 7, § 2 ...........................................................................................22

Tenn. Const. art. 1, § 5 ...........................................................................................22

Tenn. Const. art. 4, § 1 ...........................................................................................22

Tex. Const. art. 6, § 2 ...........................................................................................22

Tex. Const. art. 6, § 2(c) ...........................................................................................12

Utah Const. art. I, § 17 ....................................................................................12, 22

Utah Const. art. 4, § 2 ...........................................................................................22

Va. Const. art. I, § 6 ........................................................................................12, 23

Va. Const. art. 2, § 1 ...........................................................................................23

Vt. Const. ch. 1, art. 8 ....................................................................................12, 22

Vt. Const. ch. 2, § 42 ...........................................................................................22

W.V. Const. art. I, § 4 ...........................................................................................25

W. Va. Const. art. 4, § 1 ...........................................................................................23

Wash. Const. art. 1, § 19 ...........................................................................................23

Wash. Const. art. II, § 43(5) ...........................................................................................25

Wash. Const. art. 6, § 1 ...........................................................................................23

Wis. Const. art. 3, § 1 ...........................................................................................23

Wyo. Const. art. I, § 27 ...........................................................................................12

Wyo. Const. art. III, § 49 ...........................................................................................25

Wyo. Const. art. 6, § 2 ...........................................................................................23

## Cases

*Ariz. St. Legislature v. Ariz. Indep. Redistricting Comm'n*,
  135 S. Ct. 2652 (2015) .................................................................................................8, 9

*Arizona v. Evans*,
  514 U.S. 1 (1995) ................................................................................................................3

*Arizona v. Inter Tribal Council of Ariz.*,
  570 U.S. 1 (2013) ..............................................................................................................14

*Carroll v. Becker*,
  285 U.S. 380 (1932) .......................................................................................................7, 9

*Carson v. Simon*,
  -- F. Supp. 3d --, 2020 WL 6018957 (D. Minn. Oct. 12, 2020) ......................................10

*Chiafalo v. Washington*,
  140 S. Ct. 2316 (2020) ........................................................................................................4

*Citizens Protecting Michigan's Constitution v. Sec'y of State*,
  921 N.W.2d 247 (Mich. 2018) ............................................................................................1

*Colegrove v. Green*,
  328 U.S. 549 (1946) .......................................................................................................5, 10

*Colorado River Water Conserv. Dist. v. United States*,
  424 U.S. 800 (1976) ............................................................................................................4

*Corman v. Torres*,
  287 F. Supp. 3d 558 (M.D. Pa. 2018) .................................................................................4

*Donald J. Trump for President, Inc. v. Bullock*,
  -- F. Supp. 3d --, 2020 WL 5810556, (D. Mont. Sept. 30, 2020) ....................................10

*State of Ohio ex rel. Davis v. Hildebrant*,
  241 U.S. 565 (1916) .......................................................................................................7, 9

*Gill v. Whitford*,
  138 S. Ct. 1916 (2018) ........................................................................................................1

*Growe v. Emison*
  507 U.S. 25 (1993) .........................................................................................................7, 9

*Harper v. Lewis*,
  No. 19-cvs-12667 (N.C. Super. Ct. Oct. 28, 2019), https://bit.ly/2Tkdx7A .....................9

*Holmes v. Moore*,
   840 S.E.2d 244 (N.C. Ct. App. 2020) ................................................................12

*Koenig v. Flynn*,
   285 U.S. 375 (1932) ........................................................................................7, 9

*Lance v. Coffman*,
   549 U.S. 437 (2007) ...........................................................................................4

*League of Women Voters v. Commonwealth*,
   178 A.3d 737 (Pa. 2018) ...................................................................................11

*McPherson v. Blacker*,
   146 U.S. 1 (1892) ..............................................................................................11

*Minnesota v. Nat'l Tea Co.*,
   309 U.S. 551 (1940) ...........................................................................................3

*Pennzoil Co. v. Texaco Inc.*,
   481 U.S. 1 (1987) ...............................................................................................4

*Rucho v. Common Cause*,
   139 S. Ct. 2484 (2019) ............................................................................. *passim*

*Smiley v. Holm*,
   285 U.S. 355 (1932) .................................................................................. *passim*

*Wesberry v. Sanders*,
   376 U.S. 1 (1964) .................................................................................2, 5, 6, 10

## Other Authorities

Edward-Isaac Dovere, *Arnold Schwarzenegger's War on Gerrymandering Is Just
   Beginning*, The Atlantic (Nov. 9, 2018), https://bit.ly/2J2gqbp .................................................1

L. Hogan & A. Schwarzenegger, *Hogan and Schwarzenegger: It's Time to
   Terminate Gerrymandering*, USA Today, July 11, 2019 .........................................................9

## INTEREST OF AMICUS CURIAE[1]

Arnold A. Schwarzenegger served as the Governor of California from 2003 to 2011. During his tenure, Governor Schwarzenegger successfully advocated for ballot measures amending the California Constitution to dramatically reform the state's election process.  In 2008 and 2010, he championed two successful ballot initiatives establishing non-partisan redistricting commissions, and in 2010 he led the effort to reform primaries for congressional and state elections.  After leaving office, in 2012 he helped found the Schwarzenegger Institute for State and Global Policy at the Sol Price School of Public Policy, University of Southern California, committed to advancing post-partisanship where leaders put people over political parties and work together to find the best ideas and solutions to benefit the people they serve.  He has participated as an *amicus curiae* in numerous cases raising fundamental questions about the constitutional limits on redistricting, and about how state constitutions can protect the fairness and openness of elections where the federal constitution does not.  *See, e.g.*, *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019); *Gill v. Whitford*, 138 S. Ct. 1916 (2018); *Citizens Protecting Michigan's Constitution v. Secretary of State*, 921 N.W.2d 247, 249 (Mich. 2018).  And he has successfully advocated for constitutional redistricting reforms in other states across the country, including Michigan, Missouri, and Colorado.  Edward-Isaac Dovere, *Arnold Schwarzenegger's War on Gerrymandering Is Just Beginning*, The Atlantic (Nov. 9, 2018), https://bit.ly/2J2gqbp.

Having fought to enact redistricting reforms through state constitutional amendments in states across the country, including in California, Governor Schwarzenegger has a powerful, vested interest in the continued vitality of state constitutional provisions governing elections and in guaranteeing that state courts can enforce those provisions when necessary.

---

[1] No counsel for a party authored this brief in whole or in part, and no person, other than *amicus curiae* or his counsel, made a monetary contribution intended to fund its preparation or submission.

## INTRODUCTION

In asking this Court to overturn a state supreme court's judgment that rests exclusively on state law grounds, Plaintiffs advance a radical theory of the U.S. Constitution's Elections Clause and Electors Clause.  They assert that those clauses give state legislatures free rein to enact laws that violate the state's own constitution, so long as the laws affect federal elections.  As Defendants will demonstrate, a litany of jurisdictional and procedural bars doom Plaintiffs' collateral attack on the state court's judgment here.  But if this Court does address the merits, a century's worth of Supreme Court precedent and bedrock principles of federalism require the rejection of Plaintiffs' extreme interpretation of the Elections and Electors Clauses.

To adopt Plaintiffs' position, this Court would need to disregard no fewer than *eight* U.S. Supreme Court precedents, including the Supreme Court's seminal decisions in *Wesberry v. Sanders*, 376 U.S. 1 (1964), and *Smiley v. Holm*, 285 U.S. 355 (1932).  *Wesberry* and *Smiley* expressly rejected the interpretation advanced by Plaintiffs that the Election Clause's references to the state "Legislature" and "Congress" give those entities unchecked power to regulate federal elections.  The Supreme Court has held over and over again that, consistent with the U.S. Constitution, state courts may enjoin state election laws on state constitutional grounds.  This Court should decline Plaintiffs' request to disregard this binding Supreme Court precedent.

It is even more imperative for this Court to exercise restraint given the profoundly troubling consequences of endorsing Plaintiffs' interpretation of the U.S. Constitution.  If adopted, their theory would potentially eviscerate dozens of state constitutional provisions in states across the country.  Nearly every state's constitution contains provisions regulating elections and voting rights, and those provisions have governed federal elections for decades or even centuries.  Any suggestion that state courts somehow lack the authority to enforce these state constitutional provisions would upend the constitutional order and cause electoral chaos.

Plaintiffs' Elections Clause theory could wreak havoc with respect to redistricting in particular.  At least a dozen state constitutions contain provisions that substantively constrain congressional redistricting, including requirements to make districts contiguous and compact, to avoid splitting political subdivisions, and not to seek partisan advantage.  Just last year, the Supreme Court held that such state constitutional provisions can cabin congressional redistricting legislation enacted by state legislatures.  The Court held that "state constitutions can provide standards and guidance for state courts to apply," and endorsed the Florida Supreme Court's decision striking down congressional redistricting legislation under the state constitution.  *Rucho v. Common Cause*, 139 S. Ct. 2484, 2507 (2019).  Plaintiffs make no effort to reconcile their Elections Clause theory with this unequivocal statement from the Supreme Court just a year ago.

While partisan tensions are no doubt running high, this case is not about picking winners and losers.  It is about the structure of our government and judicial system.  A cornerstone of the American judicial system is that federal courts cannot review a state court's interpretation and application of state law.  In our federalist system, state courts are "free to serve as experimental laboratories," *Arizona v. Evans*, 514 U.S. 1, 8 (1995), and "[i]t is fundamental that state courts be left free and unfettered by [this Court] in interpreting their state constitutions," *Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940).  Those principles apply with full force here.

Indeed, state constitutions are essential to protecting the rights of voters and ensuring that our elections honestly ascertain the true will of the people.  In Pennsylvania, the people have adopted a state constitution that guarantees every Commonwealth citizen the right to "free and equal" elections.  To hold that the state legislature may enact laws that violate this state constitutional guarantee, as Plaintiffs urge, would flout the Supreme Court's recent admonition that "here, We the People rule."  *Chiafalo v. Washington*, 140 S. Ct. 2316, 2328 (2020).

**ARGUMENT**

As Defendants will show, numerous jurisdictional and procedural bars bar Plaintiffs'

collateral attack on a state court judgment.  As a three-judge panel consisting of Circuit Judge

Jordan and District Judges Connor and Simandle held in identical circumstances, Plaintiffs lack

Article III and prudential standing to assert their claims.  *Corman v. Torres*, 287 F. Supp. 3d 558

(M.D. Pa. 2018); *see also Lance v. Coffman*, 549 U.S. 437 (2007) (voters lack standing to bring

Elections Clause claim).  This Court also must abstain under *Pennzoil Co. v. Texaco Inc.*, 481

U.S. 1 (1987), and *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976).

If this Court does somehow reach the merits, however, it must reject Plaintiffs' claims.

Section I below details the Supreme Court precedents that foreclose Plaintiffs' argument that

state courts, applying state law, may not review and enjoin a state legislature's enactments

regulating federal elections.  Section II outlines the extreme consequences of accepting

Plaintiffs' theory.  It describes the dozens of state constitutional provisions, including those

relating to redistricting, that could be called in question if Plaintiffs' radical view were accepted.

I.    **Plaintiffs' Elections Clause Theory Would Require Ignoring Multiple Supreme Court Precedents Dating Back a Century**

Plaintiffs contend that the U.S. Constitution's Elections Clause grants "exclusive" power

to regulate federal elections to state legislatures and Congress, and that no other actor can have

any say with respect to the state legislature's enactments.  PI Br. at 8 (ECF No. 6).  They

interpret the Elections Clause to designate "a state's 'legislature' as the *only* state entity that may

constitutionally regulate federal elections," "subject to check *only* by Congress"—not by courts.

*Id.* (emphases added); *see also id.* at 9 (asserting that power to regulate federal elections resides

in "the General Assembly and the General Assembly alone (when Congress has not otherwise

acted)"); *id.* at 10 ("[T]he General Assembly is the only constitutionally empowered state entity

to regulate federal elections."). Based on this interpretation, Plaintiffs contend that state constitutions cannot "restrain the discretion of state legislatures under the Elections Clause," and that the Pennsylvania Supreme Court therefore violated the Elections Clause by "overrul[ing] the enactments of the General Assembly" under the Pennsylvania Constitution. *Id.* at 8, 10.

Plaintiffs' interpretation of the Elections Clause runs headlong into a mountain of U.S. Supreme Court precedent. Plaintiffs' interpretation of the Elections Clause flatly conflicts with *Wesberry v. Sanders*, 376 U.S. 1 (1964), and that is reason enough to reject it. *Wesberry*, the foundational election law decision establishing that congressional districts must respect the principle of one-person, one-vote, held that the text of the Elections Clause does not preclude *courts* from exercising their ordinary judicial review function with respect to laws regulating federal elections. The Supreme Court rejected a hyper-literal reading of the Elections Clause, previously endorsed by three justices in *Colegrove v. Green*, 328 U.S. 549 (1946), that would have given state legislatures and Congress "exclusive authority" to regulate elections. *Wesberry*, 376 U.S. at 5-8. As *Wesberry* explained, "nothing in the language of [the Elections Clause] gives support to a construction that would immunize state congressional apportionment laws … from *the power of courts* to protect the constitutional rights of individuals from legislative destruction." *Id.* at 6-7 (emphasis added). "The right to vote is too important in our free society to be stripped of judicial protection by such an interpretation of Article I." *Id.* at 7.

Yet Plaintiffs advance precisely "such an interpretation of Article I." *Id.* They posit that the Elections Clause's text *does* immunize state election laws from the "power of courts to protect the constitutional rights of individuals from legislative destruction." *Id.* The Pennsylvania Supreme Court held that the state constitution's Free and Equal Elections Clause required modest extensions of ballot deadlines to avoid the destruction of the right to vote.

Plaintiffs nonetheless contend that the existence of a "duly enacted statute" (PI Br. 11) precludes operation of state court judicial review under the state constitution because the Elections Clause uses the word "Legislature."  That is clearly wrong under *Wesberry*, which held that "*nothing* in the language" of the Elections Clause prohibits judicial review of state legislation.  376 U.S. at 6 (emphasis added).  Just as the word "Congress" in the Elections Clause does not give Congress "exclusive authority" free from judicial review, *see id.*, the word "Legislature" does not preclude judicial review either, by state or federal courts.  It would turn federalism on its head to hold that *federal* courts may review state legislation to "protect the constitutional rights of individuals from legislative destruction," *id.* at 6-7, but that *state* courts may not.

In fact, an unbroken line of Supreme Court decisions dating back a century confirms that state courts may review state election laws to determine whether they comply with the state constitution.  In *Smiley v. Holm*, 285 U.S. 355 (1932), the Court held that the Elections Clause does not "endow the Legislature of the state with power to enact laws in any manner other than that in which the *Constitution of the state* has provided."  *Id.* at 368 (emphasis added).  The Court explained that legislation enacted pursuant to the Elections Clause constitutes an exercise of the legislature's "lawmaking power."  *Id.* at 370-71.  And the Court rejected the argument that the Elections Clause designates the state legislature "merely as an agency, discharging a particular duty in the manner which the Federal Constitution required," and that "[t]he Governor's veto has no relation to such matters" and instead "pertains under the state Constitution exclusively to state affairs."  *Id.* at 364-65 (internal quotation marks omitted).  Because the state legislature's enactment of election laws reflects an exercise of the lawmaking power, the legislature must comply with all of "the conditions which attach to the making of

state laws," *id.* at 365, including "restriction[s] imposed by state Constitutions upon state Legislatures when exercising the lawmaking power," *id.* at 369.

In two companion cases decided the same day as *Smiley*, the Supreme Court again held that laws enacted by a state legislature pursuant to the Elections Clause must comply with the state's own constitution.  In *Koenig v. Flynn*, 285 U.S. 375 (1932), the Court affirmed a New York Court of Appeals ruling striking down the state's congressional districting law because it violated "the requirements of the Constitution of the state in relation to the enactment of laws." *Id.* at 379.  In so holding, the Court rejected the argument that "[t]he power conferred on the 'Legislature' by the Federal Constitution may not be circumscribed by a State constitution."  Br. of Petitoners-Appellants at , *Koenig*, 285 U.S. 375 (No. 731), 1932 WL 33399, at *24 (Mar. 24, 1932).  The Court held the same in *Carroll v. Becker*, 285 U.S. 380 (1932); *see also State of Ohio ex rel. Davis v. Hildebrant*, 241 U.S. 565, 568 (1916) (state legislatures may not enact laws under the Elections Clause that are invalid "under the Constitution and laws of the state").

Not only are state courts *permitted* to adjudicate the validity of state laws regulating federal elections under state constitutions, the Supreme Court's decision in *Growe v. Emison* 507 U.S. 25 (1993), makes clear that state court review is actually *preferable* to federal court review. Writing for a unanimous Court, Justice Scalia explained that "[t]he Constitution leaves with the States primary responsibility for apportionment of their federal congressional … districts," and that this "duty and responsibility of the State" rests with "its legislature or other body."  *Id.* at 34. The Court admonished the federal district court for failing to defer to Minnesota's state courts, based on "*the mistaken view that federal judges need defer only to the Minnesota Legislature and not at all to the State's courts.*"  *Id.* (emphasis added).  The Supreme Court expressly recognized "[t]he power of the judiciary of a State to require valid reapportionment" of

congressional districts.  *Id.* at 33 (internal quotation marks omitted).  That statement would make no sense if state courts lacked the authority to exercise judicial review to determine whether state laws enacted pursuant to the Elections Clause comply with the state constitution.

Even more recently, in *Arizona State Legislature v. Arizona Independent Redistricting Commission*, 135 S. Ct. 2652 (2015), the Supreme Court held that "[n]othing in [the Elections] Clause instructs, nor has this Court ever held, that a state legislature may prescribe regulations on the time, place, and manner of holding federal elections in defiance of provisions of the State's constitution." *Id.* at 2673.

Finally, Plaintiffs' Elections Clause theory directly contradicts the Supreme Court's decision just last year in *Rucho*.  In holding that federal courts cannot adjudicate partisan gerrymandering claims, the Court explained that "[p]rovisions in … state constitutions can provide standards and guidance for state courts to apply" to congressional districting laws passed by state legislatures.  *Rucho*, 139 S. Ct. at 2507.  The Court specifically identified, as alternatives to federal constitutional litigation, state constitutional provisions that have "outright prohibited partisan favoritism in redistricting."  *Id.* at 2507-08 (citing Fla. Const., Art. III, § 20(a); Mo. Const., Art. III, § 3).  And the Court endorsed state courts' enforcement of such provisions, citing favorably "the Supreme Court of Florida [having] struck down that State's congressional districting plan as a violation of the Fair Districts Amendment to the Florida Constitution."  *Id.* at 2507.  At oral argument, which Governor Schwarzenegger attended with fellow Republican Governor Larry Hogan, members of the Court emphasized the possibility of other state supreme courts following the Florida Supreme Court's example and reining in partisan gerrymandering through enforcement of state constitutional provisions.  *See* Oral Arg. Tr. at 70:2-7 (Justice Gorsuch: "[B]ut you also have the state supreme court option, … we often overlook that

8

possibility in … our federal system"); *id.* at 68:18-69:2 (Justice Kavanaugh: "But what about … that there is a fair amount of activity going on in the states on redistricting and attention in Congress and in state supreme courts?  In other words, have we reached the moment, … even though it would be a big lift for this Court to get involved, where the other actors can't do it?").

The Supreme Court's recognition that state courts can and do apply state constitutional provisions to rein in partisan gerrymandering was essential to *Rucho*'s holding: it permitted the Court to foreclose federal constitutional claims while ensuring that "complaints about districting" would not "echo into a void."  139 S. Ct. at 2507.  Since then, state courts have relied on this language in holding that partisan gerrymandering challenges to congressional redistricting legislation *are* justiciable under state constitutions.  *See* Order at 4 & n.1, *Harper v. Lewis*, No. 19-cvs-12667 (N.C. Super. Ct. Oct. 28, 2019) (three-judge panel) ("[A]lthough the federal courthouse doors may be closed, 'state constitutions can provide standards and guidance for state courts to apply.'" (quoting *Rucho*, 139 S. Ct. at 2507)), https://bit.ly/2Tkdx7A.  And after the Supreme Court's decision, Governor Schwarzenegger rejoined Governor Hogan to highlight the critical importance of states adopting their own gerrymandering reforms following *Rucho*.  L. Hogan & A. Schwarzenegger, *Hogan and Schwarzenegger: It's Time to Terminate Gerrymandering*, USA Today, July 11, 2019.

Plaintiffs ignore this long line of U.S. Supreme Court precedent.  Their theory that the word "Legislature" in the Elections Clause precludes state court judicial review of state election laws under a state's own constitution is fundamentally incompatible with *Smiley*, *Koenig*, *Carroll*, *Davis*, *Growe*, *Arizona State Legislature*, and *Rucho*.  These Supreme Court decisions recognize the power of state courts to review state election laws for compliance with the state constitution.  And Plaintiffs' assertion that Congress is the "only" institution that can serve as a

"check" on the power of the state legislature (PI Br. 8) is exactly the view espoused by the plurality in *Colegrove*—which the Supreme Court then rejected in *Wesberry*. The wooden interpretation of the Elections Clause put forward by Plaintiffs here would revive the positions repudiated in *Smiley* and *Wesberry* that the Elections Clause's text empowers the state legislature to exercise authority outside of the state's normal lawmaking process and without regard to state constitutional constraints, as interpreted and enforced by state courts.

Nor is there any basis to distinguish between the state constitutional provisions at issue in these prior cases and other state constitutional provisions like the Pennsylvania Constitution's Free and Equal Elections Clause or a state constitution's equal protection guarantee. There is no coherent argument for why a state legislature must comply with certain state constitutional provisions—such as those providing for a gubernatorial veto—but not other state constitutional provisions. There is no context in which a legislature exercising its "lawmaking power" is bound by only a portion of the state's own constitution. If any doubt remained, *Rucho* specifically endorsed the Florida Supreme Court's application of a substantive state constitutional provision—the "Fair Districts Amendment to the Florida Constitution"—to strike down legislation passed by the Florida legislature pursuant to the Elections Clause. 139 S. Ct. at 2507.

The Supreme Court's holdings on the Elections Clause apply equally to the Electors Clause. The text of the two clauses is functionally identical—each provides for "the Legislature" to set the "manner" of the relevant elections. Both clauses were "adopted during the 1787 Constitutional Convention," *Donald J. Trump for President, Inc. v. Bullock*, -- F. Supp. 3d --, 2020 WL 5810556, at *11 (D. Mont. Sept. 30, 2020), and there is no evidence that the Framers intended the word "Legislature" to mean different things in the two clauses. For these reasons, courts have held that "the term 'Legislature' … in both clauses" should be afforded "an identical

meaning in both instances." *Id.*; *see also Carson v. Simon*, -- F. Supp. 3d --, 2020 WL 6018957, at *1 (D. Minn. Oct. 12, 2020) ("The Electors Clause and Elections Clause have 'considerable similarity,' and interpretations of one clause may inform the other." (quoting *Arizona State Legis.*, 576 U.S. at 839 (Roberts, J., dissenting)).

*McPherson v. Blacker*, 146 U.S. 1 (1892), is not to the contrary.  There, the Michigan Supreme Court held that the state statute at issue did *not* violate the state constitution, *see* 52 N.W. 469, 473 (Mich. 1892), and the only question before the U.S. Supreme Court was whether the statute violated substantive provisions of the U.S. Constitution.  While Plaintiffs point to a line in *McPherson* that the power of state legislatures "cannot be taken from them or modified by their state constitutions," that language was merely part of a large block quote from a Senate report.  146 U.S. at 35 (quoting Senate Rep. 1st Sess. 43d Cong. No. 395).  It was not an independent statement by the Court or in any way part of the Court's holding, as there was no state constitutional violation at issue in the case.

In fact, *McPherson* made clear that state legislatures may *not* violate a state constitutional provision protecting the right to vote when the state holds a popular vote for President.  The Court explained that "[w]henever presidential electors are appointed by popular election, then the right to vote cannot be denied or abridged without invoking the penalty" under the Fourteenth Amendment of reduced representation in Congress.  146 U.S. at 39.  And, for these purposes, "[t]he right to vote intended to be protected refers to the right to vote as *established by the laws and constitution of the state*."  *Id.* (emphasis added).  Thus, if the popular vote in Pennsylvania goes forward in a way that abridges the right to vote established in Pennsylvania's Constitution, it would trigger the Fourteenth Amendment's penalty of reduced congressional representation.  And the Pennsylvania Supreme Court has held that the election-day deadline for

mail ballots violates the right to vote in Pennsylvania's Free and Equal Elections Clause.  It cannot be that the Electors Clause requires the Presidential election to be conducted in a manner that would trigger the Fourteenth Amendment's reduced-representation penalty.

## II.  Plaintiffs' Elections Clause Theory Would Jeopardize Dozens of State Constitutional Provisions, Cause Electoral Chaos, and Upend the Federal System

Beyond conflicting with more than a half-dozen Supreme Court decisions, construing the Elections and Electors Clauses to foreclose state court judicial review of state election legislation under state constitutions would fundamentally upend this nation's federalist system and threatens to nullify dozens of state constitutional provisions across the country.

A.  As shown in Table 1 below, nearly every state's constitution contains provisions affording citizens the affirmative right to vote if they meet specified qualifications.  In addition, at least 24 states' constitutions contain provisions guaranteeing that "all elections" in the state— including federal elections—shall be "free," "free and open," or "free and equal."[2]  Those free elections clauses have no counterpart in the federal constitution and some pre-date the U.S. Constitution, including Pennsylvania's Free and Equal Elections Clause, Pa. Const. art. I, § 5 (included in Pennsylvania's 1776 Declaration of Rights).  *See League of Women Voters v. Commonwealth*, 178 A.3d 737, 804-09 (Pa. 2018).

Other states have adopted state constitutional provisions guaranteeing voting rights in all elections more recently, in reliance on the settled principle that state constitutions can provide

---

[2] Ariz. Const. art. II, § 21; Ark. Const. art. 3, § 2; Cal. Const. art. II, § 3; Colo. Const. art. II, § 5; Conn. Const. art. VI, § 4; Del. Const. art. I, § 3; Idaho Const. art. I, § 19; Ill. Const. art. III, § 3; Ind. Const. art. 2, § 1; Ky. Const. § 6; Md. Decl. of Rts. art. 7; Mass. Const. pt. 1, art. IX; Mo. Const. art. I, § 25; Mont. Const. art. II, § 13; Ne. Const. art. I, § 22; N.H. Const. pt. 1st, art. 11; N.M. Const. art. II, § 8; N.C. Const. art. I, § 10; Okl. Const. art. III, § 5; Ore. Const. art. II, § 1; Pa. Const. art. I, § 5; S.C. Const. art. I, § 5; S.D. Const. art. VII, § 1; Tenn. Const. art. I, § 5; Tex. Const. art. VI, § 2(c); Utah Const. art. I, § 17; Vt. Const. ch. 1, art. 8; Va. Const. art. I, § 6; Wash. Const. art. I, § 19; Wyo. Const. art. I, § 27.

broader or more specific protections for voting rights than the U.S. Constitution.  For instance, in 2010 Governor Schwarzenegger supported a constitutional amendment in California that eliminated partisan primaries for congressional elections and instead provided that the top two candidates advance to the general election, regardless of party.  Cal. Const. art. II, § 5(a).  In 2018 in Michigan, voters adopted a ballot initiative amending their state constitution to guarantee "[t]he right … to vote a secret ballot in all elections," "[t]he right to a 'straight party' vote option on partisan general elections ballots," and "[t]he … to vote an absent voter ballot without giving a reason."  Mich. Const. art. II, § 4.  As a result, Michigan is allowing no-excuse absentee voting and a straight-party voting option in the 2020 general elections.  Until now, nobody had even thought to suggest that these constitutional provisions in California and Michigan are somehow null and void in the context of federal elections.

But the radical interpretation of the Elections Clause advanced by Plaintiffs would suggest just that.  The theory that state legislatures may enact laws regulating federal elections without regard to their own state constitutions could render the dozens of state constitutional provisions in Table 1 largely inoperable.  It is hard to imagine a more direct affront to federalism, and displacing these state constitutional provisions that have governed elections in many states since their inception would have consequences that are difficult to comprehend.

One potential chaotic outcome is a two-track system in which state constitutional provisions constrain the operation of state statutes for state and local elections on the ballot but not federal elections on the same ballot.  For instance, North Carolina state courts have enjoined the state's voter ID law based on the likelihood that it violates the North Carolina Constitution's Equal Protection Clause.  *See Holmes v. Moore*, 840 S.E.2d 244, 249 (N.C. Ct. App. 2020).  Under Plaintiffs' theory, would North Carolina voters nonetheless be forced to show

identification to vote for the federal races on the ballot but not to vote for the state and local races?  In Michigan, would ballots have a straight-party voting option that would apply only to the state and local races on the ballot, while voters would have to fill out each of the federal races individually?  Not only would this bifurcation confuse voters, but "[a]s a practical matter, it would be very burdensome for a State to maintain separate federal and state … processes." *Arizona v. Inter Tribal Council of Ariz.*, 570 U.S. 1, 41 (2013) (Thomas, J., dissenting).  Such chaos could result in any number of states with any number of voting regulations.

　　　　B.　　Plaintiffs' position also would wreak havoc in the realm of redistricting, a topic about which Governor Schwarzenegger is a fanatic.  As detailed in Table 2 below, at least 12 state constitutions have provisions that *substantively* restrict the drawing of congressional districts—*i.e.*, criteria with which state legislatures must comply in drawing districts.  All of these state constitutional provisions require that congressional districts be contiguous and compact, most require the legislature to preserve political subdivisions or communities of interest, and some preclude partisan considerations or efforts to protect incumbents.

　　　　One state constitution that imposes such restrictions is California, where Governor Schwarzenegger played an instrumental role in adopting a constitutional amendment in 2010 that transferred authority to draw congressional districts to a citizens redistricting commission and amended the substantive criteria for districts.  *See* Cal. Const. art. XXI.  That constitutional amendment has been essential to promoting fair elections in California.  State constitutional provisions have played the same vital role in the other states listed in Table 2, in some instances for decades or longer.  Any holding (or even suggestion) that state legislatures could now disregard these state constitutional constraints in drawing new congressional districts, pursuant to some unchecked power supposedly granted by the Elections Clause, would cause chaos.  And, as

explained, it would flout *Rucho*'s holding just last year.  The Supreme Court encouraged state innovations to regulate congressional redistricting and confirmed that "state courts" may apply "[p]rovisions in … state constitutions."  139 S. Ct. at 2507.  This Court should reject Plaintiffs' request to reverse course on an essential aspect of the holding in *Rucho* just one year ago.

In fast-moving litigation with enormous stakes, it is especially imperative that courts adhere to precedent and avoid making new law that would have dramatic and unanticipated consequences.  And it would be wrong and un-American to deny state courts the power to review state laws to determine whether their comply with the state's own constitution.  This Court should not endorse any interpretation of the Elections Clause or Electors Clause that would upend this nation's federalist system, jeopardize dozens of state constitutional provisions, and effectively overrule more than a half-dozen decisions of the U.S. Supreme Court.

| Table 1: State Constitutional Provisions Governing Voting and Elections | | |
|---|---|---|
| **State** | **Const. provision** | **Constitutional text** |
| Alabama | Art. 8, § 177; Amend. 865 | "Every citizen of the United States who has attained the age of eighteen years and has resided in this state and in a county thereof for the time provided by law, if registered as provided by law, shall have the right to vote in the county of his or her residence." |
| Alaska | Art. 5, § 1 | "Every citizen of the United States who is at least eighteen years of age, who meets registration residency requirements which may be prescribed by law, and who is qualified to vote under this article, may vote in any state or local election." |
| Arizona | Art. 2, § 21 | "All elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." |
| Arizona | Art. 7, § 2 | "No person shall be entitled to vote at any general election, or for any office that now is, or hereafter may be, elective by the people, or upon any question which may be submitted to a vote of the people, unless such person be a citizen of the United States of the age of eighteen years or over, and shall have resided in the state for the period of time preceding such election as prescribed by law, provided that qualifications for voters at a general election for the purpose of electing presidential electors shall be as prescribed by law. The word 'citizen' shall include persons of the male and female sex." |

| Arkansas | Art. 3, § 2 | "Elections shall be free and equal. No power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage; nor shall any law be enacted whereby such right shall be impaired or forfeited, except for the commission of a felony, upon lawful conviction thereof. [As amended by Const. Amend. 85.]" |
| Arkansas | Art. 3, § 1 | "Except as otherwise provided by this Constitution, any person may vote in an election in this state who is: (1) A citizen of the United States; (2) A resident of the State of Arkansas; (3) At least eighteen (18) years of age; and (4) Lawfully registered to vote in the election. [As amended by Const. Amend. 85.]" |
| California | Art. 2, § 2 | "A United States citizen 18 years of age and resident in this State may vote." |
| California | Art. 2, § 2.5 | "A voter who casts a vote in an election in accordance with the laws of this State shall have that vote counted." |
| Colorado | Art. 2, § 5 | "All elections shall be free and open; and no power, civil or military, shall at any time interfere to pre-vent the free exercise of the right of suffrage." |
| Colorado | Art. 7, § 1 | "Every citizen of the United States who has attained the age of eighteen years, has resided in this state for such time as may be prescribed by law, and has been duly registered as a voter if required by law shall be qualified to vote at all elections." |
| Colorado | Art. 7, § 1a | "Any person who otherwise meets the requirements of law for voting in this state shall not be denied the right to vote in an election because of residence on land situated within this state that is under the jurisdiction of the Unit-ed States." |
| Connecticut | Art. 6, § 1 | "Every citizen of the United States who has attained the age of eighteen years, who is a bona fide resident of the town in which he seeks to be admitted as an elector and who takes such oath, if any, as may be prescribed by law, shall be qualified to be an elector." |
| Delaware | Art. 1, § 3 | "All elections shall be free and equal." |
| Delaware | Art. 5, § 2 | "Every citizen of this State of the age of twenty-one years who shall have been a resident thereof one year next preceding an election, and for the last three months a resident of the county, and for the last thirty days a resident of the hundred or election district in which he or she may offer to vote, and in which he or she shall have been duly registered as hereinafter provided for, shall be entitled to vote at such election in the hundred or election district of which he or she shall at the time be a resident, and in which he or she shall be registered . . . . " |
| Florida | Art. 6, § 2 | "Every citizen of the United States who is at least eighteen years of age and who is a permanent resident of the state, if registered as provided by law, shall be an elector of the county where registered." |
| Georgia | Art. 2, § 1, ¶ II | "Every person who is a citizen of the United States and a resident of Georgia as defined by law, who is at least 18 years of age and not disenfranchised by this article, and who meets minimum residency |

| | | requirements as provided by law shall be entitled to vote at any election by the people." |
|---|---|---|
| Hawaii | Art. 1, § 8 | "No citizen shall be disfranchised, or deprived of any of the rights or privileges secured to other citizens, unless by the law of the land." |
| Hawaii | Art. 2, § 1 | "Every citizen of the United States who shall have attained the age of eighteen years, have been a resident of this State not less than one year next preceding the election and be a voter registered as provided by law, shall be qualified to vote in any state or local election." |
| Idaho | Art. 6, § 2 | "Every male or female citizen of the United States, eighteen years old, who has resided in this state, and in the county where he or she offers to vote for the period provided by law, if registered as provided by law, is a qualified elector." |
| Illinois | Art. 3, § 3 | "All elections shall be free and equal." |
| Illinois | Art. 3, § 1 | "Every United States citizen who has attained the age of 18 or any other voting age required by the United States for voting in State elections and who has been a permanent resident of this State for at least 30 days next preceding any election shall have the right to vote at such election." |
| Illinois | Art. 3, § 8 | "No person shall be denied the right to register to vote or to cast a ballot in an election based on race, color, ethnicity, status as a member of a language minority, national origin, religion, sex, sexual orientation, or income." |
| Indiana | Art. 2, § 1 | "All elections shall be free and equal." |
| Indiana | Art. 2, § 2 | "A citizen of the United States, who is at least eighteen (18) years of age and who has been a resident of a precinct thirty (30) days immediately preceding an election may vote in that precinct at the election." |
| Iowa | Art. 2, § 1 | "Every citizen of the United States of the age of twenty-one years, who shall have been a resident of this state for such period of time as shall be provided by law and of the county in which he claims his vote for such period of time as shall be provided by law, shall be entitled to vote at all elections which are now or hereafter may be authorized by law." |
| Kansas | Art. 5, § 1 | "Every citizen of the United States who has attained the age of eighteen years and who resides in the voting area in which he or she seeks to vote shall be deemed a qualified elector." |
| Kentucky | § 6 | "All elections shall be free and equal." |
| Kentucky | § 145 | Every citizen of the United States of the age of eighteen years who has resided in the state one year, and in the county six months, and the precinct in which he offers to vote sixty days next preceding the election, shall be a voter . . . ." |
| Louisiana | Art. 1, § 10 | "Every citizen of the state, upon reaching eighteen years of age, shall have the right to register and vote . . . ." |
| Maine | Art. 2, § 1 | "Every citizen of the United States of the age of 18 years and upwards, excepting persons under guardianship for reasons of mental illness, having his or her residence established in this State, shall be an elector |

| | | for Governor, Senators and Representatives, in the city, town or plantation where his or her residence has been established, if he or she continues to reside in this State; and the elections shall be by written ballot." |
|---|---|---|
| Maryland | Decl. of Rights, Art. 7 | "That the right of the People to participate in the Legislature is the best security of liberty and the foundation of all free Government; for this purpose, elections ought to be free and frequent; and every citizen having the qualifications prescribed by the Constitution, ought to have the right of suffrage." |
| Maryland | Decl. of Rights, Art. 15 | "That the levying of taxes by the poll is grievous and oppressive, and ought to be prohibited[.]" |
| Maryland | Art. 1, § 1 | "[E]very citizen of the United States, of the age of 18 years or upwards, who is a resident of the State as of the time for the closing of registration next preceding the election, shall be entitled to vote in the ward or election district in which the citizen re-sides at all elections to be held in this State." |
| Massachus etts | Pt. 1, Art. 9 | "All elections ought to be free; and all the inhabit-ants of this commonwealth, having such qualifications as they shall establish by their frame of government, have an equal right to elect officers, and to be elected, for public employments." |
| Massachus etts | Pt. 1, Art. 9 | "[A]ll the inhabitants of this commonwealth, having such qualifications as they shall establish by their frame of government, have an equal right to elect officers, and to be elected . . . ." |
| Michigan | Art. 2, § 4 | "(1) Every citizen of the United States who is an elector qualified to vote in Michigan shall have the following rights:<br><br>(a) The right, once registered, to vote a secret ballot in all elections.<br><br>(b) The right, if serving in the military or living overseas, to have an absent voter ballot sent to them at least forty-five (45) days before an election upon application.<br><br>(c) The right, once registered, to a "straight party" vote option on partisan general election ballots. In partisan elections, the ballot shall include a position at the top of the ballot by which the voter may, by a single selection, record a straight party ticket vote for all the candidates of one (1) party. The voter may vote a split or mixed ticket.<br><br>(d) The right to be automatically registered to vote as a result of conducting business with the secretary of state regarding a driver's license or personal identification card, unless the person declines such registration.<br><br>(e) The right to register to vote for an election by mailing a completed voter registration application on or before the fifteenth (15th) day before |

|  |  | that election to an election official authorized to receive voter registration applications.

(f) The right to register to vote for an election by (1) appearing in person and submitting a completed voter registration application on or before the fifteenth (15th) day before that election to an election official authorized to receive voter registration applications, or (2) beginning on the fourteenth (14th) day before that election and continuing through the day of that election, appearing in person, submitting a completed voter registration application and providing proof of residency to an election official responsible for maintaining custody of the registration file where the person resides, or their deputies. Persons registered in accordance with subsection (1)(f) shall be immediately eligible to receive a regular or absent voter ballot.

(g) The right, once registered, to vote an absent voter ballot without giving a reason, during the forty (40) days before an election, and the right to choose whether the absent voter ballot is applied for, received and submitted in person or by mail. During that time, election officials authorized to issue absent voter ballots shall be available in at least one (1) location to issue and receive absent voter ballots during the election officials' regularly scheduled business hours and for at least eight (8) hours during the Saturday and/or Sunday immediately prior to the election. Those election officials shall have the authority to make absent voter ballots available for voting in person at additional times and places beyond what is required herein.

(h) The right to have the results of statewide elections audited, in such a manner as prescribed by law, to ensure the accuracy and integrity of elections." |
|---|---|---|
| Michigan | Art. 2, § 1 | "Every citizen of the United States who has attained the age of 21 years, who has resided in this state six months, and who meets the requirements of local residence provided by law, shall be an elector and qualified to vote in any election except as otherwise provided in this constitution." |
| Minnesota | Art. 7, § 1 | "Every person 18 years of age or more who has been a citizen of the United States for three months and who has resided in the precinct for 30 days next preceding an election shall be entitled to vote in that precinct." |
| Mississippi | Art. 12, § 241 | "Every inhabitant of this state, except idiots and insane persons, who is a citizen of the United States of America, eighteen (18) years old and upward, who has been a resident of this state for one (1) year, and for one (1) year in the county in which he offers to vote, and for six (6) months in the election precinct or in the incorporated city or town in which he offers to vote, and who is duly registered as provided in this article, and who has never been convicted of murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement or bigamy, is declared to be a qualified elector, except |

| | | that he shall be qualified to vote for President and Vice President of the United States if he meets the requirements established by Congress therefor and is otherwise a qualified elector." |
|---|---|---|
| Missouri | Art. 1, § 25 | "That all elections shall be free and open; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." |
| Missouri | Art. 8, § 2 | "All citizens of the United States, including occupants of soldiers' and sailors' homes, over the age of eighteen who are residents of this state and of the political subdivision in which they offer to vote are entitled to vote at all elections by the people . . . ." |
| Montana | Art. 2, § 13 | "All elections shall be free and open, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." |
| Montana | Art. 4, § 3 | "The legislature shall . . . insure the purity of elections and guard against abuses of the electoral process." |
| Montana | Art. 4, § 2 | "Any citizen of the United States 18 years of age or older who meets the registration and residence requirements provided by law is a qualified elector unless he is serving a sentence for a felony in a penal institution or is of unsound mind, as determined by a court." |
| Nebraska | Art. 1, § 22 | "All elections shall be free . . . ." |
| Nebraska | Art. 1, § 22 | "[T]here shall be no hindrance or impediment to the right of a qualified voter to exercise the elective franchise." |
| Nevada | Art. 2, § 1 | "All citizens of the United States (not laboring under the disabilities named in this constitution) of the age of eighteen years and upwards, who shall have actually, and not constructively, resided in the state six months, and in the district or county thirty days next preceding any election, shall be entitled to vote for all officers that now or hereafter may be elected by the people, and upon all questions submitted to the electors at such election . . . ." |
| New Hampshire | Pt. 1, Art. 11 | "All elections are to be free . . . ." |
| New Hampshire | Pt. 1, Art. 11 | "[E]very inhabitant of the state of 18 years of age and upwards shall have an equal right to vote in any election. Every person shall be considered an inhabitant for the purposes of voting in the town, ward, or unincorporated place where he has his domicile." |
| New Jersey | Art. 2, § 1(3)(a) | "Every citizen of the United States, of the age of 18 years, who shall have been a resident of this State and of the county in which he claims his vote 30 days, next before the election, shall be entitled to vote for all officers that now are or hereafter may be elective by the people, and upon all questions which may be submitted to a vote of the people . . . ." |
| New Mexico | Art. 2, § 8 | "All elections shall be free and open, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." |

| New Mexico | Art. 7, § 1(A) | "Every person who is a qualified elector pursuant to the constitution and laws of the United States and a citizen thereof shall be qualified to vote in all elections in New Mexico . . . ." |
| New York | Art. 2, § 1 | "Every citizen shall be entitled to vote at every election for all officers elected by the people and upon all questions submitted to the vote of the people provided that such citizen is eighteen years of age or over and shall have been a resident of this state, and of the county, city, or village for thirty days next preceding an election." |
| North Carolina | Art. 1, § 10 | "All elections shall be free." |
| North Carolina | Art. 6, § 1 | "Every person born in the United States and every person who has been naturalized, 18 years of age, and possessing the qualifications set out in this Article, shall be entitled to vote at any election by the people of the State, except as herein otherwise provided." |
| North Dakota | Art. 2, § 1 | "Every citizen of the United States, who has attained the age of eighteen years and who is a North Dakota resident, shall be a qualified elector." |
| Ohio | Art. 5, § 1 | "Every citizen of the United States, of the age of eighteen years, who has been a resident of the state, county, township, or ward, such time as may be provided by law, and has been registered to vote for thirty days, has the qualifications of an elector, and is entitled to vote at all elections." |
| Oklahoma | Art. 3, § 5 | "All elections shall be free and equal. No power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage . . . ." |
| Oklahoma | Art. 1, § 6 | "The State shall never enact any law restricting or abridging the right of suffrage on account of race, color, or previous condition of servitude." |
| Oklahoma | Art. 3, § 1 | "Subject to such exceptions as the Legislature may prescribe, all citizens of the United States, over the age of eighteen (18) years, who are bona fide residents of this state, are qualified electors of this state." |
| Oregon | Art. 2, § 1 | "All elections shall be free and equal." |
| Oregon | Art. 2, § 2 | "Every citizen of the United States is entitled to vote in all elections not otherwise provided for by this Constitution if such citizen: (a) Is 18 years of age or older; (b) Has resided in this state during the six months immediately preceding the election, except that provision may be made by law to permit a person who has resided in this state less than 30 days immediately preceding the election, but who is otherwise qualified under this subsection, to vote in the election for candidates for nomination or election for President or Vice President of the United States or elector of President and Vice President of the United States; and (c) Is registered not less than 20 calendar days immediately preceding any election in the manner provided by law." |
| Pennsylvania | Art. 1, § 5 | "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." |
| Pennsylvania | Art. 7, § 1 | "Every citizen twenty-one years of age, possessing the following qualifications, shall be entitled to vote at all elections subject, however, to such laws requiring and regulating the registration of electors as the General Assembly may enact. 1. He or she shall have been a citizen of |

| | | the United States at least one month. 2. He or she shall have resided in the State ninety (90) days immediately preceding the election. 3. He or she shall have resided in the election district where he or she shall offer to vote at least sixty (60) days immediately preceding the election, except that if qualified to vote in an election district prior to removal of residence, he or she may, if a resident of Pennsylvania, vote in the election district from which he or she removed his or her residence within sixty (60) days preceding the election." |
|---|---|---|
| Rhode Island | Art. 2, § 1 | "Every citizen of the United States of the age of eighteen years or over who has had residence and home in this state for thirty days next preceding the time of voting, who has resided thirty days in the town or city from which such citizen desires to vote, and whose name shall be registered at least thirty days next preceding the time of voting as provided by law, shall have the right to vote for all offices to be elected and on all questions submitted to the electors . . . ." |
| South Carolina | Art. 1, § 5 | "All elections shall be free and open, and every inhabitant of this State possessing the qualifications provided for in this Constitution shall have an equal right to elect officers and be elected to fill public office." |
| South Carolina | Art. 2, § 4 | "Every citizen of the United States and of this State of the age of eighteen and upwards who is properly registered is entitled to vote as provided by law." |
| South Dakota | Art. 6, § 19 | "Elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." |
| South Dakota | Art. 7, § 2 | "Every United States citizen eighteen years of age or older who has met all residency and registration requirements shall be entitled to vote in all elections and upon all questions submitted to the voters of the state unless disqualified by law for mental incompetence or the conviction of a felony. |
| Tennessee | Art. 1, § 5 | "The elections shall be free and equal, and the right of suffrage, as hereinafter declared, shall never be denied to any person entitled thereto, except upon conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of competent jurisdiction." |
| Tennessee | Art. 4, § 1 | "Every person, being eighteen years of age, being a citizen of the United States, being a resident of the state for a period of time as prescribed by the General Assembly, and being duly registered in the county of residence for a period of time prior to the day of any election as prescribed by the General Assembly, shall be entitled to vote in all federal, state, and local elections held in the county or district in which such person re-sides." |
| Texas | Art. 6, § 2 | "Every person subject to none of the disqualifications provided by Section 1 of this article or by a law enacted under that section who is a citizen of the United States and who is a resident of this State shall be deemed a qualified voter . . . ." |
| Utah | Art. 1, § 17 | "All elections shall be free, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." |

22

| Utah | Art. 4, § 2 | "Every citizen of the United States, eighteen years of age or over, who makes proper proof of residence in this state for thirty days next preceding any election, or for such other period as required by law, shall be entitled to vote in the election." |
|------|------|------|
| Vermont | Ch. 1, Art. 8 | "That all elections ought to be free and without corruption, and that all voters, having a sufficient, evident, common interest with, and attachment to the community, have a right to elect officers, and be elected into office, agreeably to the regulations made in this constitution." |
| Vermont | Ch. 2, § 42 | "Every person of the full age of eighteen years who is a citizen of the Unit-ed States, having resided in this State for the period established by the General Assembly and who is of a quiet and peaceable behavior, and will take the following oath or affirmation, shall be entitled to all the privileges of a voter of this state: . . . ." |
| Virginia | Art. 1, § 6 | "That all elections ought to be free; and that all men, having sufficient evidence of permanent common interest with, and attachment to, the community, have the right of suffrage, and cannot be taxed, or deprived of, or damaged in, their property for public uses, without their own consent, or that of their representatives duly elected, or bound by any law to which they have not, in like manner, assented for the public good." |
| Virginia | Art. 2, § 1 | "In elections by the people, the qualifications of voters shall be as follows: Each voter shall be a citizen of the United States, shall be eighteen years of age, shall fulfill the residence requirements set forth in this section, and shall be registered to vote pursuant to this article." |
| Washington | Art. 1, § 19 | "All Elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." |
| Washington | Art. 6, § 1 | "All persons of the age of eighteen years or over who are citizens of the United States and who have lived in the state, county, and precinct thirty days immediately preceding the election at which they offer to vote, except those disqualified by Article VI, section 3 of this Constitution, shall be entitled to vote at all elections." |
| West Virginia | Art. 4, § 1 | "The citizens of the state shall be entitled to vote at all elections held within the counties in which they respectively reside . . . ." |
| Wisconsin | Art. 3, § 1 | "Every United States citizen age 18 or older who is a resident of an election district in this state is a qualified elector of that district." |
| Wyoming | Art. 6, § 2 | "Every citizen of the United States of the age of twenty-one years and upwards, who has resided in the state or territory one year and in the county wherein such residence is located sixty days next preceding any election, shall be entitled to vote at such election, except as herein other-wise provided." |

| Table 2: State Constitutional Restrictions on Redistricting | | |
|---|---|---|
| **State** | **Const. provision** | **Substantive Restrictions** |
| Arizona | Art. IV, § 1(14) | Congressional districts must:<br>• Be compact<br>• Be contiguous<br>• Respect communities of interest<br>• Use visible geographic features, city, town and county boundaries and undivided census tracts<br>• Be competitive to the extent possible<br>• Not be drawn using party registration or voting history data |
| California | Art. XXI, § 2(d) | Congressional districts must:<br>• Be contiguous<br>• Be compact<br>• Respect the geographic integrity of any city, county, city and county, local neighborhood, or local community of interest<br>• Not be drawn for the purpose of favoring or discriminating against an incumbent, political candidate, or political party |
| Colorado | Art. V, § 44.3c | Congressional districts must:<br>• Be contiguous<br>• Be compact<br>• Preserve whole communities of interest and whole political subdivisions<br>• Maximize the number of politically competitive districts<br>• Not be drawn for the purpose of protecting one or more incumbent members or declared candidates for Congress |
| Florida | Art. III, § 20 | Congressional districts must:<br>• Not be drawn with the intent to favor or disfavor a political party or an incumbent<br>• Not be drawn with the intent or result of denying or abridging the equal opportunity of racial or language minorities to participate in the political process or to diminish their ability to elect representatives of their choice<br>• Be contiguous<br>• Be compact<br>• Utilize existing political and geographic boundaries |
| Iowa | Art. III, § 37 | Congressional districts must:<br>• Follow political boundaries<br>• Be contiguous |
| Michigan | Art. IV, § 6(13) | Congressional districts must:<br>• Be contiguous<br>• Reflect state's diversity and respect communities of interest<br>• Not be drawn with a disproportionate advantage to any political party (using accepted measures of partisan fairness) |

| | | |
|---|---|---|
| | | • Not be drawn with the purpose of favoring or discriminating against a candidate or incumbent<br>• Reflect county, city, and township boundaries<br>• Be compact |
| Missouri | Art. III, § 45 | Congressional districts must:<br>• Be compact<br>• Be contiguous<br>• Be as nearly equal in population as possible |
| New York | Art. III, § 4(c) | Congressional districts must:<br>• Not purposefully or effectively abridge voting rights of racial or language minorities<br>• Be contiguous<br>• Be compact<br>• Not discourage competition or favor incumbents, candidates, or parties<br>• Follow political boundaries |
| Ohio | Art. XIX, §§ 1-2 | Congressional districts must:<br>• Be contiguous<br>• Be compact<br>• Keep certain counties whole<br>• If the map passed with less than 60 percent support in each chamber or less than one-third support from both major parties in each chamber, then the plan may not unduly favor or disfavor a political party or its incumbents |
| Washington | Art. II, § 43(5) | Congressional districts must:<br>• Be compact and convenient<br>• Be nearly equal in population as practicable<br>• Be contiguous<br>• Follow county and municipal boundaries, geographic barriers, or artificial barriers<br>• Not purposefully favor or discriminate against any group or political party |
| West Virginia | Art. I, § 4 | Congressional districts must:<br>• Be contiguous<br>• Be compact<br>• Be as nearly equal in population as possible<br>• Follow county lines |
| Wyoming | Art. III, § 49 | Congressional districts must:<br>• Be compact<br>• Be contiguous<br>• Not divide a county |

**CONCLUSION**

The Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: October 26, 2020

Respectfully Submitted,

/s/ Philip W. Marsh _____
Philip W. Marsh
ARNOLD & PORTER
  KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
philip.marsh@arnoldporter.com

*Of Counsel*
R. Stanton Jones
Elisabeth S. Theodore
Daniel F. Jacobson
Samuel F. Callahan
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
(202) 942-5000
stanton.jones@arnoldporter.com

*Counsel for Amicus Curiae*