IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JIM BOGNET, DONALD K. MILLER, DEBRA MILLER, ALAN CLARK, AND JENNIFER CLARK, | ) ) ) ) ) | Case No. 3:20-cv-215 |
| Plaintiffs, | ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) | |
| KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania, ADAMS COUNTY BOARD OF ELECTIONS, ALLEGHENY COUNTY BOARD OF ELECTIONS, ARMSTRONG COUNTY BOARD OF ELECTIONS, BEAVER COUNTY BOARD OF ELECTIONS, BEDFORD COUNTY BOARD OF ELECTIONS, BERKS COUNTY BOARD OF ELECTIONS, BLAIR COUNTY BOARD OF ELECTIONS, BRADFORD COUNTY BOARD OF ELECTIONS, BUCKS COUNTY BOARD OF ELECTIONS, BUTLER COUNTY BOARD OF ELECTIONS, CAMBRIA COUNTY BOARD OF ELECTIONS, CAMERON COUNTY BOARD OF ELECTIONS, CARBON COUNTY BOARD OF ELECTIONS, CENTRE COUNTY BOARD OF ELECTIONS, CHESTER COUNTY BOARD OF ELECTIONS, CLARION COUNTY BOARD OF ELECTIONS, CLEARFIELD COUNTY BOARD OF ELECTIONS, CLINTON COUNTY BOARD OF ELECTIONS, COLUMBIA COUNTY BOARD OF ELECTIONS, CRAWFORD COUNTY BOARD OF ELECTIONS, CUMBERLAND COUNTY BOARD OF ELECTIONS, DAUPHIN COUNTY BOARD OF ELECTIONS, DELAWARE COUNTY BOARD OF | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

ELECTIONS, ELK COUNTY BOARD OF )
ELECTIONS, ERIE COUNTY BOARD OF )
ELECTIONS, FAYETTE COUNTY )
BOARD OF ELECTIONS, FOREST )
COUNTY BOARD OF ELECTIONS, )
FRANKLIN COUNTY BOARD OF )
ELECTIONS, FULTON COUNTY BOARD )
OF ELECTIONS, GREENE COUNTY )
BOARD OF ELECTIONS, )
HUNTINGDON COUNTY BOARD OF )
ELECTIONS, INDIANA COUNTY )
BOARD OF ELECTIONS, JEFFERSON )
COUNTY BOARD OF ELECTIONS, )
JUNIATA COUNTY BOARD OF )
ELECTIONS, LACKAWANNA COUNTY )
BOARD OF ELECTIONS, LANCASTER )
COUNTY BOARD OF ELECTIONS, )
LAWRENCE COUNTY BOARD OF )
ELECTIONS, LEBANON COUNTY )
BOARD OF ELECTIONS, LEHIGH )
COUNTY BOARD OF ELECTIONS, )
LUZERNE COUNTY BOARD OF )
ELECTIONS, LYCOMING COUNTY )
BOARD OF ELECTIONS, MCKEAN )
COUNTY BOARD OF ELECTIONS, )
MERCER COUNTY BOARD OF )
ELECTIONS, MIFFLIN COUNTY BOARD )
OF ELECTIONS, MONROE COUNTY )
BOARD OF ELECTIONS, )
MONTGOMERY COUNTY BOARD OF )
ELECTIONS, MONTOUR COUNTY )
BOARD OF ELECTIONS, )
NORTHAMPTON COUNTY BOARD OF )
ELECTIONS, NORTHUMBERLAND )
COUNTY BOARD OF ELECTIONS, )
PERRY COUNTY BOARD OF )
ELECTIONS, PHILADELPHIA COUNTY )
BOARD OF ELECTIONS, PIKE COUNTY )
BOARD OF ELECTIONS, POTTER )
COUNTY BOARD OF ELECTIONS, )
SCHUYLKILL COUNTY BOARD OF )
ELECTIONS, SNYDER COUNTY BOARD )

| | )
|---|---|
| OF ELECTIONS, SOMERSET COUNTY | ) |
| BOARD OF ELECTIONS, SULLIVAN | ) |
| COUNTY BOARD OF ELECTIONS, | ) |
| SUSQUEHANNA COUNTY BOARD OF | ) |
| ELECTIONS, TIOGA COUNTY BOARD | ) |
| OF ELECTIONS, UNION COUNTY | ) |
| BOARD OF ELECTIONS, VENANGO | ) |
| COUNTY BOARD OF ELECTIONS, | ) |
| WARREN COUNTY BOARD OF | ) |
| ELECTIONS, WASHINGTON COUNTY | ) |
| BOARD OF ELECTIONS, WAYNE | ) |
| COUNTY BOARD OF ELECTIONS, | ) |
| WESTMORELAND COUNTY BOARD | ) |
| OF ELECTIONS, WYOMING COUNTY | ) |
| BOARD OF ELECTIONS, AND YORK | ) |
| COUNTY BOARD OF ELECTIONS, | ) |

         Defendants,

and

DEMOCRATIC NATIONAL
COMMITTEE,

         Intervenor-Defendant.

## MEMORANDUM ORDER

Pending before the Court is "Plaintiffs' Motion for an Immediate Temporary Restraining Order and a Preliminary Injunction and Expedited Hearing as Soon as Practicable" ("Motion") and brief in support (ECF Nos. 5, 6) filed by Plaintiffs Jim Bognet, Donald K. Miller, Debra Miller, Alan Clark, and Jennifer Clark (collectively "Plaintiffs") on October 22, 2020. Defendant Kathy Boockvar filed her brief in opposition on October 26, 2020. (ECF No. 59). Intervenor-Defendant

Democratic National Committee filed its brief in opposition that same day.[1] (ECF No. 64). The Court held a hearing via videoconference on October 27, 2020. For the following reasons, Plaintiffs' Motion is **DENIED**.

I. Background

Plaintiff Jim Bognet resides in Hazelton, Pennsylvania and is a candidate for Pennsylvania's 8th Congressional District. (ECF No. 1, ¶ 10). Plaintiffs Donald K. Miller, Debra Miller, Alan Clark, and Jennifer Clark are all residents of Somerset County, Pennsylvania, registered and active voters, and plan on voting in person on Election Day, November 3, 2020 (collectively "Somerset Plaintiffs"). (*Id.* at ¶¶ 11-14).

Defendant Kathy Boockvar is named in her capacity as Secretary of the Commonwealth of Pennsylvania. (*Id.* at ¶ 15). Defendants Adams County Board of Elections, Allegheny County Board of Elections, Armstrong County Board of Elections, Beaver County Board of Elections, Bedford County Board of Elections, Berks County Board of Elections, Blair County Board of Elections, Bradford County Board of Elections, Bucks County Board of Elections, Butler County Board of Elections, Cambria County Board of Elections, Cameron County Board of Elections, Carbon County Board of Elections, Centre County Board of Elections, Chester County Board of Elections, Clarion County Board of Elections, Clearfield County Board of Elections, Clinton County Board of Elections, Columbia County Board of Elections, Crawford County Board of Elections, Cumberland County Board of Elections, Dauphin County Board of Elections, Delaware

---

[1] Also filed were briefs by several County Boards of Election (ECF Nos. 61, 63, 64, 65, 66, 67, 68), as well as an amicus brief filed by Governor Arnold A. Schwarzenegger (ECF No. 62-1).

County Board of Elections, Elk County Board of Elections, Erie County Board of Elections, Fayette County Board of Elections, Forest County Board of Elections, Franklin County Board of Elections, Fulton County Board of Elections, Greene County Board of Elections, Huntingdon County Board of Elections, Indiana County Board of Elections, Jefferson County Board of Elections, Juniata County Board of Elections, Lackawanna County Board of Elections, Lancaster County Board of Elections, Lawrence County Board of Elections, Lebanon County Board of Elections, Lehigh County Board of Elections, Luzerne County Board of Elections, Lycoming County Board of Elections, McKean County Board of Elections, Mercer County Board of Elections, Mifflin County Board of Elections, Monroe County Board of Elections, Montgomery County Board of Elections, Montour County Board of Elections, Northampton County Board of Elections, Northumberland County Board of Elections, Perry County Board of Elections, Philadelphia County Board of Elections, Pike County Board of Elections, Potter County Board of Elections, Schuylkill County Board of Elections, Snyder County Board of Elections, Somerset County Board of Elections, Sullivan County Board of Elections, Susquehanna County Board of Elections, Tioga County Board of Elections, Union County Board of Elections, Venango County Board of Elections, Warren County Board of Elections, Washington County Board of Elections, Wayne County Board of Elections, Westmoreland County Board of Elections, Wyoming County Board of Elections, and York County Board of Elections (collectively "County Election Boards") are the county boards of elections for each county of the Commonwealth of Pennsylvania. (*Id.* at ¶ 16).

In *Pennsylvania Democratic Party v. Boockvar*, the Pennsylvania Supreme Court "adopt[ed] Secretary [Boockvar]'s informed recommendation of a three-day extension of the absentee and

mail-in ballot received-by deadline to allow for the tabulation of ballots mailed by voters via the USPS and postmarked by 8:00 p.m. on Election Day." \_\_\_A.3d\_\_\_, No. 133 MM 2020, 2020 WL 5554644, *18 (Pa. Sept. 17, 2020) ("Deadline Extension"). Further, the Pennsylvania Supreme Court "conclude[d] that a ballot received on or before 5:00 p.m. on November 6, 2020, [would] be presumed to have been mailed by Election Day unless a preponderance of the evidence demonstrate[d] that it was mailed after Election Day." *Id.* at *18 n.26 ("Presumption of Timeliness").

In their Complaint, the Plaintiffs allege that they are harmed by the Deadline Extension and the Presumption of Timeliness. (ECF No. 1 at ¶¶ 68-71). Bognet contends that he has been harmed because the Pennsylvania Supreme Court's decision "allows County Boards of Elections to accept votes for Representative that would otherwise be unlawful in his election . . . [and] directly undermines his right to run in an election where Congress has paramount authority to set the 'Times, Places, and Manner' and has done so in 2 U.S.C. § 7." (*Id.* at ¶ 69). The Somerset Plaintiffs allege two harms. First, they contend that "the Pennsylvania Supreme Court has created a 'preferred class of voters'—those who do not have to comply with Congress's set Election Day." (*Id.* at ¶ 70) (alteration omitted). Second, the Somerset Plaintiffs allege that their votes will be diluted because votes that would not otherwise be timely will be counted. (*Id.* at ¶ 71).

In their Motion, Plaintiffs request that the "Court enter an immediate temporary restraining order to restrain the Secretary of the Commonwealth Kathy Boockvar and the 67 County Boards of Elections . . . from following a[] . . . policy announced by the Pennsylvania

Supreme Court in a recent decision." (ECF No. 5, p. 3). Plaintiffs further request that the "Court schedule an expedited hearing and issue a preliminary injunction as soon as practicable." (*Id.*).

II. **Legal Standard**

Federal Rule of Civil Procedure 65 authorizes courts to issue preliminary injunctions and temporary restraining orders. Injunctive relief is appropriate only "upon a clear showing that the [movant] is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). In determining whether a party is entitled to a temporary restraining order or a preliminary injunction, a court is to consider four factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed without the temporary restraining order; (3) the balance of equities favors granting a temporary restraining order, including any harm to the nonmoving party; and (4) whether granting the temporary restraining order will be in the public interest. *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir. 1985); *see Winter*, 555 U.S. at 20. "The factors are the same for both temporary restraining orders and preliminary injunctions." *Corp. Synergies Grp., LLC v. Andrews*, 775 F. App'x 54, 58 n.5 (3d Cir. 2019).

III. **Findings of Fact and Discussion**

The Court finds that Plaintiffs have established a likelihood of success on their claim that the counting of ballots received after Election Day but before 5:00 p.m. on November 6, 2020, without a postmark or with an illegible postmark creates a preferred class of voters and violates their rights under the Equal Protection Clause. The Court is of the opinion that this violation of the Equal Protection Clause should be enjoined. However, the Supreme Court "has repeatedly

emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020). In accordance with this guidance, the Court determines that it is required to deny Plaintiffs' motion for injunctive relief because Plaintiffs raised their claim on the eve of the election, despite the likelihood of success on the merits of their Equal Protection Claim.

This Court received Plaintiffs' Motion on Thursday, October 22, 2020, and promptly ordered a response be filed by Monday, October 26, 2020, and conducted oral argument on Tuesday, October 27, 2020. Due to the time constraints imposed by the pending election, the Court heard oral argument on Plaintiffs' Motion without also holding an evidentiary hearing. This decision is issued less than one week after receipt of the motion. Yet, even with that prompt judicial action, this Court's order is issued less than one week prior to the election date.

    a. Standing

"Article III of the Constitution limits the federal courts to adjudication of 'Cases' and 'Controversies.'" *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 279 (3d Cir. 2019) (quoting U.S. Const. art. III, § 2, cl. 1). "Courts enforce the case-or-controversy requirement by requiring the plaintiff to have standing to sue." *Id.* (citation and internal quotation marks omitted). Standing has three elements, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "An injury in fact is one that is concrete and particularized." *DiNaples*, 934 F.3d at 279 (quoting *Spokeo*, 136 S. Ct. at 1548) (internal quotation marks omitted). "To be concrete, the injury must actually exist"; "[i]t must be real, not

abstract." *Id.* (citation and internal quotation marks omitted).

   b. Bognet

Bognet alleges two injuries as a result of the Deadline Extension and the Presumption of Timeliness. First, Bognet alleges in the Complaint that he has been injured because County Boards of Election are allowed "to accept votes for Representative that would otherwise be unlawful in his election." (ECF No. 1, ¶ 69). Second, in his declaration attached to the brief in support, Bognet contends that his "campaign has expended additional funds to update voters and staff on the changes the Pennsylvania Supreme Court made to the mail-in voting requirements in its September 17, 2020 ruling." (ECF No. 6-2, ¶ 3). The Court finds that the harms alleged are insufficient for Bognet to establish standing.

The Court finds that Bognet's first alleged injury is too speculative to confer standing. In *Carson v. Simon*, the Plaintiffs alleged that, as candidates, their candidacy to be state electors supported standing. 20-CV-2030, 2020 WL 6018957, at *13 (D. Minn. Oct. 12, 2020). The court found this was insufficient, concluding that "it [was] equally possible that more of the challenged ballots [would] be cast in *favor* of the Electors' candidate; in that case, the Electors would benefit from ballots received after election day." *Id.* (emphasis in original). Just as in *Carson*, Bognet's alleged harm is conjectural and hypothetical. *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992). In order for the alleged harm to actually occur, more votes which otherwise would not have been counted must be cast in favor of Bognet's opponent than in his favor, otherwise he would benefit, not be harmed by those ballots. Further, the number of ballots cast in favor of his opponent would have to be sufficient to change the results of the election in order for Bognet to have been harmed.

The Court finds that the alleged harm is conjectural and hypothetical, insufficient to establish standing. Further, it is far from clear that this alleged harm is certainly impending.

Nor can Bognet establish standing based on his expenditures. For a plaintiff to have standing, the injury must be redressable. *Spokeo*, 136 S. Ct. at 1547. Here, Bognet has already made the expenditures. Therefore, granting the relief Bognet seeks would not address the expenditures he has already made. Further, to the extent Bognet made those expenditures to address a perceived future harm, it is unclear what harm he was seeking to avoid. As addressed above, Bognet's alleged harm caused by the Deadline Extension and the Presumption of Timeliness is conjectural and hypothetical. It is well established that a plaintiff "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Accordingly, the Court finds that Bognet has failed to establish that he has standing to bring his claims.

c. Somerset Plaintiffs

The Fourteenth Amendment to the United States Constitution prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." "States have long been held to have broad powers to determine the conditions under which the right of suffrage may be exercised." *Lassiter v. Northampton Cnty. Bd. of Elections*, 360 U.S. 45, 50 (1959). However, "once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment." *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 665 (1966).

Supreme Court precedent identifies two types of voting harms prohibited by the

Fourteenth Amendment. First, "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). Second, "State[s] may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104–05 (2000). The Somerset Plaintiffs seek to bring claims under both theories of harm. (ECF No. 1, ¶¶ 70-71).

i. Vote Dilution

The Somerset Plaintiffs allege that, as a result of the Deadline Extension and the Presumption of Timeliness fashioned by the Pennsylvania Supreme Court, their votes will be diluted. (ECF No. 1, ¶ 71). In *Carson*, the plaintiffs alleged "that votes received after Election Day are invalid and unlawful, and thus counting these votes [would] increase the total amount of votes cast, which [would] in turn render their own lawful votes less influential." 2020 WL 6018957, at *7. The court found this allegation insufficient to confer standing because "such dilution affects all Minnesota voters equally, giving no disadvantage to the [plaintiffs]." *Id.* The court further concluded that the "claim of vote dilution [was] a paradigmatic generalized grievance that cannot support standing. The prospect of hypothetical unlawful votes in the upcoming presidential election is not a harm unique to the [plaintiffs]." *Id.* at *8.

Other courts throughout the country have come to the same result. In *Moore v. Circosta*, the court found that "the notion that a single person's vote will be less valuable as a result of unlawful or invalid ballots being cast is not a concrete and particularized injury in fact necessary for Article III standing." No. 1:20-CV-911, 2020 WL 6063332, at *14 (M.D.N.C. Oct. 14, 2020). Similarly, the court in *Martel v. Candos* stated that "[i]f every voter suffers the same incremental

dilution of the franchise caused by some third-party's fraudulent vote, then these voters have experienced a generalized injury." No. 5:20-CV-131, 2020 WL 5755289, at *4 (D. Vt. Sept. 16, 2020). In *Paher v. Cegavske*, the court found that the plaintiffs lacked standing because their "purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter. Such claimed injury therefore does not satisfy the requirement that Plaintiffs must state a concrete and particularized injury." 457 F. Supp. 3d 919, 926 (D. Nev. 2020). The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–74.

The Court finds that the vote dilution alleged by the Somerset Plaintiffs is too generalized to establish standing. There is no doubt that the Deadline Extension and the Presumption of Timeliness allow votes to be counted that otherwise would not be. However, any dilution affects all voters. This generalized harm is insufficient to confer standing.

    ii. Arbitrary and Disparate Treatment

The Somerset Plaintiffs also allege that the Deadline Extension and the Presumption of Timeliness create a preferred class of voters, "those who do not have to comply with Congress's set Election Day." (ECF No. , ¶ 70). Further, in support of their motion, the Somerset Plaintiffs included sworn declarations attesting that they will be "voting in person on November 3, 2020." (ECF Nos. 16-3, 16-4, 16-5, 16-6). Plaintiffs contend that because they will be voting in person,

they "must follow the law passed by Congress. But mail-in ballot voters do not." (ECF No. 1, ¶ 70).

As the Supreme Court explained in *Gray v. Sanders*, "[t]he concept of 'we the people' under the Constitution visualizes no preferred class of voters but equality among those who meet the basic qualifications." 372 U.S. 368, 379–380 (1963). Further, "once the class of voters is chosen and their qualifications specified, we see no constitutional way by which equality of voting power may be evaded." *Id.* at 381. "The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush*, 531 U.S. at 104–05 (2000).

The Court finds that the Deadline Extension does not violate the Equal Protection Clause. As held by the Pennsylvania Supreme Court, the Deadline Extension "is a three-day extension of the absentee and mail-in ballot received-by deadline to allow for the tabulation of ballots mailed by voters via the USPS and postmarked by 8:00 p.m. on Election Day." *Pa. Democratic Party*, 2020 WL 5554644, at *18. This extension merely allows ballots that were properly cast through the act of mailing by 8:00 p.m. on Election Day and received by 5:00 p.m. on November 6, 2020, to be counted. Contrary to Plaintiffs' assertion, this extension does not extend the time period during which Pennsylvanians may lawfully vote. Accordingly, the Court finds that Plaintiffs have not alleged an injury created by the Deadline Extension.

However, the Court finds that the Somerset Plaintiffs have alleged an injury created by the Presumption of Timeliness. Under the Presumption of Timeliness, ballots received after 8:00

p.m. on Election Day with no postmark or an illegible postmark are "presumed to have been mailed by Election Day unless a preponderance of the evidence demonstrates that it was mailed after Election Day." *Id.* at *18 n.26. The Presumption of Timeliness itself allows for mail-in ballots cast after Election Day (innocently or fraudulently) to be counted if those ballots have an illegible postmark or do not have any postmark at all. This Presumption of Timeliness subjects in-person voters and voters who vote by mail to different treatment. It is impossible for an in-person voter to submit his or her ballot after Election Day and have it counted–the polls will be closed. In contrast, a voter who votes by mail will be able to cast his or her ballot after the congressionally mandated Election Day and have it counted, even though that ballot does not possess the indicia of being timely (namely a valid postmark on or before November 3, 2020).

Plaintiffs have alleged that through the Presumption of Timeliness, the Pennsylvania Supreme Court has created a different, extended Election Day than the one established by Congress. The Presumption of Timeliness changes the effective date of the election and extends the date of the election by multiple days for a select group of mail-in voters whose ballots will be presumed to be timely in the absence of a verifiable postmark. Mail-in voters whose ballots fail to receive a legible postmark or any postmark will be presumed to have cast their ballot timely solely by virtue of the judicially created presumption. This preferred class of voters will now be able to cast their ballots after the congressionally established Election Day, yet by virtue of the judicially imposed presumption they will be deemed to have voted timely if the ballot lacks a legible postmark or has no postmark at all. This unequal treatment of voters, created by the Pennsylvania Supreme Court, harms the Somerset Plaintiffs because, as in-person voters, they

must vote by the end of the congressionally established Election Day in order to have their votes counted. Accordingly, the Court finds that the Somerset Plaintiffs have alleged an injury sufficient to confer standing based upon the Presumption of Timeliness created by the Pennsylvania Supreme Court.

> d. The Court is Required to Deny the Injunctive Relief Sought by the Plaintiffs
>
> > i. Success on the Merits of their Equal Protection Claim

In determining whether a temporary restraining order or preliminary injunction is appropriate, the Court is to first consider whether the movant has shown a reasonable probability of success on the merits. *SI Handling Sys.*, 753 F.2d at 1254; *see Winter*, 555 U.S. at 20.

The Court finds that the Somerset Plaintiffs are likely to succeed on the merits of the Equal Protection claim relating to the Presumption of Timeliness. As addressed above, the Somerset Plaintiffs have alleged that the Pennsylvania Supreme Court, through the Presumption of Timeliness, extended the time to cast ballots for a specific group of voters: those voters who cast a ballot by mail after the congressionally established Election Day (innocently or fraudulently) which does not receive a postmark or a legible postmark. In contrast, the Somerset Plaintiffs, as in-person voters, must comply with the congressionally created deadline in order to have their votes counted.

Equal Protection encompasses the manner in which the right to vote is exercised and prevents arbitrary and disparate treatment. *Bush*, 531 U.S. at 104; *see Gray*, 372 U.S. at 378–79. Here, the Pennsylvania Supreme Court acted arbitrarily in creating the Presumption of Timeliness with little discussion. In creating the presumption, the Pennsylvania Supreme Court

simply stated that the lack or illegibility of a postmark is "undeniably outside of the control of the individual voter." *Pa. Democratic Party*, 2020 WL 5554644, at *18 n.26. As addressed by Justice Mundy in her dissent, the Pennsylvania Supreme Court adopted the Presumption of Timeliness in a footnote "[w]ithout further explanation." *Id.* at *40 (Mundy, J, dissenting). In addition, providing for a subset of voters to cast ballots after the election and have those votes counted by virtue of the judicially created presumption, even though they do not receive a legible postmark, while voters like the Somerset Plaintiffs are required to cast their vote by the congressionally mandated Election Day, is arbitrary treatment of different voters based simply on their method of voting. Therefore, the Presumption of Timeliness clearly results in the disparate treatment of voters. Accordingly, the Court finds that the Somerset Plaintiffs are likely to succeed on the merits of their Equal Protection claim because the Presumption of Timeliness "is not a process with sufficient guarantees of equal treatment." *Bush*, 531 U.S. at 107.

    ii. Irreparable Harm

The next consideration is whether the movant will be irreparably harmed without the injunctive relief. *SI Handling Sys.*, 753 F.2d at 1254; *see Winter*, 555 U.S. at 20.

Here, the Court finds that the Somerset Plaintiffs are likely to be irreparably harmed without the temporary restraining order. "Courts routinely deem restrictions on fundamental voting rights irreparable injury." *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) (collecting cases). As addressed above, the Presumption of Timeliness subjects the Somerset Plaintiffs to arbitrary and disparate treatment. Without a temporary restraining order, the Somerset Plaintiff are likely to be irreparably harmed by the arbitrary and

disparate treatment caused by the Presumption of Timeliness.

      iii.   Balance of the Equities

Next, the Court must consider whether the balance of equities favors granting injunctive relief, including any harm to the nonmoving party. *SI Handling Sys.*, 753 F.2d at 1254; *see Winter*, 555 U.S. at 20.

The Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm.*, 140 S. Ct. at 1207 (citing *Purcell v. Gonzalez*, 549 U.S. 1, (2006) (per curiam)). Further, based upon this "*Purcell* principle," the Supreme Court has prevented numerous rulings of lower federal courts from going into effect because the rulings would have "alter[ed] state elections laws in the period close to an election." *Democratic Nat'l Comm. v. Wis. State Legislature*, No. 20A66, 2020 WL 6275871, at *3 (U.S. Oct. 26, 2020) (Kavanaugh, J, concurring in denial of application to vacate stay). Accordingly, the Court finds that the equities weigh against granting injunctive relief.

      iv.   The Public Interest

Finally, the Court is to consider whether granting injunctive relief would be in the public interest. *SI Handling Sys.*, 753 F.2d at 1254; *see Winter*, 555 U.S. at 20.

"[T]he *Purcell* principle . . . seeks to avoid . . . judicially created confusion. *Republican Nat'l Comm.*, 140 S. Ct. at 1207. Here, the Plaintiffs filed their Motion less than two weeks before the election. The election is rapidly approaching. Granting the relief Plaintiffs seek would result in significant voter confusion; precisely the kind of confusion that *Purcell* seeks to avoid. Accordingly, the Court finds that granting injunctive relief would not be in the public interest.

IV.  Order

Accordingly, this 28th day of October, 2020, after hearing and due consideration of consideration of Plaintiffs' Motion and brief in support (ECF Nos. 5, 6), as well as the briefs in opposition, **IT IS HEREBY ORDERED** that the Plaintiffs' Motion is **DENIED**.

BY THE COURT:

_____
**KIM R. GIBSON
UNITED STATES DISTRICT JUDGE**